**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**CHERI MICHELLE EDENS, and others**
**similarly situated,**

        **Plaintiff,**

**v.**

**CEBRIDGE ACQUISITION, LLC,**
**CEQUEL III COMMUNICATIONS I, LLC,**
**CEQUEL III COMMUNICATIONS II, LLC,**
**& ALTICE USA,**

        **Defendants.**

Civil Action No: 2:22-cv-00101

Hon. Thomas E. Johnston

_____

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**
**ARBITRATION AND TO STAY LITIGATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A.    Edens Agrees To Arbitrate Her Disputes With Defendants. ................................ 2

    B.    The Terms Of Edens's Arbitration Agreements. ................................................... 4

    C.    Edens Sues Defendants Notwithstanding Her Acknowledged Arbitration
          Agreements And Pursuit Of An Ongoing Arbitration. ......................................... 5

ARGUMENT .......................................................................................................................... 6

I.    THE FAA REQUIRES ENFORCEMENT OF EDENS'S ARBITRATION
    AGREEMENTS ................................................................................................................ 6

    A.    Edens Entered Into Binding Arbitration Agreements. .......................................... 7

    B.    Edens's Claims Fall Within The Scope Of Her Arbitration Agreements. ............ 12

    C.    Edens's Arbitration Agreements Are Fully Enforceable As A Matter Of
          Federal Law. ........................................................................................................ 13

          1.    The arbitration agreement is not procedurally unconscionable. .............. 14

          2.    The arbitration agreement is not substantively unconscionable. ............. 19

II.    THESE ACTIONS SHOULD BE STAYED PENDING ARBITRATION OF
    EDENS'S CLAIMS. ........................................................................................................ 20

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altice USA, Inc. v. Francis*,
2023 WL 2290719 (Ark. Ct. App. Mar. 1, 2023) ...................................................................10

*Altice USA, Inc. v. Johnson*,
661 S.W.3d 707 (Ark. Ct. App. 2023) .......................................................................................10

*Altice USA, Inc. v. Peterson*,
661 S.W.3d 699 (Ark. Ct. App. 2023) .......................................................................................10

*Altice USA, Inc. v. Runyan*,
662 S.W.3d 247 (Ark. Ct. App. 2023) .......................................................................................10

*Am. Bankers Ins. Co. v. Milsap*,
350 F. Supp. 2d 730 (S.D. Miss. 2004) .......................................................................................8

*Anderson v. Amazon.com, Inc.*,
478 F. Supp. 3d 683 (M.D. Tenn. 2020) ...................................................................................15

*Armstead v. Starbucks Corp.*,
2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017) .........................................................................18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .............................................................................................................7, 18

*Bright v. QSP, Inc.*,
20 F.3d 1300 (4th Cir. 1994) .......................................................................................................8

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ....................................................................................................................13

*Christian v. Pressed Juicery, Inc.*,
2021 WL 4771801 (C.D. Cal. Apr. 23, 2021) .........................................................................18

*Citizens Telecommc'ns Co. v. Sheridan*,
799 S.E.2d 144 (W. Va. 2017) ........................................................................................ *passim*

*Credit Acceptance Corp. v. Front*,
745 S.E.2d 556 (W. Va. 2013) ...................................................................................................14

*Delonge v. Time Warner Cable Bus. LLC*,
2014 WL 3890766 (E.D. Wis. Aug. 6, 2014) .........................................................................10

ii

*Dirse v. Rent-A-Center E., Inc.*,
2016 WL 6330432 (S.D. Fla. Oct. 27, 2016) ........................................................................8

*Doctors Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996) ...............................................................................................16, 18

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ...........................................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ...............................................................................................7

*Frashuer v. Altice USA, Inc.*,
2023 WL 195523 (N.D. W. Va. Jan. 17, 2023) .................................................9, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) .................................................................................................20

*Gooch v. Cebridge Acquisition LLC*,
2023 WL 415984 (S.D. W. Va. Jan. 25, 2023), *appeal pending*,
No. 23-1146 (4th Cir. filed Feb. 8, 2023) ....................................................... *passim*

*Griffin v. Vivint Solar, Inc.*,
2021 WL 2186408 (D.N.M. May 28, 2021) .........................................................18

*Hampden Coal, LLC v. Varney*,
810 S.E.2d 286 (W. Va. 2018) ..............................................................................19

*Hancock v. AT&T Co.*,
701 F.3d 1248 (10th Cir. 2012) .......................................................................12, 18

*Hart v. Charter Commc'ns, Inc.*,
2017 WL 6942425 (C.D. Cal. Nov. 8, 2017), *aff'd*, 814 F. App'x 211 (9th Cir.
2020) .......................................................................................................................10

*Hughes v. Charter Commc'ns*,
2020 WL 1025687 (D.S.C. Mar. 2, 2020) ...........................................................11

*Joel Bauer & Assocs. v. Hawkins*,
2019 WL 4238885 (C.D. Cal. Mar. 25, 2019) .....................................................11

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
581 U.S. 246 (2017) ...............................................................................................7

*Krafczek v. Cablevision Sys. Corp.*,
2018 WL 8918077 (E.D.N.Y. Apr. 25, 2018) .................................................12, 18

*Lamps Plus, Inc. v. Varela*,
 139 S. Ct. 1407 (2019) ..................................................................................13

*Larsen v. Citibank FSB*,
 871 F.3d 1295 (11th Cir. 2017) ....................................................................15

*Lodge v. Sterling Jewelers, Inc.*,
 2021 WL 651015 (D. Del. Feb. 19, 2021) ....................................................18

*Lojewski v. Group Solar USA, LLC*,
 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023) ..............................................18

*Lopez v. Cequel Commc'ns, LLC*,
 2021 WL 5112982 (E.D. Cal. Nov. 3, 2021) .....................................10, 12, 18

*McFarland v. Almond Bd. of Cal.*,
 2013 WL 1786418 (E.D. Cal. Apr. 25, 2013) ..............................................17

