UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHERI MICHELLE EDENS,**
**and other persons similarly situated,**

**Plaintiff,**

**v.**                                                                 **Civil Action No. 2:22-cv-00101**

**CEBRIDGE ACQUISITION, LLC,**                **Hon. Thomas E. Johnston**
**CEQUEL III COMMUNICATIONS I, LLC,**
**CEQUEL III COMMUNICATIONS II, LLC,**
**& ALTICE USA,**

**Defendants.**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION**

## TABLE OF CONTENTS

**Page**

I.      LEGAL STANDARD……………………………..…………………………….…1

II.     SUDDENLINK HAS REPEATEDLY VIOLATED ITS OWN ABRITRATION
        CLAUSE…………………………………………..……………………………….…1

III.    THE NUMEROUS ARBITRATION CLAUSES ARE NOT ENFORCEABLE…...3

        A. Plaintiff did not consent to the RSA or the Arbitration Provision………………......3

            1.  No Offer and Acceptance Took Place…………………………………………...3

            2.  No Consideration was Exchanged…………………………………………….....4

        B. The Arbitration Agreement is Unconscionable………………………………….…...6

            1.  The Arbitration Provision is Procedurally Unconscionable……………………..6

            2.  The Arbitration Provision is Substantively Unconscionable…………………...10

IV.     THE ARBITRATION PROVISION REQUIRES THIS COURT TO MAKE
        CERTAIN DETERMINATIONS……………………………………………………..19

V.      CONCLUSION……………………………………………………………………..20

# TABLE OF AUTHORITIES

**Page**

CASES

*Chaney v. Tri State Food Sys., Inc.*, No. CV 3:19-0519, 2020 WL 2615755 (S.D.W. Va. May 22, 2020) ......................................................................................................... 17

*Dan Ryan Builders, Inc. v. Nelson,* 737 S.E.2d 550 (W. Va. 2012) ................................ 17

*Frashuer v. Altice USA, Inc.*, 2023 WL 195523 (N.D. W. Va. Jan. 17, 2023), *motion for reconsideration pending.* ...................................................................................... 10

*Gooch v. Cebridge Acquisition LLC*, No. 2:22-CV-00184, 2023 WL 415984 (S.D.W. Va. Jan. 25, 2023), *appeal pending*, No. 23-1146 (4th Cir. filed Feb. 8, 2023) ............ *passim*

*Hayes v. Delbert Servs. Corp.,* 811 F.3d 666 (4th Cir. 2016) ..................................... 5, 11, 14, 18

*MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, 2022 WL 2390997 (N.D. Cal. July 1, 2022) ........................................................................................................ 16

*McGrath v. DoorDash, Inc.*, No. 19-CV-05279-EMC, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020), *reconsideration denied*, No. 19-CV-05279-EMC, 2020 WL 7227197 (N.D. Cal. Dec. 8, 2020) .................................................................... 16

*Perry v. Thomas,* 482 U.S. 483 (1987) ..................................................................... 3

*Citizens Telecommunications Co. of W. Va. v. Sheridan,* 799 S.E.2d 144 (2017) ......................... 9

*Shobe v. Latimer*, 162 W. Va. 779 253 S.E.2d 54 (1979) ........................................... 20

*State v. Dennis,* 216 W.Va. 331, 607 S.E.2d 437 (2004) ........................................... 1

*State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 567 S.E.2d 265 (2002) ............. 10, 15-16, 19, 20

*State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011) ................................................................................. 9, 10, 11

STATUTES

West Virginia Code §§ 46A-6-102 ........................................................................ 20

West Virginia Code §§ 46A-6-107 ........................................................................ 20

West Virginia Code §§ 46A-6-109 ........................................................................ 20

**OTHER**

New York Rule of Professional Conduct 4.2 ............................................................ 8, 9

Plaintiff, on behalf of herself and all others similarly situated (the "Class"), argues that the Motion to Compel Arbitration by Defendants (collectively "Suddenlink") should be denied, because, *inter alia*, Suddenlink ignored some of Plaintiff's most compelling arguments against enforcing the arbitration clause in its motion and has no right to refute those arguments in its reply. Specifically: (1) Suddenlink itself participated in a class action against Plaintiff in New Jersey state court in violation of its own arbitration clause; (2) Suddenlink initially failed to participate in its pre-arbitration procedures and arbitration; and (3) Suddenlink's adhesion contract is incomprehensible under West Virginia law, and Suddenlink has made no effort to repair it.

## I.      LEGAL STANDARD.

This Court is familiar with the legal standard required to compel arbitration. *Gooch v. Cebridge Acquisition LLC*, No. 2:22-CV-00184, 2023 WL 415984, at *2–3 (S.D.W. Va. Jan. 25, 2023), *appeal pending*, No. 23-1146 (4th Cir. filed Feb. 8, 2023) ("*Gooch*"). This Court should ignore arguments Suddenlink raises for the first time on reply,[1] especially where, as here, Suddenlink received prominent advance notice of those arguments yet failed to address them in the Motion to Compel.

## II.     SUDDENLINK HAS REPEATEDLY VIOLATED ITS OWN ABRITRATION CLAUSE.

Suddenlink apparently concedes that Suddenlink has repeatedly violated the very arbitration clause it seeks here to enforce. Amended Complaint (ECF 41) ("AC") ¶¶ 4-7, 51-58. Despite the prominent disclosure of this argument in Plaintiff's Amended Complaint, Suddenlink completely ignores it in Defendants' Memorandum of Law in Support of Motion to Compel Arbitration and to Stay Litigation (ECF 43) (hereinafter, "Memorandum" or "Mem.").