*McFarland v. Wells Fargo Bank, N.A.*,
 810 F.3d 273 (4th Cir. 2016) ..................................................................14, 19

*Mey v. DIRECTV, LLC*,
 971 F.3d 284 (4th Cir. 2020) ........................................................................11

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017) ......................................................................11, 18

*Middleton v. T-Mobile US, Inc.*,
 2022 WL 16828226 (E.D.N.Y. Aug. 24, 2022) ............................................18

*Moran v. Charter Comm'cns, Inc.*,
 2020 WL 5833640 (C.D. Cal. June 11, 2020) ..............................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ..........................................................................................13

*Mosley v. Wells-Fargo & Co.*,
 2023 WL 3185790 (S.D. Cal. May 1, 2023) ...................................................8

*Muriithi v. Shuttle Express, Inc.*,
 712 F.3d 173 (4th Cir. 2013) ........................................................................18

*Nationstar Mortg., LLC v. West*,
 785 S.E.2d 634 (W. Va. 2016) .................................................14, 16, 17, 18

*Nghiem v. NEC Elec. Inc.*,
 25 F.3d 1437 (9th Cir. 1994) ..........................................................................8

iv

*Olsen v. Charter Comm'cns, Inc.*,
  2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019) .........................................................10

*Perry v. Thomas*,
  482 U.S. 483 (1987) ..........................................................................................7, 17, 18

*Price v. Morgan Fin. Grp.*,
  2013 WL 3184671 (W. Va. June 24, 2013) .........................................................15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ..............................................................................................13

*Rent-A-Center W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ................................................................................................14

*Sacchi v. Verizon Online LLC*,
  2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) .......................................................10

*Sho-Oja v. Sprint Corp.*,
  2014 WL 12561584 (C.D. Cal. Jan. 16, 2014) .....................................................8

*Shorts v. AT&T Mobility LLC*,
  2013 WL 2995944 (W. Va. June 17, 2013) .........................................................17

*State ex rel. AT&T Mobility v. Wilson*,
  703 S.E.2d 543 (W. Va. 2010) ............................................................................20

*State ex rel. Ocwen Loan Servicing, LLC v. Webster*,
  752 S.E.2d 372 (W. Va. 2013) .....................................................................14, 15

*Ulbrich v. Overstock.Com, Inc.*,
  887 F. Supp. 2d 924 (N.D. Cal. 2012) ...............................................................17

*United States v. Gray-Sommerville*,
  618 F. App'x 165 (4th Cir. 2015) ........................................................................7

*Utterbach v. Jeunesse, LLC*,
  2019 WL 1878347 (C.D. Cal. Feb. 11, 2019) ......................................................8

*W. Sur. Co. v. Rock Branch Mech., Inc.*,
  2017 WL 5075253 (S.D. W. Va. Nov. 3, 2017) .................................................14

*Wallace v. Red Bull Distrib. Co.*,
  958 F. Supp. 2d 811 (N.D. Ohio 2013) ..............................................................17

*West v. Uber Techs.*,
  2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) .....................................................11

*Wiseley v. Amazon.com, Inc.*,
   709 F. App'x 862 (9th Cir. 2017) .......................................................................15

**Statutes**

Federal Arbitration Act
   9 U.S.C. §§ 1-16 ..........................................................................................1
   9 U.S.C. § 2 ...........................................................................................7, 17
   9 U.S.C. § 3 ...........................................................................................20

W. Va. Code § 46A-6-109 .........................................................................6

# INTRODUCTION

Plaintiff Cheri Edens is a Suddenlink (now Optimum) customer who has filed this putative class action while at the same time pursuing an individual arbitration against defendants. Defendants deny that Edens has viable claims on the merits, but as a threshold matter, Edens agreed to resolve her disputes with Suddenlink and all related entities (including each of the defendants) by arbitration on individual basis. Edens has conceded as much by initiating her arbitration. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires her to honor that obligation.

Defendants recognize that this Court denied their motion to compel arbitration in *Gooch v. Cebridge Acquisition LLC*, 2023 WL 415984 (S.D. W. Va. Jan. 25, 2023), *appeal pending*, No. 23-1146 (4th Cir. filed Feb. 8, 2023). Defendants respectfully disagree with the Court's decision in *Gooch* for the reasons explained in the pending Fourth Circuit appeal. But, most significant for present purposes, Edens's circumstances are materially distinguishable from those in *Gooch*.

*All* of the versions of the terms of service at issue here are more recent than the 2016 version of Suddenlink's Residential Service Agreement ("RSA") that this Court discussed in *Gooch*, and these versions do not contain *any* of the terms that this Court deemed substantively unconscionable. Specifically, none of the versions of the RSA Edens agreed to include the exception for debt collection lawsuits initiated by Suddenlink, the one-year contractual limitations period, or a prohibition on the arbitrator awarding punitive damages for common-law claims.

Edens agreed most recently to the July 2022 version of Suddenlink's RSA, after receiving an email in June 2022 informing her, under the bold heading "**An update to our Terms of Service**," that "We're updating the Binding Arbitration provision of our Residential Services Agreement, effective July 20, 2022" and providing her with a hyperlink to the updated RSA on Suddenlink's website. Aff. of Nicole Averill ¶ 7 & Ex. A. That type of explicit notice of an update to contract terms is materially identical to the notice upheld in *Citizens Telecommunications Co.*

*v. Sheridan*, 799 S.E.2d 144, 148, 151-52 (W. Va. 2017), which this Court discussed in *Gooch*. For example, the notice in *Sheridan* informed customers that "Frontier has made revisions to the Terms and Conditions that apply to your Residential Frontier Internet service" and referred specifically to "the requirement that disputes be resolved by individual arbitration." *Id.* at 148.

Moreover, Edens's recent amendment to her complaint adds allegations directed at those updated terms and asserts claims based on them, including requests for forward-looking injunctive relief. Edens also agreed to the September 2019 version of the RSA, as detailed below. In other words, while Edens may challenge the *enforceability* of her arbitration agreements (but not the RSA more broadly) in this Court, she cannot deny that an arbitration agreement was *formed*. Any enforceability challenge also is without merit, particularly given the material differences between the arbitration agreements at issue here and the arbitration clause in *Gooch*. As discussed below, Edens will not be able to demonstrate that the arbitration provision is either procedurally or substantively unconscionable—much less *both*, as West Virginia law requires.