---

[1] *State v. Dennis,* 216 W.Va. 331, 350, 607 S.E.2d 437, 456 (2004) ("Insofar as this nonjurisdictional issue was raised for the first time in the *reply brief*, the State was not provided an opportunity to respond to the issue. Consequently, we decline to address the issue in this appeal.").

The Suddenlink adhesion contract states, "**BY ENTERING INTO THIS AGREEMENT, YOU AND OPTIMUM EACH WAIVE … THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.**" (allcaps and bold in original). Suddenlink admits that the arbitration provision "is mutually binding on Edens and Defendants," while failing to acknowledge that Suddenlink itself has breached the provision on multiple occasions. Mem. at 19.

Suddenlink entered into a class action settlement in New Jersey state court and sent out notice of that settlement to numerous West Virginians represented by counsel, including Plaintiff Edens and Ms. Gooch, in an attempt to bind them to those settlement terms, forcing them to opt out. Franklin Aff. ¶ 4, Ex. A; Edens Aff. ¶ 15. Thus, Suddenlink seeks to *deny* Roxy Gooch and Plaintiff Edens the right to sue in court, while simultaneously seeking to *require* Roxy Gooch and Plaintiff Edens to be part of a class action in a New Jersey state court that arguably settled their West Virginia claims. Franklin Aff. ¶ 4, Ex. A.

Further, the Amended Complaint sets forth how Suddenlink failed to participate in its own arbitration clause process until after Plaintiff filed the Complaint in the instant case. AC ¶¶ 51-58. Suddenlink's arbitration clause requires that "[a] party who intends to commence arbitration must first send the other party a written Notice of Dispute and engage in a good-faith negotiation of the dispute in an effort to resolve it without the need for arbitration." *Id.* Plaintiff did precisely that, and Suddenlink ignored Plaintiff's notice. *Id.* When Plaintiff filed the arbitration demand with the American Arbitration Association (AAA) as directed by Suddenlink's arbitration clause, *Plaintiff* had to pay the filing fee even though Suddenlink's arbitration clause promises otherwise. *Id.* Then, AAA sent a notice that AAA "has not received an Answer from Respondent [Suddenlink] and the date set for filing of the Answer has now passed." *Id.* Suddenlink fails to present the Court with

any reason to relieve it of its responsibility to participate in its own resolution and arbitration process. The Court should not entertain any such excuses or arguments on reply because Plaintiff has no opportunity to respond. *See* n.1, *supra*.

## III.     THE NUMEROUS ARBITRATION CLAUSES ARE NOT ENFORCEABLE.

The Federal Arbitration Act, as Suddenlink concedes, does not command adherence to an arbitration provision when the contract in which it appears is not enforceable. Mem. at 7 (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). Although Suddenlink characterizes its "arbitration agreements" as "fully enforceable," and that Plaintiff Edens "validly accepted those agreements," (Mem. at 7), West Virginia law dictates otherwise.

### A.  Plaintiff Did Not Consent to the RSA or the Arbitration Provision.

#### 1.  No Offer and Acceptance Took Place.

Suddenlink claims that Plaintiff "expressly acknowledges an agreement was formed" and "such admissions" are binding on the parties, but cites to no such express acknowledgement, instead relying on claims that "presume the existence of a contract". Mem. at 8. Obviously, even contradictory claims can be made in the alternative, and the Amended Complaint unambiguously and repeatedly challenges the existence of a contract. AC ¶¶ 35-49; 144-51.

In *Gooch*, "Suddenlink submitted its briefing on the assumption that the arbitration agreement contained within RSA in effect at the time the instant lawsuit was filed governs the instant case." 2023 WL 415984, at *3. Now, Suddenlink fails to suggest which of the five arbitration clauses govern this action.

Suddenlink argues that Plaintiff consented to the arbitration provision when she paid her bill and by clicking on a screen with a service technician standing over her. Mem. at 9-12. However, Suddenlink ignores this Court's finding that "it cannot be said that that Plaintiff assented

to the subsequent arbitration agreements when she had neither notice of any changes nor the opportunity to opt out." *Gooch*, 2023 WL 415984, at *11. Each arbitration clause that Suddenlink says bind Plaintiff states:

> **IF YOU HAVE BEEN AN EXISTING SUBSCRIBER FOR AT LEAST 30 DAYS BEFORE THE EFFECTIVE DATE OF THIS AGREEMENT AND HAVE PREVIOUSLY ENTERED INTO AN ARBITRATION AGREEMENT WITH OPTIMUM OR A PREDECESSOR COMPANY, THIS OPT OUT PROVISION DOES NOT APPLY TO YOU.**

Aff. of Travis Lucas (ECF 42-3) ("Lucas Aff.") Exs. A-E at ¶ 24(B). Plaintiff was an existing subscriber and therefore never had the opportunity to opt out of the 2020-2023 arbitration agreements.

With respect to the 2019 arbitration agreement, Suddenlink concedes Plaintiff did not sign it and the actual terms (including the arbitration provision) were never provided to her. Lucas Aff. ¶¶ 7-9. Instead, assuming the technician even followed protocol, she was read a generic statement that never even mentions an arbitration provision. *Id.* ¶ 8. Similarly, Exhibit A, had it even been provided to Plaintiff, fails to mention an arbitration agreement. *Id.* Ex. A. No arbitration agreement binds Plaintiff.