The Court should therefore compel arbitration of Edens's claims on an individual basis and stay this lawsuit pending the outcome of Edens's ongoing arbitration.

## BACKGROUND

### A.     Edens Agrees To Arbitrate Her Disputes With Defendants.

Defendants Altice USA, Inc., Cebridge Acquisition, LLC, Cequel III Communications I, LLC, Cequel III Communications II, LLC (collectively, "Suddenlink") provide broadband internet, television, and telephone services, including in West Virginia, formerly under the Suddenlink brand name and since August 2022 under the Optimum brand name. *See*, *e.g.*, Am. Compl. ¶ 15; Aff. of William Heberer ¶ 3. Edens has been an internet customer of Suddenlink (now Optimum) since April 2020. Aff. of Travis Lucas ¶¶ 5-6. Edens has agreed to Suddenlink's RSA in multiple ways.

*Suddenlink's July 2022 update and Edens's payment of bills after notice on statements.* Most recently, Edens agreed to the July 2022 version of the RSA. Prior to the July 20, 2022 effective date of Suddenlink's RSA, Suddenlink informed its existing customers of the forthcoming update to their contract terms—including *expressly notifying them of updates to the arbitration provision*. Averill Aff. ¶ 5. According to Suddenlink's records, Edens was notified of the update by email on or around June 14, 2022. *Id.* ¶¶ 6-8 & Ex. A. The subject line read: "Notice of changes to our Terms of Service." *Id.* ¶ 7. Under the bold heading "**An update to our Terms of Service**," the email informed Edens that "We're updating the Binding Arbitration provision of our Residential Services Agreement, effective July 20, 2022. You can access and read the updated arbitration provision at www.suddenlink.com/residential-services-agreement," with the blue, underlined language hyperlinking to the updated RSA on Suddenlink's website. *Id.* ¶ 7 & Ex. A.

Edens accepted those terms by paying for and receiving service after receiving e-mail notice of the revision. Indeed, from the start of her service in April 2020 through August 2022, Edens's monthly billing statements reminded her that "[p]ayment of your bill" or "[b]ill payment" "confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy." Lucas Aff. Ex. C.[1] Edens therefore has independently consented each month to arbitrate under the terms of the Suddenlink RSA then in effect—including the arbitration provision in the July 2022 version of the Suddenlink RSA and the materially identical provision in the relevant Optimum terms—by paying her bills after receiving such notice.

*Edens's earlier assent to the September 2019 RSA.* Suddenlink's records show that on

---

[1]    Since August 2022, when Edens began receiving services under the Optimum brand, her monthly billing statements have reminded her that "[b]ill payment confirms your acceptance of the Residential Services Agreement, viewable at optimum.com/terms." *See* Lucas Aff. Ex. C. The Optimum residential terms in effect in August 2022 are identical in all relevant respects to the corresponding version of the Suddenlink RSA. *Compare* Heberer Aff. Ex. A *with id.* Ex. D.

April 3, 2020, a field technician came to Edens's address to install the necessary equipment and activate Edens's services.  Lucas Aff. ¶ 5.  In addition, on April 7, 2020, August 15, 2020, and October 10, 2020, a Suddenlink technician completed a service visit at Edens's address.  *Id.* ¶ 10.

During each appointment, Edens (or her authorized representative) was required to accept the September 2019 version of the RSA then in effect to complete the appointment.  Lucas Aff. ¶¶ 7-12.  As a matter of routine business practice, the technician either presented the customer with a mobile device and obtained a signature on the device screen under acknowledgment of the terms of service; or, because of the COVID-19 pandemic, the technician read the acknowledgment of the terms aloud to the customer and obtained the customer's verbal assent.  *Id.*

Here, it appears from the work orders from all four of Edens's service visits that Edens (or her authorized representative) signed a mobile-device screen stating, in capitals, "BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT ALL INFORMATION ON THIS WORK ORDER, INCLUDING . . . GENERAL TERMS AND CONDITIONS OF SERVICE PROVIDED DURING TIME OF SERVICE APPOINTMENT AND AVAILABLE AT SUDDENLINK.NET/ SERVICEINFO, HAS BEEN READ AND AGREED TO."  *Id.* ¶ 12 & Ex. B.[2]

### B.     The Terms Of Edens's Arbitration Agreements.

Each applicable RSA informs Edens in the second paragraph, in boldface and capital letters, that "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF**

---

[2]     The work order from Edens's initial installation appointment shows an "X" rather than a mark bearing resemblance to a signature.  *See* Lucas Aff. Ex. A.  It is unclear whether Edens or her authorized representative made that mark or whether Edens provided verbal assent due to the pandemic.  Each of the three work orders from Edens's subsequent service visits in 2020, however, bear marks that appear to be signatures reflecting Edens's assent to the same September 2019 version of the RSA.  And in all events, verbal assent to written contract terms is also valid under West Virginia law.  *See* page 12, *infra*.

**CLASS ACTIONS AND JURY TRIALS**." *E.g.*, Heberer Aff. Ex. A, at 1.

The July 2022 arbitration provision itself applies to "[a]ny and all disputes arising between" Edens and Suddenlink, including "its respective predecessors[,] … successors, … parents, subsidiaries, affiliates, officers, directors, employees, and agents[,]" which includes all defendants here. *Id.* Ex. A § 24(a).[3] The agreement covers all "[c]laims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory[,]" as well as "[c]laims that arose before this or any prior Agreement." *Id.*

The arbitration clause further informed Edens that "**YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND [SUDDENLINK] EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.**" *Id.* (boldface and capitalization in original). It contains a waiver of class and representative actions, and relatedly precludes "non-individualized relief that would affect other account holders." *Id.* § 24(g).