## 2. No Consideration was Exchanged.

In *Gooch*, 2023 WL 415984, this Court noted that:

> A promise becomes consideration for another promise only when it constitutes a binding obligation. Unlike a binding obligation, an "illusory promise" appears to be a promise, but it does not actually bind or obligate the promisor to anything. Because an illusory promise is not binding on the promisor, an illusory promise cannot constitute consideration.

*Id.* at *6. Gooch argued that the arbitration provision was unconscionable because Suddenlink could change it at any time. The Court determined that it could not look at the modification clause because it was located outside the arbitration clause. *Id.* at *7. The 2022-23 arbitration clause now

contains a modification clause, so the promise to arbitrate is illusory. Aff. of William Heberer (ECF 42-2) ("Heberer Aff.") at Exh. A-B, E ¶ 24(j) ("that amendment shall apply to all disputes or claims that have arisen or may arise between You and Suddenlink, including disputes or claims that arose prior to the effective date of the amendment."); *Gooch*, 2023 WL 415984, at *6.

As for prior versions, Plaintiff respectfully asks the Court to reconsider this issue because Suddenlink has moved the various restrictions that this Court found unconscionable to another part of the RSA in an effort to sanitize the arbitration provision. In essence, Suddenlink has morphed the RSA into one big arbitration clause. Further, the Fourth Circuit has noted that "although our focus must be on the arbitration agreement, not the underlying loan agreement, it is only natural for us to interpret the arbitration agreement in light of the broader contract in which it is situated." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 676 (4th Cir. 2016).

The arbitration provision is also illusory because Suddenlink consistently fails to follow it. Suddenlink participated in a class action in New Jersey that Plaintiff had to affirmatively opt out of in order to avoid its terms. Edens Aff. ¶ 15. Suddenlink failed to follow its pre-arbitration procedures by ignoring Plaintiff's notice of dispute, failed to pay Plaintiff's AAA fee, and failed to even file an answer in the arbitration until this lawsuit was filed. AC ¶¶ 51-58.

This Court also should not ignore the fact that Suddenlink has presented it with **five very different arbitration provisions**, each of which claims to govern all disputes arising before it existed and after it is terminated. How is that not illusory? Suddenlink has constantly used the modification clause to effect changes to the arbitration provision, even in ways designed to thwart specific West Virginians, including Plaintiff, from obtaining relief. Heberer Aff. Ex. A, B, E ¶ 24(g) (adding mass arbitration procedures to the arbitration clause, which was posted on the day Ms. Gooch's opposition to Suddenlink's motion to compel arbitration was due).

**B.  The Arbitration Agreement is Unconscionable.**

As this Court noted in *Gooch*, 2023 WL 415984, "[t]he concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." *Id.* at *11. Thus, the Court should remember that it is not dealing with a typical large corporation that has superior bargaining power over a consumer. It is uncontested that Suddenlink is an abusive monopolist who "operates in West Virginia as if it has no regulatory or contractual obligations." Staff Initial Brief ("PSC Staff Br."), Case No. 21-0515-CTV-SC-GI, at 1 (W. Va. Public Serv. Comm'n, Nov. 3, 2021). This is a unique case that deserves heightened scrutiny.

**1.  The Arbitration Provision is Procedurally Unconscionable.**

In *Gooch*, 2023 WL 415984, this Court listed the factors for determining procedural unconscionability:

> the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

*Id.* at *12. Virtually all such factors are present here.

*Literacy.* Only 37% of West Virginians are proficient readers, which is statistically lower than the national average. AC ¶ 49; Franklin Aff. Ex. C. The rest of the population either are unable to make complex inference and evaluation or have difficulty with printed material. *Id.*

*Hidden Terms.* Suddenlink moved some of the terms that this Court found unconscionable in *Gooch* outside of the arbitration clause, thus making them hidden terms. For example, "the 2017 Arbitration Agreement's prohibition on punitive damages [that] supports a finding of substantive unconscionability" (*Gooch*, 2023 WL 415984, at *19) has migrated outside the arbitration clause to a new home, where it is buried in a 247-word run-on sentence in section 22. The "contractual

statute of limitations" that this Court found "lacks mutuality" (*id.* at *18), has moved to section 9(G) and been re-written, presumably to appear less onerous, but it has the same non-mutual effect.

*Unduly Complex.* This Court found the 2017 Arbitration Agreement unduly complex. *Id.* at *13-14. Suddenlink's later iterations of its arbitration provisions fare no better. Each arbitration provision's second sentence reads as follows: "This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to [:]

- […]
- Claims that arose before this or any prior Agreement,
- Claims that may arise after the termination of this Agreement.

Mem. Exs. A-E ¶ 24. Thus, each and every arbitration provision applies to the claims that arose before it existed, plus claims that may arise after its termination, which possibly happened when Suddenlink posted a new RSA on its website. Heberer Aff. ¶¶ 5-6. Nothing in any arbitration provision states that the prior arbitration provisions no longer apply. To the contrary, each says—prior to these bullet points—that the agreement to arbitrate is intended "to be broadly interpreted". How is Plaintiff or any other customer supposed to know which arbitration agreement applies to their claim? This alone makes the agreements incomprehensible. Edens Aff. ¶ 17; *id.* ¶¶ 6-8, 14.