The arbitration clauses in the earlier (October 2021 and September 2019) versions of the RSA are similar. *See id.* Ex. B § 24; *id.* Ex. C § 24. None of them contains an exception for debt-collection lawsuits initiated by Suddenlink, a contractual limitations period, or a limitation on the arbitrator's ability to award punitive damages. *See id.* Ex. A § 24; *id.* Ex. B § 24; *id.* Ex. C § 24.[4]

### C. Edens Sues Defendants Notwithstanding Her Acknowledged Arbitration Agreements And Pursuit Of An Ongoing Arbitration.

Edens filed this putative class action in this Court on February 28, 2022. Dkt. No. 1. At

---

[3]    Defendant Altice indirectly owns the company formerly operating under the brand name Suddenlink, making Altice a "parent" within the meaning of the arbitration agreement.

[4]    Edens alleges throughout the amended complaint that "section numbers were removed" from the RSA. Am. Compl. ¶¶ 115, 184, 190, 192. The basis for that allegation is unclear; at all relevant times the RSA has contained section numbers, as do the versions of the RSA and the Optimum terms currently on the Optimum website. *See* Heberer Aff. Exs. A-E.

the time she filed this lawsuit, Edens had already sent Suddenlink a pre-arbitration notice of dispute and filed an arbitration demand with the American Arbitration Association. Am. Compl. ¶¶ 51, 54. That arbitration is ongoing: Suddenlink has appeared in the arbitration and paid all required fees, and an arbitrator has been appointed.

Edens filed an amended complaint on November 20, 2023. Dkt. No. 41. The complaint primarily challenges the adequacy of Edens's services. Am. Compl. ¶¶ 50, 59-67, 139. The complaint also repeatedly cites either the July 2022 RSA or the corresponding Optimum terms, including the arbitration clause. *See id.* ¶¶ 4, 115, 191-192. And among the 15 causes of action are claims seeking a declaration that the contract is unenforceable (*id.* ¶¶ 144-151); asserting a breach of the contract (*id.* ¶¶ 177-181); asserting that the contract is insufficiently clear under West Virginia Code § 46A-6-109 (*id.* ¶¶ 182-187); and asserting that the contract contains an impermissible disclaimer of warranties and limitation on liability *(id.* ¶¶ 188-195). Edens seeks to represent a putative class of West Virginia Suddenlink internet, television, or voice customers from January 1, 2016 to the present. *Id.* ¶ 120.

## ARGUMENT

## I.  THE FAA REQUIRES ENFORCEMENT OF EDENS'S ARBITRATION AGREEMENTS.

Edens's claims must be arbitrated in accordance with her arbitration agreements. The four elements that this Court has identified for compelling arbitration under the FAA—(1) "the existence of a dispute between the parties"; (2) a written arbitration agreement "which purports to cover the dispute"; (3) a relationship "to interstate commerce"; and (4) the failure or refusal of a party to arbitrate (*Gooch*, 2023 WL 415984, at *2 (citing *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005)))—are each satisfied here.

Edens' filing of this lawsuit challenging the adequacy of her services "certainly satisfie[s]"

the first and fourth elements. *Id.* The second and third elements are satisfied as well. The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met: (i) Edens's arbitration agreements are in writing (*see* pages 2-5, *supra*); and (ii) contracts for internet services inherently involve interstate commerce, because "it is beyond debate that the Internet and email are facilities or means of interstate commerce." *United States v. Gray-Sommerville*, 618 F. App'x 165, 168 (4th Cir. 2015) (citation omitted). Moreover, Edens's arbitration agreements provide for "BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT." Heberer Aff. Ex. A § 24.

Congress enacted the FAA to manifest "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quotation marks omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The principal substantive provision of the FAA, Section 2, thus commands that "[a]n agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*, . . . 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (quoting 9 U.S.C. § 2).

Here, no grounds "exist at law or in equity for the revocation of" Edens's arbitration agreements. She validly accepted those agreements, the agreements cover the claims she asserts in this lawsuit, and those agreements are fully enforceable.

## A. Edens Entered Into Binding Arbitration Agreements.

Edens agreed to arbitrate her disputes. This analysis is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The FAA requires that those principles be generally applicable, rather than "singling out" arbitration agreements "for disfavored treatment." *Kindred Nursing Ctrs. Ltd.*

*P'Ship v. Clark*, 581 U.S. 246, 252 (2017).

To begin with, although Edens's amended complaint challenges the enforceability of the RSA, it expressly acknowledges that an agreement was formed. The declaratory judgment claim, the claim challenging the clarity of the RSA, and the claim that the RSA contains impermissible limitations of warranties all presume the existence of a contract. *See* Am. Compl. ¶¶ 144-151, 182-187, 188-195. Similarly, in asserting a claim for breach of the RSA, the complaint alleges that if the Suddenlink contract is valid and enforceable, "Plaintiff and Suddenlink entered into a contract, called a Residential Service Agreement, whereby Suddenlink agreed to provide services in exchange for payments from Plaintiff." *Id.* ¶ 178. "It is well established" that "admissions in the pleadings are binding on the parties." *Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994) (holding that plaintiff was bound by its description of the parties' oral contract in its complaint). Courts routinely rely on similar admissions to conclude that an arbitration agreement was formed.[5]

The amended complaint also acknowledges that Edens is pursuing an individual arbitration against Suddenlink. Am. Compl. ¶¶ 51, 54. Edens's pursuit of arbitration means that she has "submitted to the authority of the arbitral tribunal" and "cannot now seek to have the entirety of [her] dispute resolved in this Court." *Mosley v. Wells-Fargo & Co.*, 2023 WL 3185790, at *3 (S.D. Cal. May 1, 2023) (citing *Nghiem v. NEC Elec. Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994)). As the Ninth Circuit explained in *Nghiem*, "[o]nce a claimant submits to the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority." 25 F.3d at 1440.