A highly sophisticated reader who scored in the top 99th percentile in reading comprehension and is a student at MIT found the RSA's terms completely incomprehensible and rendered the opinion that they would also be incomprehensible to the average person. AC ¶ 48; Franklin Aff. Ex B. Plaintiff, in her frustration with Suddenlink's poor service, sat down to study the terms and found them to be similarly incomprehensible, stating that she "could not comprehend the process, procedure, or my rights as a customer to address my service issues." Edens Aff. ¶ 6.

*Adhesion.* Even "Suddenlink does not dispute the adhesive nature of the arbitration agreement. Indeed, there is no genuine issue of material fact that the arbitration agreement is an

adhesion contract." *Gooch*, 2023 WL 415984, at *12 (citations omitted). And the "patently unfair circumstances surrounding Suddenlink's installation process [that] give customers little to no chance of understanding what they are agreeing to in the RSA" (*id.* at *14-15), still remain, except that the most egregiously unconscionable terms that were previously in the arbitration clause have now been buried by Suddenlink in different parts of the RSA.

*Manner and Setting.* The setting in which the contract was allegedly formed was initially during the early stages of the pandemic, Edens Aff. ¶¶ 4-5, when Suddenlink concedes that Plaintiff did not receive a copy of the terms and was never informed of the arbitration clause (Lucas Aff. ¶¶ 7-9), and subsequently, when Plaintiff was never given the option to opt out because she was an existing customer. Heberer Aff. Exs. A-E ¶ 24(B). Further, none of the service tickets reveal that an arbitration provision exists. Lucas Aff. Ex. B. Suddenlink has presented absolutely nothing that Plaintiff signed expressly agreeing to arbitration.

The setting also included the period of time after September 24, 2021, when Suddenlink knew Plaintiff was represented by counsel. Plaintiff reasonably would expect that, to the extent Suddenlink wants her to enter into any contract, her counsel would be notified. Edens Aff. ¶ 10. Under New York Rule of Professional Conduct (NYRPC) 4.2:

> (a) In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

> (b) Notwithstanding the prohibitions of paragraph (a), and unless otherwise prohibited by law, a lawyer may cause a client to communicate with a represented person unless the represented person is not legally competent, and may counsel the client with respect to those communications, *provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place.*

(emphasis added). Suddenlink never once gave advance notice to counsel that Plaintiff would be receiving contracts that Suddenlink would later claim were binding. Franklin Aff. ¶ 3. Rule 4.2 "contributes to the proper functioning of the legal system *by protecting a person who has chosen to be represented by a lawyer* in a matter against possible overreaching by other lawyers who are participating in the matter". NYRPC 4.2 cmt. 1 (emphasis added). Suddenlink's legal department, located in New York, clearly violated this rule in presenting (or having their client present) multiple contracts to Plaintiff without informing her counsel. This is not only unethical; it also renders the arbitration provision unconscionable. *See, e.g.*, *State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders*, 228 W. Va. 125, 138, 717 S.E.2d 909, 922 (2011) (as opposed to Suddenlink, who unethically and furtively *deprived* Plaintiff of her chosen counsel, "Richmond hired the lawyer who advised the plaintiffs when they signed the Agreement; Richmond apparently said it would charge an additional $7,500.00 per house if the plaintiffs used a lawyer of their own choosing. On facts such as these, the circuit court found each plaintiff's 'competitive bargaining power as against the multi-million dollar national corporation' was negligible.").

All Suddenlink can point to is that Plaintiff paid her bill under duress for a necessary service for which Suddenlink holds a monopoly. Edens Aff. ¶¶ 4-5.  Initially, Plaintiff respectfully challenges the Court to see how quickly it can locate the language Suddenlink relies upon to establish Plaintiff's consent to arbitration on the bill. Lucas Aff. Ex. C. It took us awhile.

Second, the billing statements never mention arbitration. Suddenlink claims that the "Supreme Court of Appeals of West Virginia has upheld [Suddenlink's] method of contract formation" (Mem. at 9), but missing from Suddenlink's purported "notice" via billing statement was the "paper copy of the Terms and Conditions [that] was included in the ... billing statement" at issue in *Sheridan*. *Citizens Telecommunications Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 151

(W. Va. 2017) ("Frontier was entitled to rely on its customers to read information circulated to them, *particularly when a paper copy* of the Terms and Conditions was included in the November 2012 billing statement.") (emphasis added).[2] Even if this Court agrees that Suddenlink's billing statements' mere notice of changes to its terms and conditions and a link to the RSA is sufficient, it must at least be comprehensible in order to be effective at all. Suddenlink's arbitration provision, as noted above, is not.

### 2.  The Arbitration Provision is Substantively Unconscionable

In *State ex rel. Richmond Am. Homes v. Sanders*, 228 W. Va. at 138, 717 S.E.2d at 922, the Court found the arbitration agreement unconscionable because, like the Suddenlink provision, it deprived the plaintiff of remedies:

> Richmond's Purchase Agreement collectively created an arbitration process that either implicitly or explicitly limited the ability of the plaintiffs to fairly pursue remedies for their injuries and damages caused by radon gas in their new homes. For instance, the Agreement explicitly states that Richmond "disclaims liability, and [Plaintiff] expressly waives any and all claims for property and/or personal injury or other economic loss resulting from ... radon gas[.]" The Agreement also says that Richmond is not "liable for any special, indirect or consequential damages," which the circuit court found would exculpate Richmond from damages for pain and suffering, intentional and negligent infliction of emotional distress, and punitive damages. The Agreement also says Richmond is not liable for diminution in the value of the home as a result of its misconduct. Further, the Agreement categorically attempts to eliminate various statutory and common law rights, including the plaintiffs' warranties under the Magnuson–Moss Act and "all warranties of fitness, merchantability and habitability."