Aside from her own admissions and pursuit of an arbitration, Edens accepted the RSA in

---

[5]     *See, e.g.*, *Utterbach v. Jeunesse, LLC*, 2019 WL 1878347, at *3 (C.D. Cal. Feb. 11, 2019); *Sho-Oja v. Sprint Corp.*, 2014 WL 12561584, at *3 n.4 (C.D. Cal. Jan. 16, 2014); *Dirse v. Rent-A-Center E., Inc.*, 2016 WL 6330432, at *2 (S.D. Fla. Oct. 27, 2016); *Am. Bankers Ins. Co. v. Milsap*, 350 F. Supp. 2d 730, 732-33 (S.D. Miss. 2004).

multiple ways.  *See* pages 2-4, *supra*.

**July 2022 RSA.** Edens was repeatedly reminded in monthly billing statements that she agreed to the RSA and informed where she can access the agreement on the Suddenlink or Optimum website.  And the statement that "payment of your bill" or "[b]ill payment" "confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy [or optimum.com/terms]" is easily spotted—particularly given that the website address is hyperlinked in underlined, blue font.  Lucas Aff. Ex. C.  Moreover, the June 2022 email sent to Edens informed her of the July 2022 update to the RSA governing her service, including to Suddenlink's arbitration provision. Averill Aff. ¶ 7 & Ex. A.

Given these notices, Edens cannot deny having confirmed her agreement to the RSA each month by paying her monthly bills and continuing to receive Suddenlink service.  The Supreme Court of Appeals of West Virginia has upheld this method of contract formation, explaining that it presents the "prototypical unilateral contract," in which "'one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise.'"  *Sheridan*, 799 S.E.2d at 150 (quoting *Cook v. Heck's Inc.*, 342 S.E.2d 453, 458 (W. Va. 1986)).

Other courts across the country are in accord.  The Northern District of West Virginia upheld Suddenlink's same method of contract formation based on the same notice in the customers' billing statements, explaining that "[t]he Supreme Court of Appeals of West Virginia has found that an offer and acceptance can be established through terms and conditions referenced in a billing statement and made available on a website."  *Frashuer v. Altice USA, Inc.*, 2023 WL 195523, at *2 (N.D. W. Va. Jan. 17, 2023), *motion for reconsideration pending* (citing *Sheridan*, 799 S.E.2d at 147).  The court further explained that this process accords with ordinary notions of offer and acceptance: "Defendant offered its terms and conditions through its billing statement and

corresponding website, and Plaintiff accepted Defendant's terms and conditions by continuing to use and pay for Defendant's services." *Id.*

A federal court in California also upheld Suddenlink's contract formation process based in part on the notice in the plaintiffs' billing statements. *See Lopez v. Cequel Commc'ns, LLC*, 2021 WL 5112982, at *4 (E.D. Cal. Nov. 3, 2021) (noting that the plaintiff had agreed to the RSA in multiple ways but noting that "[t]he billing statements *alone* are arguably enough to put Plaintiff on inquiry notice of the terms of the RSA, including the arbitration provision") (emphasis added). Most recently, several decisions by the Arkansas Court of Appeals did the same. *See Altice USA, Inc. v. Johnson*, 661 S.W.3d 707, 714 (Ark. Ct. App. 2023) (holding that plaintiff "manifested her agreement to the terms and conditions in the RSA, including the arbitration provision, when she paid the monthly invoices directing her to the RSA on Suddenlink's website.").[6]

These repeated endorsements of Suddenlink's contract formation process come as no surprise. As another federal court explained (in a decision affirmed by the Ninth Circuit), "the importance of a billing statement—it contains information at the heart of the service relationship— may make it *well-suited* for use [as] a means to communicate important information *such as contract terms*." *Hart v. Charter Commc'ns, Inc.*, 2017 WL 6942425, at *5 (C.D. Cal. Nov. 8, 2017), *aff'd*, 814 F. App'x 211 (9th Cir. 2020) (emphases added).[7]

In *Gooch*, this Court read *Sheridan* to impose a requirement that Suddenlink "explicitly inform[] customers of changes that had been made" to the RSA or its arbitration agreement over

---

[6]     *See also*, *e.g.*, *Altice USA, Inc. v. Peterson*, 661 S.W.3d 699, 704 (Ark. Ct. App. 2023); *Altice USA, Inc. v. Runyan*, 662 S.W.3d 247, 253 (Ark. Ct. App. 2023); *Altice USA, Inc. v. Francis*, 2023 WL 2290719, at *7 (Ark. Ct. App. Mar. 1, 2023).

[7]     *See also*, *e.g.*, *Moran v. Charter Comm'cns, Inc.*, 2020 WL 5833640, at *4 (C.D. Cal. June 11, 2020); *Olsen v. Charter Comm'cns, Inc.*, 2019 WL 3779190, at *5 (S.D.N.Y. Aug. 9, 2019); *Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015); *Delonge v. Time Warner Cable Bus. LLC*, 2014 WL 3890766, at *2 (E.D. Wis. Aug. 6, 2014).

time. 2023 WL 415984, at *10. While Suddenlink respectfully disagrees with that reading of West Virginia law, here Suddenlink did "explicitly inform" Edens of the update to the July 2022 RSA, including its arbitration provision. The email Suddenlink sent her in June 2022 told her that Suddenlink was "updating the Binding Arbitration provision of our Residential Services Agreement" under the bold heading "**An update to our Terms of Service**" and provided her with a link to the updated terms. Averill Aff. ¶ 7 & Ex. A. That type of explicit notice of an update to the arbitration clause is indistinguishable from the notice upheld in *Sheridan*. *See* page 1, *supra*.

In addition, "[c]ourts have found that when consumers receive emails" informing them of updated terms, "continued use of the service or product constitutes assent to the updated terms." *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018); *see also*, *e.g.*, *Joel Bauer & Assocs. v. Hawkins*, 2019 WL 4238885, at *2 (C.D. Cal. Mar. 25, 2019) (enforcing updated terms where the defendant "notified Plaintiff of the updated terms by email" and "Plaintiff continued to use [defendant's] services after" receiving the email). As another district court in this Circuit put it in enforcing contract terms offered by email, "email is a universal feature of modern life" that gives rise to the same presumption of receipt as sending a letter through the mail. *Hughes v. Charter Commc'ns*, 2020 WL 1025687, at *6 (D.S.C. Mar. 2, 2020).