The arbitration clause bars private attorney general actions, Heberer Aff. Ex. A ¶ 24(a, e, i), B ¶ 24(a, e, h), E ¶ 24(a, e, i), and thus violates the same principle. *State ex rel. Dunlap v. Berger*,

---

[2] This distinguishing factor is important, and Plaintiff respectfully trusts that on reconsideration the United States District Court for the Northern District of West Virginia, which initially ignored the difference between Altice's billing statement's reference to a provision in *Frashuer v. Altice USA, Inc.* and the paper copy included in *Sheridan* will ultimately agree. *See Frashuer v. Altice USA, Inc.*, 2023 WL 195523, at *2 (N.D. W. Va. Jan. 17, 2023), *motion for reconsideration pending*.

211 W. Va. 549, 567 n.15, 567 S.E.2d 265, 283 n.15 (2002) ("Our statutes and common law provide in some cases for the award of attorney fees to encourage the "private attorney general" enforcement of laws that protect the general welfare; and we have an established body of law on attorney fee awards. *[...]* a provision in a contract of adhesion that would operate to restrict the availability of an award of attorney fees to less than that provided for in applicable law would, under our decision today, be presumptively unconscionable.").

Similarly, this Court found the restriction on punitive damages and the contractual statute of limitations to be unconscionable. *Gooch*, 2023 WL 415984, at *18-19. As explained above, Suddenlink has now moved those two provisions outside of the arbitration clause, making them hidden terms.

Although this Court expressed a reluctance to look at any provision that does not appear in the actual arbitration clause in *Gooch*, the Court should do so here for three reasons: (1) Suddenlink moved the unconscionable provisions outside the arbitration clause; (2) both the Fourth Circuit and the WVSC looked outside the arbitration provision for terms that demonstrate unconscionability when applied to the arbitration, *Hayes*, 811 F.3d at 676 ("And although our focus must be on the arbitration agreement, not the underlying loan agreement, it is only natural for us to interpret the arbitration agreement in light of the broader contract in which it is situated. As noted above, provisions in the loan agreement starkly proclaim that 'no United States state or federal law applies to this Agreement.' The brazen nature of such statements confirms that Western Sky's arbitration agreement is little more than an attempt 'to achieve through arbitration what Congress has expressly forbidden.' Good authority counsels that severance should not be used when an agreement represents an 'integrated scheme to contravene public policy.'") (citations omitted); *Sanders*, 228 W. Va. at 138, 717 S.E.2d at 922 ("Richmond's Purchase Agreement

<u>collectively created</u> an arbitration process that either implicitly or explicitly limited the ability of the plaintiffs to fairly pursue remedies for their injuries and damages"); and (3) Suddenlink invited the Court to review the entire RSA with its statement that "none of the versions of the RSA Edens agreed to include …. a prohibition on the arbitrator awarding punitive damages for common-law claims". Mem. p. 1. That statement is false, and the Court has the responsibility to test it. Specifically, Section 22 says:

> **<u>Except for a refund or credit as expressly provided in this Agreement, in no event (including negligence) will the Optimum Parties be held responsible or liable for any loss, damage, cost or expense including direct, indirect, incidental, special, treble, punitive, exemplary or consequential losses or damages</u> including, but not limited to, loss of profits, earnings, business opportunities, loss of data, personal injury (including death), property damage or legal fees and expenses, sought by Subscriber or anyone else using Subscriber's Service account: (x) resulting directly or indirectly out of the use or inability to use the Services (including the inability to access emergency 911 or e911 services) and/or use of the Software, Equipment or provided third party services or otherwise arising in connection with the installation, maintenance, failure, removal or use of Services, Software and/or Equipment or Subscriber's reliance on the Services, Software and/or Equipment, including without limitation any mistakes, omissions, interruptions, failure or malfunction, deletion or corruption of files, work stoppage, errors, defects, delays in operation, delays in installation, failure to maintain proper standards or operation, failure to exercise reasonable supervision, delays in transmission, breach of warranty or failure of performance of the Services, Software and/or Equipment; or (y) <u>resulting directly or indirectly out of, or otherwise arising in connection with, any allegation, claim, suit or other proceeding relating to Services, Software and/or Equipment,</u> or the infringement of the copyright, patent, trademark, trade secret, confidentiality, privacy, or other intellectual property or contractual rights of any third party.**

Heberer Aff. Ex. A-E ¶ 22. The phrases "any claim" and "including negligence" certainly include common-law claims and "claim" and "other proceeding" includes arbitration. Suddenlink's statement is inaccurate. Further, the "refund or credit as expressly provided in this agreement" refers to the following (underlining added) additional hidden term:

> Any adjustment or refund, given in each case at Optimum's sole discretion, will be accomplished by a credit on a subsequent bill for Service, unless otherwise required by applicable law.