**September 2019 RSA**. Edens also agreed to the September 2019 version of the RSA by paying her bills and during her 2020 installation and service appointments. *See* pages 2-3, *supra*.

The rules of contract formation are no different on an electronic device: "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (quotation marks omitted). Whether on paper or a screen, West Virginia requires notice of contract terms and assent to those terms. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020)

(holding that plaintiff formed a contract under West Virginia law by signing an electronic device with an acknowledgement stating that the customer agreed to the contract terms).

Suddenlink's contract-formation process readily complies with these requirements. As this Court acknowledged in *Gooch*, a similar process for signing a mobile device met "all the essential elements of contract formation." 2023 WL 415984, at *4; *see also*, *e.g.*, *Lopez*, 2021 WL 5112982, at *3. Moreover, in a case involving Cablevision (another company owned by Altice), the court held that a similar installation process yielded a valid and binding agreement because the "[p]laintiff or his representative provided a digital signature" during the process, which "indicated agreement to the Terms." *Krafczek v. Cablevision Sys. Corp.*, 2018 WL 8918077, at *4 (E.D.N.Y. Apr. 25, 2018). Similarly, in *Hancock v. AT&T Co.*, the Tenth Circuit concluded that customers agreed to the terms governing their television and voice services when during the installation process those customers were required to click "on an 'I Acknowledge' button on [a] web application, which is presented on the technician's laptop." 701 F.3d 1248, 1257 (10th Cir. 2012).

It appears that Ms. Edens signed the three work orders from her 2020 service visits. *See* Lucas Aff. Ex. B. But her assent is no less valid if on any of those occasions she verbally accepted the terms due to the pandemic. There is no question that offerees may accept a contract verbally under West Virginia law. "'Both the offer and acceptance may be by *word*, act or conduct that evince the intention of the parties to contract.'" *Sheridan*, 799 S.E.2d at 150 (quoting *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450-51 (1993)) (emphasis added). And "[t]he manifestation of assent may be made wholly by . . . spoken words." Restatement (Second) of Contracts § 19(1).

## B. Edens's Claims Fall Within The Scope Of Her Arbitration Agreements.

Edens's arbitration agreements easily encompass her claims. Each agreement requires arbitration of "[a]ny and all disputes arising between You and [Suddenlink]," including "its respective parents, subsidiaries, [and] affiliates." Heberer Aff. Ex. A § 24(a). The agreements

further specify that their scope "includes, but is not limited to: Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." *Id.* (emphasis added). Edens's claims about her Suddenlink service and the validity of the RSA fall squarely within that language. *See also* pages 13-14, *infra* (explaining that Edens's challenges to the RSA as a whole or to portions of the RSA other than the arbitration clause are for the arbitrator to decide).

Even if there were any uncertainty on that point—and there is none—"as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The "FAA provides the default rule for resolving certain ambiguities in arbitration agreements," including the rule "that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration," and that rule preempts any state law to the contrary. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418-19 (2019).

## C. Edens's Arbitration Agreements Are Fully Enforceable As A Matter Of Federal Law.

The complaint indicates that Edens will attempt to avoid arbitration by asserting that the RSA is unconscionable. But Edens's unconscionability challenges should fail.

To begin, Edens cannot avoid arbitration by challenging the validity of the RSA as a whole (such as her allegations that the RSA is too difficult to understand) or of terms in the RSA *outside* of the arbitration provision (such as her allegations challenging the RSA's limitation on warranties). *See*, *e.g.*, Am. Compl. ¶¶ 41-42, 46-49, 144-151, 182-187, 188-195. Those arguments are foreclosed by the Supreme Court's "rule of severability": any "challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447, 449 (2006); *see also Prima Paint*

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Because, as a matter of substantive federal law, an arbitration agreement is treated as a separate contract from the broader one in which it is contained, the Supreme Court has explained that a "party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *see also Gooch*, 2023 WL 415984, at *7 (recognizing same principle).

Instead, the only issue for the Court to decide is whether the arbitration provision *itself* is enforceable. It is. Under West Virginia law, Edens, as the party opposing arbitration, bears the burden of proving that her arbitration agreements are unconscionable. *W. Sur. Co. v. Rock Branch Mech., Inc.*, 2017 WL 5075253, at *5 (S.D. W. Va. Nov. 3, 2017) (citing *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 638 (W. Va. 2016)). To meet that burden, she must show that the arbitration provision is "*both* procedurally and substantively unconscionable." *Credit Acceptance Corp. v. Front*, 745 S.E.2d 556, 564 (W. Va. 2013) (emphasis added; quotation marks omitted); *see also*, *e.g.*, *McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 283 (4th Cir. 2016). West Virginia courts "apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E.2d 372, 376 (W. Va. 2013) (quotation marks omitted).

Neither form of unconscionability (much less both) is present here. Significantly, Edens' arbitration agreements materially differ from the earlier version of Suddenlink's terms that this Court addressed in *Gooch*.

### 1. The arbitration agreement is not procedurally unconscionable.

Procedural unconscionability "is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Credit Acceptance Corp.*, 745 S.E.2d at

564 (alterations and quotation marks omitted).  In assessing procedural unconscionability, courts

look to "the manner and setting in which the contract was formed, including whether each party

had a reasonable opportunity to understand the terms of the contract." *Ocwen Loan Servicing*, 752

S.E.2d at 388-89 (quotation marks omitted).