Heberer Aff. Ex. A-E ¶ 9. Thus, any damages awarded under the arbitration provision, which must be paid through a credit on a bill, are only available "in each case at Optimum's sole discretion". In short, all damages, including punitive, are completely illusory. Further, Suddenlink also limits its liability to the amount of a single monthly bill for services (paid in its sole discretion, of course):

> Except as otherwise expressly provided in this Agreement, the liability of Optimum, its officers, shareholders, directors, employees, affiliates, vendors, carrier partners, content providers and other persons or entities involved in providing the Services or Equipment (collectively, the "Optimum Parties") for damages shall in no event, by reason of any delays, interruptions, omissions, errors, failures or defects in installation or service, exceed an amount equal to the Subscriber's Service charges and associated Equipment fees for a regular billing period ("Maximum Credit").

Ex. A ¶ 9. So, Suddenlink could provide no service for 12 months, and the most a customer could recover in arbitration is for 1 month, assuming Suddenlink decides in its "sole discretion" to award it through "a credit on a subsequent bill". Suddenlink misleadingly cites only to paragraph 24 in support of its claim that none of the 2019-2023 RSAs contain "a limitation on the arbitrator's ability to award punitive damages." Mem. p. 5.

Like the unconscionable agreement in *Sanders*, the RSAs also disclaim all warranties, in violation of West Virginia law, AC ¶¶ 188-195 (Count IX), and – in an overreach so egregious that not even *Richmond American Homes* would have contemplated it – unbelievably require Plaintiff to indemnify Suddenlink in the following situation, as described in Plaintiff's letter to Suddenlink:

> I could easily go on respecting additional unclear and confusing terms, but will instead close this inquiry with the following sentence, if one can call it that, from the Residential Services Agreement, which is emblematic of the nonsensical nature of Optimum's terms:

> Subscriber agrees to indemnify and hold harmless the Optimum Parties against claims, losses or suits for injury to or death of any person, or damage to any property which arises from the use, placement or presence or removal of Optimum's Equipment, facilities and associated wiring on Subscriber's premises and further, Subscriber indemnifies and holds harmless the Optimum Parties against claims for libel, slander, or the infringement of copyright arising directly or indirectly from the material transmitted over the facilities of Optimum or the use thereof by Subscriber; against claims for infringement of patents arising from combining with or using in connection with, facilities furnished by Optimum, and apparatus, Equipment, and systems provided by Subscriber; and against all other claims arising out of any act or omission of Subscriber in connection with the Services or facilities provided by Optimum.

> After reading this sentence multiple times, it appears that this sentence is saying, in part, that if Optimum recklessly installs wiring that causes a fire and burns Subscriber's house to the ground with Subscriber's children in it, then *Subscriber* is required to indemnify the Optimum Parties against the resulting wrongful death and property loss claim. This seems like a material term that should be in plain language rather than hidden in an extensive run-on sentence containing completely nonsensical subparts, *e.g.*, "infringement of patents arising from combining with or using in connection with, facilities furnished by Optimum, and apparatus, Equipment, and systems provided by Subscriber". Adding to the confusion, why is the word "Equipment" masquerading as a defined term? "Subscriber Equipment" is defined, but "Equipment" is not.

Edens Aff. ¶ 12. Suddenlink failed to respond to Plaintiff's letter, *id.*, so Plaintiff has no opportunity to respond to whatever argument Suddenlink makes.

Contrary to its claim that none of the 2019-2023 RSAs contains "a contractual limitations period," Mem. at 5 (citing ¶ 24), Suddenlink creates a one-year limitations period outside of ¶ 24 in another part of the RSA:

> Unless otherwise provided by applicable law, in the event any amounts owed by Optimum to Subscriber are not claimed by Subscriber within one year of the date on which the amount became payable to Subscriber, Subscriber shall forfeit all rights to the refund and all such amounts shall become the property of Optimum.

RSA ¶ 9(G). Moving unconscionable provisions to another section of the RSA should not insulate Suddenlink from a finding of unconscionability. *Hayes.*, 811 F.3d at 673–74 ("With one hand, the arbitration agreement offers an alternative dispute resolution procedure in which

- 14 -

aggrieved persons may bring their claims, and with the other, it proceeds to take those very claims away. The just and efficient system of arbitration intended by Congress when it passed the FAA may not play host to this sort of farce.").

If the arbitration results in an injunction, the loser can appeal to a three-person arbitration panel under the Optional Appellate Arbitration Rules ("OAAR"). Heberer Aff. Ex. A-B, D-E ¶ 24(e), C ¶ 24(d). This solely benefits Suddenlink because there is no circumstance where an arbitrator would enter an injunction against a customer – Suddenlink can simply cut off the customer's service to prevent further use. AC ¶ 201(b).

Under OAAR 12(d), "The appeal tribunal's decision may include a reallocation of a party's share of the fees and costs of the appeal." Thus, the Suddenlink adhesion contract manages to gut any protection against excessive arbitration fees afforded the customer because correcting any problem requires injunctive relief. Edens Aff. ¶ 12. This is so unfair and unconscionable that AAA expressly bans applying the OAAR to consumer disputes. OAAR 1*.[3]

Further, OAAR imposes a $6000 filing fee. OAAR Administrative Fee Schedule ("There is a non-refundable $6,000 administrative fee to be paid by the party seeking an appellate arbitration under these Appellate Rules. [...] These fees do not include the fees and costs of the Appeal Tribunal."). Only *after* paying $6,000 can a party discover the three arbitrators' hourly rates - the total cost of the arbitration remains unknown. Franklin Aff. Ex. D (Email from AAA: "Arbitrators and mediators are independent of the AAA and therefore our roster information including their rates, is only available once the case has been filed."); *see Dunlap*, 567 S.E.2d at

---

[3] "These Appellate Rules do not apply to disputes where the arbitration clause is contained in an agreement between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices."