There was no procedural unconscionability here.  As discussed above (at 2-4),

Suddenlink's manner of presenting and obtaining assent to the RSA accords with settled principles

of contract formation.  And there is nothing "hidden or unduly complex" (*Ocwen Loan Servicing*,

752 S.E.2d at 388-89 (quotation marks omitted)) about the arbitration provision.  The RSA

highlights at the outset that it contains an arbitration provision, stating in bold capital letters in the

second paragraph that "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION

AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF

CLASS ACTIONS AND JURY TRIALS**."  Heberer Aff. Ex. A, at 1.  The provision is in the

same size font as the rest of contract under a clear heading,  stating: "**Binding Arbitration.  Please

read this section carefully.  It affects your rights**."  *Id.* Ex. A § 24.  The clause also bolds and

capitalizes key terms, such as the class-action waiver.  *Id.* Ex. A § 24(a), (i).

Courts have routinely held that, without other indications of procedural unfairness,

providing conspicuous notice that an agreement contains an arbitration clause forecloses the

possibility of procedural unconscionability.[8]  Moreover, while the notice of the arbitration clause

here was clear and conspicuous, any reading of West Virginia unconscionability doctrine that

would require Suddenlink to provide heightened notice of the arbitration clause would be

---

[8]     *See Price v. Morgan Fin. Grp.*, 2013 WL 3184671, at *3 (W. Va. June 24, 2013)
(unpublished); *see also, e.g.*, *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017);
*Larsen v. Citibank FSB*, 871 F.3d 1295, 1311 (11th Cir. 2017); *Anderson v. Amazon.com, Inc.*,
478 F. Supp. 3d 683, 698 (M.D. Tenn. 2020).

preempted by the FAA.  *See Doctors Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

This Court remarked in *Gooch* that the "adhesive nature of the arbitration agreement" and the absence of an opt-out provision are factors in support of procedural unconscionability.  2023 WL 415984, at *12.  But the Supreme Court of Appeals has emphasized that "[t]here is nothing inherently wrong with a contract of adhesion."  *Nationstar Mortg.*, 785 S.E.2d at 639 n.12 (quoting *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 286 (W. Va. 2011)).  West Virginia law has long recognized that "[m]ost of the transactions of daily life involve such contracts that are drafted by one party and presented on a take it or leave it basis"; these contracts play the essential role of "simplify[ing] standard transactions."  *Id.* (quoting *Brown*, 724 S.E.2d at 286).  As a result, the fact that a form contract is "prepared by a party with more power" does *not* make it procedurally unconscionable under West Virginia law.  *Id.* at 640 (collecting cases).

Moreover, and unlike in *Gooch*, here the September 2019 RSA to which Edens first agreed did allow her to opt out of arbitration.  *See* Heberer Aff. Ex. C § 24(a).  In all events, however, "the omission of an 'opt out' provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability."  *Nationstar Mortg.*, 785 S.E.2d at 640; *see also Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 617 (S.D. W. Va. 2012) (holding that lack of an opt-out clause did not make the contract unconscionable under West Virginia law).

In *Gooch*, this Court further relied on the fact that the 2016 version of Suddenlink's terms did not reproduce, explain, or hyperlink to the rules of the American Arbitration Association.  2023 WL 415984, at *13, 15.  That conclusion is not relevant here; the more recent versions of the RSA informed Edens, with a hyperlink to the AAA's website, that she "may obtain copies of those rules from the AAA at www.adr.org."  Heberer Aff. Exs. A-E.

Moreover, there is also nothing procedurally unconscionable about incorporating the rules of the nation's most popular arbitration provider. The Supreme Court of Appeals has upheld agreements incorporating the AAA rules on multiple occasions. *See*, *e.g.*, *Sheridan*, 799 S.E.2d at 147 n.2; *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 636, 638-43 (W. Va. 2016); *Shorts v. AT&T Mobility LLC*, 2013 WL 2995944, at *7 (W. Va. June 17, 2013) (memorandum decision).

Furthermore, a contrary rule of West Virginia law would be preempted by the FAA because it is not a ground "'for the revocation of *any* contract.'" *Perry*, 482 U.S. at 492 n.9 (emphasis added) (quoting 9 U.S.C. § 2). The AAA rules are analogous to the Federal Rules of Civil Procedure or state procedural rules, which do not have to be attached to contracts without arbitration clauses. As one federal court has put it, the FAA thus preempts a state-law rule "that, in the context of arbitration, . . . failure to provide a copy of the incorporated rules is procedurally unconscionable." *Wallace v. Red Bull Distrib. Co.*, 958 F. Supp. 2d 811, 823-24 (N.D. Ohio 2013); *see also*, *e.g.*, *McFarland v. Almond Bd. of Cal.,* 2013 WL 1786418, at *5 (E.D. Cal. Apr. 25, 2013); *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012).

Finally, this Court determined that the plaintiffs in *Gooch* did not have a "reasonable opportunity to understand" the terms of the arbitration agreement when the contract's terms were presented on a mobile device screen during their installation appointments and in the presence of a technician. 2023 WL 415984, at *14. That determination is beside the point here, because Edens agreed to the RSA in other contexts—such as after receiving clear email notice of the July 2022 RSA and dozens of billing statements alerting her to the terms. *See* pages 9-11, *supra*.

In any event, there is also nothing unusual about reading contract terms on a mobile device. The Second Circuit held as much in *Meyer*, involving the presentation of Uber's terms on a smartphone: "Consumers use their smartphones for, among other things, following the news,

shopping, social networking, online banking, researching health conditions, and taking classes."

868 F.3d at 77. Courts also routinely uphold contracts formed in the presence of a salesperson or

technician. For instance, the Tenth Circuit upheld a contract electronically presented by a

technician in the customer's home. *Hancock*, 701 F.3d 1257; *see also*, *e.g.*, *Lopez*, 2021 WL

5112982, at *3; *Krafczek*, 2018 WL 8918077, at *4.[9] The Supreme Court of Appeals of West

Virginia notably rejected a similar argument in the context of a real estate closing, explaining that

the "reality" that real estate closings often involve "hurried document execution" did not make the

contract procedurally unconscionable. *Nationstar Mortg.*, 785 S.E.2d at 641.