281 ("It is not only the costs imposed on the claimant but the *risk that* the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process.").

The 2019 arbitration provision retains the unconscionable notice requirement of its 2017 predecessor. Heberer Aff. Ex. C ¶ 24(b)(i); *Gooch*, at *18. The 2022-2023 arbitration clause adds "Mass Arbitration Procedures" that directly impact Plaintiff:

> If 25 or more claimants submit Notices of Dispute or file arbitrations raising similar claims and are represented by the same or coordinated counsel, all the cases must be resolved in staged bellwether proceedings. You agree to this process even though it may delay the resolution of your claim. In the first stage, each side shall each select up to 15 cases (30 cases total) to be filed in arbitration and resolved individually by different arbitrators. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, administer, or demand payment of fees for arbitrations commenced in violation of this Mass Arbitration Procedures section. If the parties cannot agree how to resolve the remaining cases after the conclusion of the first stage of bellwether proceedings, the process will be repeated until all claims are resolved.

Heberer Aff. Ex. A-B ¶ 24(g). A similar provision was recently found unconscionable in *MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, 2022 WL 2390997, at *13 (N.D. Cal. July 1, 2022). Like the *MacClelland* provision, Suddenlink's provision lacks mutuality and Suddenlink openly admits it "may delay the resolution of your claim." Heberer Aff. Ex. A-B ¶ 24(g). Indeed, this warning acts to deter the hiring of counsel experienced in Suddenlink arbitrations because the hiring of such counsel would result in delayed resolution.

The provision is unlike the provision found to be acceptable in *McGrath v. DoorDash, Inc.*, No. 19-CV-05279-EMC, 2020 WL 6526129, at *4 (N.D. Cal. Nov. 5, 2020), *reconsideration denied*, No. 19-CV-05279-EMC, 2020 WL 7227197 (N.D. Cal. Dec. 8, 2020), or the American Arbitration Association's ("AAA") Supplementary Rules for Multiple Case Filings, which the AAA developed last year to "provide parties and their representatives with an efficient and economical path toward the resolution of multiple individual disputes." *MacClelland*, 2022 WL

2390997, at *14. Instead, the Suddenlink mass arbitration provision lacks mutuality, because Suddenlink can have the same counsel across multiple cases without consequence, while customers cannot share counsel without suffering a delay in the resolution of their claims. *Chaney v. Tri State Food Sys., Inc.*, No. CV 3:19-0519, 2020 WL 2615755, at *2 (S.D.W. Va. May 22, 2020) ("the West Virginia Supreme Court has held that a lack of mutuality can make a contract substantively unconscionable") (citing *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550 (W. Va. 2012) ("In assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation. If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable.")).

The "Mass Arbitration Procedures" also operate in conjunction with the self-contradictory "consolidated disputes" clause to eliminate mutuality:

> This arbitration provision *does not permit and explicitly prohibits the arbitration of consolidated*, class, or representative *disputes **of any form***. In addition, although the arbitrator may award any relief that a court could award that is individualized to the claimant and would not affect other Suddenlink account holders, neither You nor Suddenlink may seek, nor may the arbitrator award, non-individualized relief that would affect other account holders. Further, *the arbitrator may not consolidate or join more than one person's claims unless all parties affirmatively agree in writing*.

Heberer Aff. Ex. A, B, E ¶ 24(i). Which is it? If consolidated disputes "of any form" are prohibited, then how could the arbitrator "consolidate … more than one person's claims" even if "all parties affirmatively agree in writing"? Moreover, the arbitrator would have no authority to allow such a thing, because that decision must be made by a court. *Id.* ¶ 24(e). As concerning Plaintiff, who is represented by counsel who represents more than 25 customers, Franklin Aff. ¶ 2, the rule governing consolidated disputes is further complicated due to the "bellwether proceedings," that "will be repeated until all claims are resolved." Heberer Aff. Ex. A-B, E ¶ 24(g). "In the first stage,

each side shall each select up to 15 cases (30 cases total) to be filed in arbitration and *resolved individually by **different** arbitrators*." *Id.* (emphasis added). Assuming by some twist of logic a consolidation option does exist for most petitioners, Plaintiff is deprived of it simply because her counsel represents more than 25 claimants.

The arbitration clause also requires that "Whoever sends the Notice of Dispute must give the other party 60 days after receipt to investigate the claim." *Id.* ¶ 24(c)(ii). If Suddenlink sends a customer a Notice of Dispute, what 60-day investigation will the customer conduct? Looking at their bank statements to see if the bill was paid? Looking in their closets for alleged unreturned equipment? This provision solely benefits Suddenlink. It can wait 60 days to collect payments or unreturned equipment without consequence. By contrast, customers have no alternative to Suddenlink for phone, cable, and internet services, which are vital to health and safety in the form of 911 calls, the emergency broadcast system, and online healthcare services. Waiting 60 days for restoration of those services could literally be a matter of life or death. Given Suddenlink's monopoly and the importance of the services, no mutuality exists for this provision.