Finally, any interpretation of West Virginia unconscionability doctrine that would require

heightened notice of the arbitration clause is preempted by the FAA. *See Casarotto*, 517 U.S. at

687. *Casarotto* involved a Montana statute requiring contracts with an arbitration clause to include

notice of the clause in underlined capital letters on the first page of the contract. *Id.* at 683. In an

opinion by Justice Ginsburg, the Court held that the statute "directly conflicts with § 2 of the FAA"

because it imposes "a special notice requirement not applicable to contracts generally." *Id.* at 687.

The same is true here. As the Fourth Circuit has made clear, "the generally applicable

contract defense of unconscionability may not be applied in a manner that targets the existence of

an agreement to arbitrate as the basis for invalidating that agreement." *Muriithi v. Shuttle Express,*

*Inc.*, 712 F.3d 173, 180 (4th Cir. 2013); *see Concepcion*, 563 U.S. at 341-44; *Perry*, 482 U.S. at

---

[9]     Other recent decisions agree that there is nothing remarkable about signing a contract in
the presence of a salesperson, technician, or other representative of the business. *See*, *e.g.*,
*Lojewski v. Group Solar USA, LLC*, 2023 WL 5301423, at *8 (S.D.N.Y. Aug. 17, 2023); *Middleton
v. T-Mobile US, Inc.*, 2022 WL 16828226, at *6-8 (E.D.N.Y. Aug. 24, 2022); *Griffin v. Vivint
Solar, Inc.*, 2021 WL 2186408, at *5 (D.N.M. May 28, 2021); *Christian v. Pressed Juicery, Inc.*,
2021 WL 4771801, at *1, *3 (C.D. Cal. Apr. 23, 2021); *Lodge v. Sterling Jewelers, Inc.*, 2021 WL
651015, at *5, *8 (D. Del. Feb. 19, 2021); *Armstead v. Starbucks Corp.*, 2017 WL 5593519, at *5-
6 (S.D.N.Y. Nov. 17, 2017).

492 n.9 (holding that FAA preempts state-law rules, "whether of legislative *or judicial* origin," that single out arbitration agreements) (emphasis added).

In short, there was nothing procedurally unconscionable about Suddenlink's manner of presenting the RSA to Edens and obtaining her assent. And because Edens is required to demonstrate both procedural and substantive unconscionability, her unconscionability objections fail at the first step. *Cf. Hampden Coal, LLC v. Varney*, 810 S.E.2d 286, 297 (W. Va. 2018) (stating that "[i]nasmuch as we have determined that the Agreement is not substantively unconscionable, we need not address the issue of procedural unconscionability" before nonetheless explaining that the agreement was not procedurally unconscionable).

### 2. The arbitration agreement is not substantively unconscionable.

Under West Virginia law, "[a] contract term is substantively unconscionable only if it is both 'one-sided' and 'overly harsh' as to the disadvantaged party." *McFarland*, 810 F.3d at 279 (quoting *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012)); *see also id.* at 281 ("[S]ubstantive unconscionability is . . . reserved for those cases in which a contract is so one-sided that it has an overly harsh effect on the disadvantaged party.") (quotation marks omitted). Suddenlink's arbitration provision, which is mutually binding on Edens and Defendants, does not entail *any* degree of one-sidedness or harshness.

This Court in *Gooch* focused on three terms in an earlier 2016 version of Suddenlink's RSA that it concluded were one-sided: an exception for debt-collection lawsuits initiated by Suddenlink, a one-year contractual limitations period, and a prohibition on the arbitrator awarding punitive damages for common-law claims. *Gooch*, 2023 WL 415984, at *17-20. But none of those terms is present in the versions of Suddenlink's RSA at issue here. Heberer Aff. Exs. A-E.

Edens's challenge to the more recent versions of Suddenlink's terms is meritless. The focus of her challenge to the arbitration agreement in particular—as opposed to other provisions

in the RSA—is the arbitration agreement's prohibition on non-individualized relief, including non-individualized injunctive relief. *See* Am. Compl. ¶¶ 148-149. That argument is foreclosed by the FAA. The Supreme Court of Appeals of West Virginia has upheld agreements requiring individualized arbitration, including individualized injunctive relief. *See Sheridan*, 799 S.E.2d at 148, 154 & n.2; *State ex rel. AT&T Mobility v. Wilson*, 703 S.E.2d 543, 580 (W. Va. 2010).

*Sheridan* is instructive. The plaintiffs in *Sheridan* argued, similar to Edens here, that the "arbitration provision [is] unenforceable due to its prohibition on class-wide injunctive relief," and the trial court accepted that argument. 799 S.E.2d at 154; *see also id.* at 148 n.2 (noting that "the arbitrator may award the customer any form of *individual* relief that a court could including punitive damages, statutory damages, attorney's fees, and *individualized injunctions*") (emphases added). The West Virginia high court unanimously disagreed as a matter of *both* West Virginia and federal law, explaining that the trial court's "ruling is prohibited by our precedent and by the FAA under *Concepcion*." *Id.* at 154. As the court succinctly concluded, "[i]t is permissible for parties to an arbitration provision to agree to waive class-wide injunctive relief." *Id.* In light of *Sheridan*, Edens' allegations on this point are frivolous.

## II. THESE ACTIONS SHOULD BE STAYED PENDING ARBITRATION OF EDENS'S CLAIMS.

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

## CONCLUSION

The Court should compel arbitration of Edens's claims and stay the lawsuit pending the outcome of arbitration.

This 4th day of December, 2023.

**CEBRIDGE ACQUISITION, LLC, CEQUEL III COMMUNICATIONS I, LLC, CEQUEL III COMMUNICATIONS II, LLC, & ALTICE USA, INC.**

/s/ Randall L. Saunders
_____

Marc E. Williams, Esquire (W. Va. Bar No. 4062)
Randall L. Saunders, Esquire (W.Va. Bar No. 10162)
Jonah D. Samples, Esquire (W.Va. Bar No. 13683)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, West Virginia 25701
Telephone: (304) 526-3500
Facsimile: (304) 526-3599
*Counsel for Defendants*