Despite the fact that service takes place in West Virginia, the Suddenlink adhesion contract negates West Virginia state law and imposes federal law: "Because the Service(s) provided to You involves interstate commerce, *the Federal Arbitration Act ("FAA"), not state arbitration law*, shall govern the arbitrability of all disputes under this arbitration provision. *Any state statutes pertaining to arbitration shall not be applicable*." Heberer Aff. Ex. A-B ¶ 24(f) (emphasis added). This is the reverse of *Hayes*, 811 F.3d at 675, where the arbitration agreement "almost surreptitiously waives a potential claimant's federal rights through the guise of a choice of law clause."

Finally, Suddenlink's prohibition on relief that affects any other account holders – which is even more restrictive than banning class-wide injunctive relief (Mem. 20) – prevents every

customer from getting the only effective remedy. Edens Aff. ¶ 12; *Dunlap*, 567 S.E.2d at 279 ("Moreover, a host of federal cases ... have recognized that if an arbitral forum substantially denies a party the rights and remedies that are provided by laws designed to protect and benefit the public, the FAA does not operate to require that those rights be surrendered.").

## IV.   THE ARBITRATION PROVISION REQUIRES THIS COURT TO MAKE CERTAIN DETERMINATIONS.

What is stunning about Suddenlink's motion is that it fails to raise the very issues the arbitration provision requires this Court to determine, which were clearly outlined in the Amended Complaint: Is Plaintiff seeking non-individualized relief? Is a class action prohibited under the circumstances? Is Plaintiff pursuing a private attorney general action? Yet again, Suddenlink has failed to follow the very rules it created. The West Virginia Public Service Commission Staff has already determined that "Suddenlink operates in West Virginia as if it has no regulatory or contractual obligations." AC ¶ 201(d). That assessment is evident here as well, and Suddenlink has waived its opportunity to be heard on those issues. Given Suddenlink's repeated breach of its own arbitration provision, it would be unconscionable to enforce it, even if this Court finds it enforceable. The arbitration provision requires this Court to make certain determinations, all of which Defendants fail to raise in their Motion. Specifically, according to the arbitration provision:

> All issues are for the arbitrator to decide, except that issues relating to arbitrability, the scope or enforceability of this arbitration provision, the interpretation of its prohibitions of class, representative, and private attorney general proceedings and non-individualized relief, and compliance with the requirements of Sections 24.c and 24.g shall be for a court of competent jurisdiction to decide.

Heberer Aff. Ex. A, B, E ¶ 24. Plaintiff has requested class relief. Suddenlink should have raised that issue in its motion for a determination of whether or not Suddenlink can enforce a class action prohibition after participating in the New Jersey class action in violation of the same prohibition. Suddenlink has waived the issue and the case should proceed to class certification.

Plaintiff has made claims under West Virginia Code §§ 46A-6-102, 46A-6-109, & 46A-6-107 for unfair and deceptive trade practices, incomprehensible contract, and excluding express or implied warranties. For each of these claims, Plaintiff has a right to a jury trial under West Virginia Code § 46A-6-106. Suddenlink has waived the issue and Plaintiff may have a jury trial.

A related question for this Court is whether claims under West Virginia Code §§ 46A-6-102, 46A-6-109, & 46A-6-107 are "private attorney general proceedings", a phrase that is not defined in the RSA and discussed only in passing by the West Virginia Supreme Court of Appeals.[4] *Dunlap*, 211 W. Va. at 567, 567 S.E.2d at 283, suggests that a consumer protection case such as this could be considered a "private attorney general" action, and if it is, then the agreement barring such an action is presumptively unconscionable.

Plaintiff also desires to compel Defendants to improve their services. Under one reading of the arbitration provision's ban on non-individualized relief, if the line to Plaintiff's neighborhood is defective or obstructed by vegetation that Suddenlink refuses to clear, then Plaintiff cannot obtain relief because fixing the line to her neighborhood would also fix the problems of other Suddenlink account holders. The Court must determine whether or not Plaintiff can obtain relief that requires Suddenlink to repair the entire system.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Suddenlink's Motion to Compel Arbitration and to Stay Litigation.

Dated: December 18, 2023

---

[4] *See, e.g., Shobe v. Latimer*, 162 W. Va. 779, 788, 253 S.E.2d 54, 60 (1979) ("Certainly he who is "likely to be financially" injured may be a reliable private attorney general to litigate the issues of the public interest in the present case.").

*/s/ Dennis C. Taylor*
Dennis C. Taylor, Bar No. 6965
Taylor Conway Price PLLC
831 Fourth Avenue, Suite 201
Huntington, West Virginia 25701
Phone: (304) 541-0332
Email: dennis@taylorconwayprice.com

Charles R. "Rusty" Webb
Bar No. 4782
The Webb Law Centre, PLLC
716 Lee St. E.
Charleston, West Virginia 25301
Phone: (304) 344-9322
Fax: (304) 344-1157
Email: rusty@rustywebb.com

Talcott J. Franklin *
TFPC, a Maine Professional Corporation
181 Western Promenade
Portland, Maine 04102
Phone: (214) 642-9191
Fax: (207) 512-1248
Email: tal@tfpc.me

* Licensed only in Maine, Michigan, North Carolina,
South Carolina (inactive), and Texas. Admitted *pro
hac vice*.