**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**CHERI MICHELLE EDENS, and others
similarly situated,**

        **Plaintiff,**

**v.**

**CEBRIDGE ACQUISITION, LLC,
CEQUEL III COMMUNICATIONS I, LLC,
CEQUEL III COMMUNICATIONS II, LLC,
& ALTICE USA,**

        **Defendants.**

Civil Action No: 2:22-cv-00101

Hon. Thomas E. Johnston

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND TO STAY LITIGATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ............................................................................................................ 1

A.    Edens's assertions that Suddenlink is precluded from enforcing its arbitration provision under the FAA are meritless. ............................... 1

    1.    Edens ignores the standards for moving to compel arbitration................. 1

    2.    Edens's arguments are wrong on the law and the facts. ........................... 2

B.    Edens Cannot Dispute The Existence Of Her Binding Arbitration Agreements. ......................................................................................... 5

    1.    Edens received service under contract terms containing an arbitration clause, as her own ongoing arbitration and complaint confirm. ............................................................................................ 5

    2.    Edens agreed to the July 2022 RSA. ....................................................... 7

    3.    Edens is bound by the arbitration clause in the September 2019 RSA. .................................................................................................. 10

C.    Edens's Arbitration Agreements Are Fully Enforceable Under The FAA. ......... 11

    1.    The arbitration agreements are not procedurally unconscionable. .......... 12

    2.    The arbitration agreements are not substantively unconscionable. ......... 14

CONCLUSION ........................................................................................................ 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acord v. Chrysler Corp.*,
  399 S.E.2d 860 (W. Va. 1990)....................................................................3

*AT&T Mobility v. Concepcion*,
  563 U.S. 333 (2011).................................................................... *passim*

*In re AT&T Mobility Wireless Data Services Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .........................................................3

*Barach v. Sinclair Media III, Inc.*,
  392 F. Supp. 3d 645 (S.D. W. Va. 2019) ..................................................19

*Berardi v. Meadowbrook Mall Co.*,
  572 S.E.2d 900 (W. Va. 2002) .................................................................14

*Bischoff v. DIRECTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002) ......................................................3

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3d Cir. 2002)......................................................................9

*Campbell v. Boston Sci. Corp.*,
  882 F.3d 70 (4th Cir. 2018) .....................................................................18

*Cheney v. Tri State Food Sys.*,
  2020 WL 2615755 (S.D. W. Va. May 22, 2020)........................................12

*Chun Ping Turng v. Guaranteed Rate*,
  371 F. Supp. 3d 610 (N.D. Cal. 2019) ....................................................3, 4

*Citizens Telecommc'ns Co. of W. Va. v Sheridan*,
  799 S.E.2d 144 (W. Va. 2017)..................................................... *passim*

*Doctors Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996)...............................................................................13

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
  2008 WL 830262 (E.D. Ark. Mar. 25, 2008) ..............................................9

*Farnsworth v. Towboat Nantucket Sound, Inc.*,
  790 F.3d 90 (1st Cir. 2015)......................................................................13

*Goetsch v. Shell Oil Co.*,
    197 F.R.D. 574 (W.D.N.C. 2000) ..........................................................................9

*Gooch v. Cebridge Acquisition LLC*,
    2023 WL 415984 (S.D. W. Va. Jan. 25, 2023), *appeal pending*, No. 23-1146
    (4th Cir. filed Feb. 8, 2023) ................................................................... *passim*

*Haider v. Lyft, Inc.*,
    2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021), *reconsideration denied*, 2022
    WL 1500673 (S.D.N.Y. May 11, 2022) ................................................................8

*Hayes v. Delbert Services Corp.*,
    811 F.3d 666 (4th Cir. 2016) ..............................................................................15

*Iberia Credit Bureau v. Cingular Wireless, LLC*,
    379 F.3d 159 (5th Cir. 2004) ................................................................................9

*Jarry v. Allied Cash Adv. Va., LLC*,
    175 F. Supp. 3d 622 (W.D. Va. 2016) ..............................................................16

*Larsen v. Citibank FSB*,
    871 F.3d 1295 (11th Cir. 2017) ......................................................................9, 10

*Lawrence v. Household Bank (SB), N.A.*,
    343 F. Supp. 2d 1101 (M.D. Ala. 2004) ..............................................................3

*MacClelland v. Cellco Partnership*,
    609 F. Supp. 3d 1024 (N.D. Cal. July 1, 2022), *appeal pending*, No. 22-16020
    (9th Cir.)................................................................................................17, 18, 19

*March–Westin Company, Inc. v. Swinerton Builders, Inc.*,
    2018 WL 2471451 (N.D. W. Va. June 1, 2018) ...................................................7

*Mey v. DIRECTV, LLC*,
    971 F.3d 284 (4th Cir. 2020) ..............................................................................20

*Miracle-Pond v. Shutterfly, Inc.*,
    2020 WL 2513099 (N.D. Ill. May 15, 2020) ........................................................9

*Nationstar Mortg., LLC v. West*,
    785 S.E.2d 634 (W. Va. 2016)..............................................................................2

*Panetta v. Chesapeake Energy Corp.*,
    2010 WL 1930160 (S.D. W. Va. May 12, 2010)................................................14

*Pirone v. CMH Homes Inc.*,
    2019 WL 13198208 (D. Ariz. Aug. 26, 2019) ...................................................16

*Sanchez v. Valencia Holding Co.*,
  353 P.3d 741 (Cal. 2015) ...............................................................................17

*Schwartz v. Comcast Corp.*,
  256 F. App'x 515 (3d Cir. 2007) ......................................................................7

*Serpa v. Cal. Surety Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) .........................................................................20

*Shorts v. AT&T Mobility*,
  2013 WL 2995944 (W. Va. June 17, 2013) ...........................................3, 8, 20

*Snowden v. CheckPoint Check Cashing*,
  290 F.3d 631 (4th Cir. 2002) .........................................................................14

*State ex rel. AT&T Mobility LLC v. Wilson*,
  703 S.E.2d 543 (W. Va. 2010) ...........................................................3, 12, 20

*State ex rel. Ranger Fuel Corp. v. Lilly*,
  267 S.E.2d 435 (W. Va. 1980) .........................................................................7

*State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders*,
  717 S.E.2d 909 (W. Va. 2011) .......................................................................15

*SWN Prod. Co. v. Long*,
  807 S.E.2d 249 (W. Va. 2017) .......................................................................15

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ............................................................3

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) .......................................................................10

*In re TracFone Unlimited Service Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) .............................................................4

*United States v. Purdue Pharma, L.P.*,
  600 F.3d 319 (4th Cir. 2010) ...........................................................................3

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  857 F. Supp. 2d 1135 (D. Colo. 2012) ............................................................9

**Statutes and Rules**

9 U.S.C. § 2 .........................................................................................................7

Fed. R. Civ. P. 23(g) ...........................................................................................18

**Other Authorities**

AAA, Mass Arbitration Supplementary Rules (Aug. 1, 2023).......................................................19

Fred Pace, *PSC says Optimum's reaction to 2022 order is positive*, The Herald-
Dispatch (Dec. 6, 2023) ...........................................................................................................11

Edens barely engages with Suddenlink's opening motion in her opposition. Notably, she does not deny that the arbitration agreements at issue here are materially distinguishable from those in *Gooch v. Cebridge Acquisition LLC*, 2023 WL 415984 (S.D. W. Va. Jan. 25, 2023), *appeal pending*, No. 23-1146 (4th Cir. filed Feb. 8, 2023). Instead, she raises a series of arguments that are misguided, omit or misstate the facts, and are often contrary to controlling authority.

To begin with, her assertions of waiver misfire from the start. Suddenlink had no obligation to ferret out in its opening brief every possible argument Edens might raise in its opposition based on the amended complaint's allegations. In addition, while Edens spills much ink on Suddenlink's entering into a class action settlement in an utterly unrelated case, she fails to mention case law holding that settling one case does not affect a defendant's arbitration rights in another one. And— in a pattern repeated throughout her opposition—she also conceals that her counsel withdrew the objections to the settlement that she cites.

Edens's attempt to dispute the existence of her arbitration agreements fares no better. She initiated an arbitration under those agreements, and her complaint admits that the agreements exist. Her remaining arguments against contract formation are meritless for the reasons explained below.

Finally, as explained below, Edens's enforceability challenges either mischaracterize what the arbitration agreements actually say or have been resoundingly rejected by the courts.

The Court should enforce Edens's arbitration agreements under the Federal Arbitration Act ("FAA") and stay this lawsuit pending the outcome of Edens's ongoing arbitration.

## ARGUMENT

### A. Edens's assertions that Suddenlink is precluded from enforcing its arbitration provision under the FAA are meritless.

#### 1. Edens ignores the standards for moving to compel arbitration.

Edens cites no authority for her argument (Opp. 1) that Suddenlink was required to

anticipate all of her arguments based on allegations in the amended complaint. That lack of authority is not surprising. To be sure, Suddenlink did anticipate several of Edens's arguments. Mem. 5, 13-14, 19-20. But Edens's position flips the relevant burden on its head. Because she is opposing arbitration, she has the burden of challenging the existence or enforceability of her arbitration agreements. *See Gooch*, 2023 WL 415984, at \*2 (party opposing arbitration must "'make an unequivocal denial that an arbitration agreement exists'"); *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 636, 638 (W. Va. 2016) (party opposing arbitration has "'burden of proving that a contract term is unconscionable'"). Here, Suddenlink met its initial burden by demonstrating that each of the four elements for compelling arbitration under the FAA are satisfied here. Mem. 6-7 (citing *Gooch*, 2023 WL 415984, at \*2). Accordingly, there is nothing improper about a party responding in reply to the arguments raised in an opposition to a motion to compel arbitration.

### 2.   Edens's arguments are wrong on the law and the facts.

**a.**   Edens relies heavily on a class action settlement in New Jersey state court, noting that her counsel filed an objection on behalf of other customers. Opp. 1-2, 5, 19. Remarkably, she fails to disclose that her counsel withdrew the objection after the parties confirmed that the settlement and release—which relate solely to claims about certain fees and surcharges not at issue in this lawsuit—have no effect on this case or the claims of the West Virginia objectors. Aff. of Daniel E. Jones ¶ 3 & Exs. A-B. Her silence on this point is misleading (and inexplicable).

In any event, Edens again offers zero authority whatsoever for her position that a company that is party to an arbitration clause cannot enter into a class settlement without forfeiting its arbitration defense in all cases. To our knowledge, no such authority exists. Nor is there any authority prohibiting companies from sending *court-ordered* notice of a class settlement to class members who are represented by counsel in other lawsuits. Edens's lack of support is unsurprising: Such companies routinely enter into class settlements, and courts have repeatedly

held there is no waiver when a company settles a different class action.  In fact, one federal court has described arguments like Edens's as "absurd," holding that a defendant's settlement of a different class action did not affect the defendant's ability to "assert its right to compel arbitration." *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097, 1183 (C.D. Cal. 2002); *accord, e.g.*, *Chun Ping Turng v. Guaranteed Rate*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019); *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2004).  Here, just as in *Chun Ping Turng*, "Plaintiff fails to point the Court to any cases in which allegedly inconsistent conduct in a separate case involving a different party can waive the right to arbitrate."  371 F. Supp. 3d at 620.

Edens's entire argument also runs contrary to the strong "[p]ublic policy" favoring "settlement of disputes."  *United States v. Purdue Pharma, L.P.*, 600 F.3d 319, 332 (4th Cir. 2010) (citation omitted); *see Acord v. Chrysler Corp.*, 399 S.E.2d 860, syl. pt. 1 (W. Va. 1990) ("The law favors and encourages … resolution by … compromise and settlement rather than by litigation.").  Courts have therefore recognized that both defendants and class members may "elect[] to waive that [arbitration] right as part of" a class settlement, and that nothing in an arbitration agreement "prevents the parties to the same from ever reaching a subsequent agreement" to settle class actions.  *In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d 935, 976 (N.D. Ill. 2011).  Notably, AT&T has repeatedly enforced its arbitration agreement—including in *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011) and *Shorts v. AT&T Mobility*, 2013 WL 2995944 (W. Va. June 17, 2013) (unpublished) (citing *State ex rel. AT&T Mobility LLC v. Wilson*, 703 S.E.2d 543 (W. Va. 2010))—without any court raising a concern about the class settlements in *Sales Tax Litigation* or any other case.  Indeed, courts recognize that "colorable defenses" related to arbitration *support* approval of a class settlement, and defendants may "waive their own rights to arbitrate" solely for purposes of class settlement.  *In re TikTok,*

*Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1089, 1094 (N.D. Ill. 2021); *see In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 999-1000 (N.D. Cal. 2015) (the "litigation risk" to plaintiffs from arbitration defenses weighs "in *favor* of settlement") (emphasis added).

Moreover, in the settlement in New Jersey, Suddenlink "preserved [its] right to move to compel arbitration of the plaintiffs' claims [in that case itself] if the Court fails to approve the Agreement or enter a Final Approval Order and Judgment." Jones Aff. Ex. C at 33; *see Chun Ping Turng*, 371 F. Supp. 3d at 620-21 (similar reservation of rights to compel arbitration in the class settlement further pointed against waiver of arbitration in another case).

As this unbroken line of authority shows, Edens's waiver argument fails.

**b.**     Next, Edens badly distorts the facts in arguing that Suddenlink ignored Edens's pre-arbitration notice of dispute until after this lawsuit was filed. Opp. 2-3, 5. Suddenlink has appeared in the arbitration and paid all required fees, and an arbitrator has been appointed. *See* Mem. 5. Edens does not dispute this. But in addition, Edens's assertion that Suddenlink failed to participate in the dispute-resolution process "until after Plaintiff filed the Complaint in the instant case" (Opp. 2) is simply false, and Edens's counsel know it. On February 1, 2022—one day after the AAA's letter accepting the arbitration demand and nearly a month before the complaint in this case was filed on February 28, 2022—a representative from Altice's legal department reached out to Edens's counsel to discuss her arbitration demand. Aff. of Amy Pfail ¶¶ 3-4 & Exs. A, C. And while the contents of the series of emails exchanged between Altice's legal department and Edens's counsel prior to the complaint's filing are confidential, the fact that the communications occurred disproves Edens's assertions that Suddenlink ignored her claims until after this lawsuit was filed.

Edens also gets no mileage out of complaining (Opp. 2) that she paid her $200 filing fee under the American Arbitration Association ("AAA") consumer rules to commence her

arbitration.  That is what the arbitration provision and AAA rules called for in light of her demand, which requested damages in a range of "$1,001 to $10,000" plus "other statutory and punitive" damages.  Pfail Aff. Ex. B.  Specifically, the arbitration provision in the September 2019 RSA—the provision that was operative when Edens submitted her arbitration demand—provides that for claims seeking over $10,000 in damages, arbitration "fees shall be allocated in accordance with the AAA rules."  Heberer Aff. Ex. C § 24(e).  The AAA rules provide for a consumer filing an arbitration to pay a $200 filing fee unless the arbitration agreement provides otherwise.  Notably, the operative arbitration provision also states that "Suddenlink will consider reimbursing Your share of these fees if You indicate You cannot afford them."  *Id.*  But Edens has never requested reimbursement of that fee in the nearly two years that her arbitration has been pending—making clear that the argument is a litigation tactic and not a genuine complaint.

Finally, Edens's attempt to fault Suddenlink for not submitting an answer in the arbitration at best reflects ignorance of the AAA rules, and at worst is deliberately misleading.  Unlike in federal court, *no answer is required in arbitration*.  In fact, when the AAA sent a letter accepting Edens's arbitration for administration, it stated: "Per Consumer Rule R-2(e) 'If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant.'"  Pfail Aff. Ex. A; *see also* Consumer Rule R-2(e) ("[t]he case will move forward after 14 days regardless of whether an answer is filed").  Her failure to mention the AAA letter in particular—sent in response to the very arbitration she filed—is telling.

### B.    Edens Cannot Dispute The Existence Of Her Binding Arbitration Agreements.

#### 1.    Edens received service under contract terms containing an arbitration clause, as her own ongoing arbitration and complaint confirm.

Edens' attempts to deny the existence of a contract fare no better.  Her pending arbitration and numerous allegations in the amended complaint depend upon the existence of her contracts.

Mem 6, 8.  Edens says that her claims are "pleaded in the alternative" and that the complaint "challenges the existence of a contract."  Opp. 3.  But she confuses two separate points: (1) the *formation or existence* of her contracts with Suddenlink; and (2) the *enforceability* of the contracts.  The amended complaint expressly admits contract formation; that admission conclusively establishes that her arbitration agreements exist, as overwhelming authority holds.  Mem. 8 & n.5.

Edens next raises the novel argument that she agreed to arbitrate *too* many times, because Suddenlink included with its motion five versions of the contract terms; according to her, each of those agreements could apply to her disputes in this case, so none does.  Opp. 3, 5, 7.  That logic doesn't work; indeed, it would mean that a company should never revise its contract terms, even if the updates benefit the company's customers.  Moreover, contrary to her assertion that "Suddenlink fails to suggest which of the five arbitration clauses govern this action" (Opp. 3), Suddenlink's motion focused on the most recent (July 2022) version of the RSA, citing that provision throughout.  *See generally* Mem.; Heberer Aff. Ex. A.

There is nothing unusual—much less arbitration-defeating—about a party agreeing to multiple arbitration agreements over the course of a relationship with a company.  Edens takes issue with the fact that each arbitration clause applies to pre-existing disputes and survives termination of the underlying agreement.  Opp. 5, 7.  But courts routinely hold that there is nothing wrong with including such language in an arbitration provision.

The West Virginia high court's decision in *Sheridan* is dispositive on this point.  Both the initial arbitration provision from September 2011 *and* an updated version from 2012 were before the Court, which applied the 2012 updated version in requiring plaintiffs to arbitrate.  *See* 799 S.E.2d 144, 147-48, 153-54 (W. Va. 2017).  Like the arbitration provisions here, the relevant arbitration clause applied to claims "that arose either before or during this or any prior Agreement,

or that may arise after termination of this agreement." *Id.* at 153. Rejecting the argument that it "would produce an unfair result" to require arbitration of pre-existing claims, the court explained that the "arbitration provision clearly and explicitly provides that it applies to pre-existing disputes" and "there is no contravening authority that would preclude enforcement of the provision as written." *Id.* at 153-54. The Court also noted that the FAA's text "specifically provides that parties may agree to arbitrate 'an existing controversy.'" *Id.* at 153 (quoting 9 U.S.C. § 2).

Similarly, West Virginia courts have long held that the "duty to arbitrate under an arbitration clause in a contract survives the termination of the contract." *March–Westin Company, Inc. v. Swinerton Builders, Inc.*, 2018 WL 2471451, at *9 (N.D. W. Va. June 1, 2018) (quoting *State ex rel. Ranger Fuel Corp. v. Lilly*, 267 S.E.2d 435, 437 (W. Va. 1980)). Accordingly, express survival language in an arbitration agreement reflecting that duty is hardly a basis for refusing to enforce an arbitration agreement. Edens again points to no authority suggesting otherwise.

The upshot of Edens's arguments appears to be that she can receive service without any contract terms at all. But the *Sheridan* court rejected that assumption in response to arguments based on "no contract" advertising: such advertisements "do not imply that the service is governed by no terms whatsoever." *Sheridan*, 799 S.E.2d at 150. As the Third Circuit has explained, "it is impossible to infer that a reasonable adult in [plaintiff]'s position would believe that his contract with Comcast [for Internet service] consisted entirely of a single promise that the service would be 'always on.'" *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 519-20 (3d Cir. 2007).

In all events, Suddenlink's motion explained that Edens agreed to both the July 2022 RSA and the September 2019 RSA that was in effect when she began her service in April 2020. Mem. 2-4, 9-12. Edens's opposition offers no persuasive response.

### 2.    Edens agreed to the July 2022 RSA.

Edens does not deny that in June 2022, Suddenlink sent its customers, including Edens, an

email telling them that Suddenlink was "updating the Binding Arbitration provision of our Residential Services Agreement" under the bold heading "**An update to our Terms of Service**," and that the email provided a link to the updated terms.  Averill Aff. ¶ 7 & Ex. A; *see* Mem. 1-2, 10-11.  Indeed, it is telling that neither her opposition nor her affidavit mention that email at all, which is no different than the type of explicit notice of updated contract terms upheld in *Sheridan*. *See* 799 S.E.2d at 148.  It is therefore undisputed that she received that email and continued to pay for service after receiving notice of the changes to the arbitration provision.

Edens's implicit response is to assert alleged concerns under New York's ethics rules (under the rubric of unconscionability rather than contract formation).  Opp. 8-9.  But she is flat wrong in suggesting that there is an ethical issue with Suddenlink communicating updated contract terms to its subscribers nationwide, including Edens, in the ordinary course of business.  As Judge Nathan, now on the Second Circuit, put it in rejecting a nearly identical challenge to a company's update to its terms while litigation was pending, there is "no authority for the proposition that an amendment to a company's terms of service may constitute a communication with a represented party" in violation of Rule 4.2.  *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021), *reconsideration denied*, 2022 WL 1500673 (S.D.N.Y. May 11, 2022).

Moreover, just as in *Haider*, courts across the country regularly enforce post-litigation modifications to existing contractual terms, including arbitration clauses, that govern a plaintiff's ongoing relationship with the defendant.  In *Concepcion* itself, AT&T sent the controlling arbitration provisions as an update during the litigation.  563 U.S. at 336-37 (litigation filed in March 2006 and governed by AT&T's "revised" arbitration terms dated December 2006); *see also Shorts*, 2013 WL 2995944, at *2, *4 (applying December 2006 and May 2009 updates to arbitration terms to a lawsuit filed in June 2006).  More recently, a federal court in Chicago

compelled arbitration notwithstanding the defendant's issuance of a nationwide update to its terms of service (including the arbitration clause) after the litigation was filed.  *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *9 (N.D. Ill. May 15, 2020).  The court rejected the plaintiff's arguments, finding "no indication that Shutterfly engaged in improper conduct" by issuing a regular update to its terms of service.  *Id.*  Other cases have reached the same conclusion.[1]

Edens necessarily is asserting that the courts in all of these cases both erroneously decided those cases *and* (from Edens's perspective) disregarded breaches of ethical rules.  Edens's baseless position is not the law in New York, West Virginia, or any other jurisdiction.

Edens independently assented to the July 2022 RSA each month by paying her bills after receiving notice of those offered terms in her billing statements and by email.  *See* Mem. 3.  But even if the July 2022 RSA were interpreted as a modification, her effort to characterize Suddenlink's arbitration provision as "illusory" because Suddenlink can update its terms (Opp. 4-5) fails because Suddenlink provided her with reasonable notice.  Acceptance of updated terms for Internet service can take place by performance, such as "by virtue of continuing to subscribe to … service after the reasonable notice was provided."  *Sheridan*, 799 S.E.2d at 152; *see* Heberer Aff. Ex. A § 24(j) (Suddenlink "will notify" the customer "of amendments to this arbitration provision").  When a company must provide notice of changes to an arbitration clause, that fact alone defeats any illusoriness or unconscionability challenge to a modification provision.[2]

---

[1]     *See Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *2, *7 (E.D. Ark. Mar. 25, 2008) (named plaintiff compelled to arbitrate based on changes to arbitration clause more than a year after suit filed); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 575-78 (W.D.N.C. 2000) (plaintiff precluded from pursuing class action based on class waiver added during litigation).

[2]     *See, e.g., Larsen v. Citibank FSB*, 871 F.3d 1295, 1318-19, 1320-21 (11th Cir. 2017); *Iberia Credit Bureau v. Cingular Wireless, LLC*, 379 F.3d 159, 173-74 (5th Cir. 2004); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1153 (D. Colo. 2012). At most, "the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way

As for Edens's billing statements, she protests that they do not specifically mention arbitration.  Opp. 9-10.  But the FAA preempts that arbitration-specific notice requirement.  *See* Mem. 15-16, 18.  Edens also notes that one of the billing notices in *Sheridan* included a paper copy of the contract terms.  Opp. 10.  But the *Sheridan* court's reasoning did not turn on that fact; the court also noted that the earlier bills supported its determination that the plaintiffs had "reasonable notice" of the terms located online.  799 S.E.2d at 74-75.  The same is true of the *ten other cases* cited in Suddenlink's opening brief (at 9-10) upholding contract formation based on notice of terms in billing statements; those cases did not involve bills containing paper copies of the contract terms.

### 3.  Edens is bound by the arbitration clause in the September 2019 RSA.

In any event, Edens agreed to the September 2019 RSA at the time of her installation, during service visits (including one only a few days after her installation), and by paying her bills.  Mem. 3-4, 11-12.  Edens tries to make hay out of the fact that her initial installation occurred during the beginning of the COVID pandemic, so the technician may not have handed her the mobile device.  Opp. 4, 8.  But she never denies—either in her opposition or her affidavit—that she signed a work order accepting those terms during a service visit only a few days later—and well within the 30-day opt out period.  *See* Mem. 12; Lucas Aff. Ex. B.  Nor does she respond to Suddenlink's explanation that contracts may be accepted verbally rather than signed.  Mem. 12.

Edens's assertion that "Suddenlink concedes Plaintiff did not sign [the September 2019 RSA] and the actual terms (including the arbitration provision) were never provided to her" (Opp. 4) is at best misleading—if not wholly false.  It is again surprising to see Edens try to deny receipt of the very contract that formed the basis of her arbitration demand—especially when she was

---

that would make it unconscionable."  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016); *see also*, *e.g.*, *Larsen*, 871 F.3d at 1320-21. Edens has not shown any violation of that covenant; companies routinely update their contracts in the ordinary course of business, as Suddenlink did here.

required to attach those terms to the demand.  *See* Pfail Aff. Ex. B.  In any event, not only were the terms provided to her during her service visits and through links on her billing statements, she was emailed a link to the terms *before* her April 3, 2020 installation appointment.  On March 30, 2020, she was sent an order confirmation email inviting her to "[v]isit suddenlink.com/terms-and-policies for information about your new Suddenlink services, including our General Terms & Conditions of Service…."  Aff. of Raymond Larsen ¶ 3 & Ex. A.

### C.    Edens's Arbitration Agreements Are Fully Enforceable Under The FAA.

Suddenlink's motion detailed why the arbitration agreements at issue here are materially distinguishable from those in *Gooch* and neither procedurally nor substantively unconscionable. Mem. 14-20.  Attempting to deflect attention from that reality, Edens resorts to hyperbolic rhetoric, asserting that "heightened scrutiny" is required because "it is uncontested" that Suddenlink is an "abusive monopolist." Opp. 6. The tone of Edens's opposition is unfortunate—and once again, untruthful, because Suddenlink of course does dispute Edens's allegations, which in any event are for an arbitrator to decide.  Indeed, according to the FCC, Edens herself has at least three alternatives for Internet service, including Starlink, Frontier, and T-Mobile, repudiating her assertions (*id.* at 9, 18) that she has no alternatives to Suddenlink service.  *See* Jones Aff. ¶ 4 & Ex. D.  And as is typical of her one-sided presentation, Edens cites to the PSC's *2021* staff brief but neglects to mention the PSC's more recent assessments that it is "pleased to see that Optimum has taken our order to heart and has made serious efforts to comply" and that Optimum "is obviously trying seriously to remedy past problems."  Fred Pace, *PSC says Optimum's reaction to 2022 order is positive*, The Herald-Dispatch (Dec. 6, 2023), https://bit.ly/4aO0x0K.

Distractions aside, generally-applicable rules of procedural and substantive unconscionability apply, and Edens has not met her burden to show that either form of unconscionability is present here, much less both.

**1.      The arbitration agreements are not procedurally unconscionable.**

Edens barely engages with Suddenlink's extensive discussion of procedural unconscionability. *See* Mem. 14-19.  Instead, she raises a series of specious arguments.

*Literacy*.  Edens begins on an odd note, saying that nearly two-thirds of West Virginians have "difficulty with printed material" and are "unable to make complex inference and evaluation."  Opp. 6.  But surely Edens is not suggesting that West Virginians are incapable of entering into written contracts.  To the contrary, the law is clear that "if someone is illiterate or does not understand a contract, it is that person's burden to ask for assistance."  *Cheney v. Tri State Food Sys.*, 2020 WL 2615755, at *1 (S.D. W. Va. May 22, 2020).

*Unduly Complex*.  Edens's principal argument for undue complexity is that there are multiple arbitration provisions that apply to pre-existing claims and survive termination of the RSA.  Opp. 7.  But as discussed above (at 6-7), there is nothing unconscionable about entering into multiple arbitration agreements, much less when subsequent agreements supersede prior ones.

Edens also argues that the RSA as a whole is "incomprehensible."  Opp. 7.  But her (unsubstantiated) attacks on the underlying contract are for the arbitrator to decide.  *See* Mem. 13-14.  Tellingly, neither Edens's opposition nor her affidavit points to specific language in the arbitration clause itself that she contends is unduly complex or hard to understand.  Nor does Edens acknowledge that the central terms of her arbitration agreement are similar, and in many cases equivalent, to the clauses upheld in *Sheridan*, *Wilson*, and *Concepcion*.

*Hidden Terms*.  Edens is flat wrong in asserting that Suddenlink "moved" terms that were previously present in the arbitration clause of the 2016 RSA at issue in *Gooch* outside of that arbitration clause.  Opp. 6-7.  For the reasons explained below (at 14-16), her arguments are legally meritless—but they are also frivolous as a matter of fact:  the 2016 RSA also contained limitations on liability and warranties and indemnification provisions *outside* of the arbitration provision.  *See*

Dkt. No. 8-2, *Gooch v. Cebridge Acquisition LLC*, No. 22-cv-184, Ex. C §§ 9, 18-19.  (And in any event, Edens was not a customer until 2020, so the prior provisions are wholly irrelevant to her.)

*Adhesion*.  Edens refers back to this Court's discussion of Suddenlink's installation process in *Gooch* (Opp. 7-8), but does not address Suddenlink's explanation that Edens agreed to the RSA, including its arbitration clause, in other settings as well.  *See* Mem. 3, 9-11, 17.  Nor does Edens deny that far more is needed to declare a contract unconscionable under West Virginia law.

*Manner and setting*.  Edens again raises the COVID pandemic.  Opp. 8.  But as discussed above (at 11), Edens was provided a link to the terms prior to the installation, and she does not deny signing to accept the terms during service visits, including just four days after her installation.

Edens next points out that neither the work orders nor her billing statements specifically mention arbitration.  Opp. 8-9.  But the FAA forecloses that attempt to impose a heightened notice requirement for an arbitration clause.  *See* Mem. 15-16, 18 (discussing *Doctors Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)).  And the contract terms themselves contain at the outset the conspicuous disclosure that "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF CLASS ACTIONS AND JURY TRIALS**."  Heberer Aff. Ex. A, at 1; *accord id.* Ex. C at 1.

Finally, Edens protests that she paid her bills to accept Suddenlink's RSA under "duress." Opp. 9.  But her assertion of duress directed at the RSA as a whole is for an arbitrator to decide under the FAA's severability doctrine.  *See*, *e.g.*, *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 97 (1st Cir. 2015) (collecting cases).  Moreover, Edens's only argument for duress is her assertion that she lacks alternatives for Internet service.  Opp. 9.  It appears that she could switch to other providers.  *See* page 11, *supra*.  But even if she couldn't, Edens comes nowhere close to showing that the transaction was "'a result of unlawful threats or wrongful, oppressive, or

unconscionable conduct'" that amount to the proverbial gun to one's head.  *Panetta v. Chesapeake Energy Corp.*, 2010 WL 1930160, at *3 (S.D. W. Va. May 12, 2010) (quoting *Berardi v. Meadowbrook Mall Co.*, 572 S.E.2d 900, 905 (W. Va. 2002)).  Her argument also has breathtaking implications.  It would mean that a business is incapable of forming customer contracts anywhere that the business is the only provider of a particular good or service.  That is not the law.[3]

## 2. The arbitration agreements are not substantively unconscionable.

*Provisions outside of the arbitration clause.*  Edens does not dispute that the arbitration provisions in the more recent versions of the RSA do not contain the terms that this Court deemed one-sided in *Gooch*.  Mem. 19.  She instead urges the Court to consider limitation on liability and disclaimer of warranty provisions located outside of the arbitration agreement.  Opp. 11-14; *see* Heberer Aff. Ex. A §§ 9, 22.  But she ignores our showing that, as a matter of substantive federal law, challenges to these provisions are for the arbitrator to decide.  Mem. 13-14 (citing Supreme Court precedent); *accord Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002).  Edens fails to acknowledge these controlling precedents, which foreclose her argument.

Worse still, Edens misrepresents the provisions she cites; they do not limit the arbitrator's authority.  As the arbitration provision makes clear, **"the arbitrator may award** *any* **relief that a court could award that is individualized to the claimant."**  Heberer Aff. Ex. A § 24(i) (emphasis added); Ex. B § 24(h); Ex. C § 24(h).  Edens ignores that language.  And it is remarkable that despite her lengthy block quotation of the RSA's limitation on liability and disclaimer of warranties provision (Opp. 12), she omits the following sentence: "If Customer resides in a state which laws prevent Customer from taking full responsibility and risk for Customer's use of the Services and/or Equipment, Suddenlink's liability is limited *to the greatest extent allowed by law*."

---

[3]    Nor is it the law that sending billing statements and across-the-board revisions to contract terms in the ordinary course of business is "unethical" (Opp. 8-9).  *See* pages 8-9, *supra*.

Heberer Aff. Ex. A § 22 (emphasis added).  Similarly, she neglects to mention that the RSA's provisions about adjustments or refunds make clear that they apply "unless otherwise required by applicable law" or "[u]nless otherwise provided by applicable law."  *Id.* Ex. A § 9.[4]

While Edens points to a letter her counsel sent complaining about the RSA's indemnification provision (Opp. 13-14; *see* Heberer Aff. Ex. A § 23), there are no indemnification issues here, and that provision in no way affects the arbitration clause or the arbitrator's authority. Edens also fails to mention that her counsel's letter was a response to a statutory cure offer under the WVCCPA.  If Edens and her counsel are serious about working with Suddenlink to revise Edens's contract, Suddenlink welcomes a conversation in connection with the cure offer process. But Suddenlink was hardly required to respond to a declination of a settlement offer.

For all of these reasons, this case is nothing like *Hayes v. Delbert Services Corp.*, 811 F.3d 666 (4th Cir. 2016) (cited at Opp. 5, 11, 14, 18).  In that case, the arbitration agreement *itself* "waive[d] all of a potential claimant's federal rights" by selecting tribal law to the exclusion of any state or federal law. *Id.* at 675. And the underlying loan agreement confirmed that understanding, proclaiming that "'no United States state or federal law applies to this Agreement'" and thus "renounc[ing] the authority of the federal statutes to which [the company] is and must remain subject." *Id.* at 675-76.  Nothing of the sort is present here: Edens is free to assert in arbitration all of her individualized claims under federal or West Virginia law.

---

[4]     The West Virginia case Edens cites, *State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders*, 717 S.E.2d 909 (W. Va. 2011) (cited at Opp. 10-11), is not controlling on the federal-law severability question, which is instead governed by binding Supreme Court and Fourth Circuit precedent.  But it is also distinguishable; the West Virginia high court has since held that it is inappropriate to look beyond the arbitration clause when, as here, the language of that clause is "clear and unmistakable."  *SWN Prod. Co. v. Long*, 807 S.E.2d 249, 254 (W. Va. 2017) (distinguishing *Sanders*).  Moreover, unlike in *Sanders*, where the contract limited the remedies available in arbitration, 717 S.E.2d at 922, the arbitration clause here gives the arbitrator to award any individualized relief that a court could award.

*Private attorney general proceedings*.  Edens offers no support for her suggestion (Opp. 10-11, 20) that the garden-variety language in the class-action waiver prohibiting pursuit of a "private attorney general proceeding" bars her from asserting her individualized WVCCPA claims. Edens neglects to mention that nearly-identical language was before the Court in *Sheridan*, which required individual arbitration of plaintiffs' WVCCPA claims over a challenge to "waivers of … the right to participate in a class action, a representative proceeding *or a private attorney general action*."  799 S.E.2d at 147 (emphasis added).  *Sheridan* is dispositive on this point.  Moreover, courts that have considered a similarly strained argument have rejected it.[5]

*Arbitration Appeal*. Edens fares no better in attacking (Opp. 15-16) the mutual provision allowing either party to appeal an arbitral award to a three-arbitrator panel if the amount in dispute exceeds $75,000 or a claim seeks injunctive relief.  *E.g.*, Heberer Aff. Ex. A § 24(e).  Consumers, including Edens here (and the plaintiffs in *Gooch*, *Chaty*, and *Meadows* bringing individual cases involving over $75,000 in controversy), can and do assert claims satisfying those requirements, and thus can appeal if a single arbitrator rules against them on those claims—just as plaintiffs who lose in a trial court can appeal.  Edens misrepresents the terms when she says that the appeal provision applies only "[i]f the arbitration results in an injunction."  Opp. 15.  Once again, that's not true: The provision actually says that "either party may appeal" in any case where "the amount *in dispute* exceeds $75,000 or the claim *seeks* any form of injunctive relief."  *E.g.*, Heberer Aff.

---

[5]      As another court in this Circuit put it, such language in a class-action waiver does not limit the plaintiff's own individualized statutory claims or remedies; instead, it reflects only "that a party must proceed individually rather than as part of a class."  *Jarry v. Allied Cash Adv. Va., LLC*, 175 F. Supp. 3d 622, 625 (W.D. Va. 2016).  In other words, "the term 'private attorney general' must be limited to only the prevention of bringing the action as a member of a class rather than individually."  *Id.*  A district court in Arizona made a similar point in compelling arbitration of state statutory claims, explaining that "because the arbitration exception in the Agreement includes 'a private attorney general action' together with class and representative actions, the intent of the exception must have been to address actions benefitting a large number of people."  *Pirone v. CMH Homes Inc.*, 2019 WL 13198208, at *2 (D. Ariz. Aug. 26, 2019).

Ex. A § 24(e) (emphasis added).  That is, consumers may appeal if they assert high-value claims and are dissatisfied with the award *or* if the arbitrator *denies* a requested injunction.

Moreover, the California Supreme Court has upheld a provision allowing for an appeal of an injunction to a panel of three arbitrators.  *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 751-54 (Cal. 2015).  Edens again offers no contrary authority.  She notes that the AAA declines to apply its optional appellate rules to disputes between consumers and businesses under standard form contracts.  Opp. 15 & n.5.  But that result does not create any one-sidedness or harshness; at most it means that *neither* party will be able to appeal an arbitral award to a three-arbitrator panel.

*Mass arbitration procedures*.  Edens next takes issue with the procedures for mass arbitrations found in the July 2022 RSA.  Opp. 16-17.  Because those provisions aren't in the October 2021 or September 2019 versions of the RSA, Edens's argument has no bearing on the enforceability of those terms.  Nor do the provisions' limitations on filing additional arbitrations have any impact on Edens, because her ongoing arbitration is already on file and by definition cannot be delayed.  For that reason alone, her arguments on this issue should be disregarded.

But should the Court reach the issue, Edens's reliance on a case applying California (not West Virginia) law, *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. July 1, 2022), *appeal pending*, No. 22-16020 (9th Cir.), is misplaced.  Suddenlink maintains that *MacClelland* was wrongly decided.[6]  But it is easily distinguishable.  Edens asserts that the procedures at issue in *MacClelland* were "similar" to Suddenlink's procedures (Opp. 16), but she fails to mention a material fact.  The key concern that animated the *MacClelland* decision was that the *statute of limitations was not tolled* during the bellwether arbitration process, which could result in some claims being "forever barred."  609 F. Supp. 3d at 1042; *see id.* ("The clause contains

---

[6]      The parties in *MacClelland* have filed notice with the Ninth Circuit that they have settled the case, so the Ninth Circuit is unlikely to have a chance to review the district court's decision.

no tolling provision").  Suddenlink's July 2022 RSA, by contrast, provides that once a Notice of Dispute is submitted, "*any statute of limitations applicable to the claims set forth in that Notice of Dispute will be tolled*" until the claims are resolved.  Heberer Aff. Ex. A § 24(g) (emphasis added).

Thus, the emphasized language in Suddenlink's clause makes clear that no consumer is at risk of losing his or her legal claims.  Of course, Edens failed to mention this language in her brief.

Edens argues that the mass arbitration procedures lack mutuality.  Opp. 17.  But she ignores that in the consumer context, mass arbitrations, just like class actions or mass torts in multi-district litigation (MDL) proceedings, are inherently brought by consumers against a company and not the other way around.  Yet no court has held that MDL proceedings are unfair to plaintiffs or their counsel for that reason.  Moreover, the law is clear that companies can preclude class actions in arbitration agreements.  *See Concepcion*, 563 U.S. 333.  Even for class actions in court, Federal Rule of Civil Procedure 23(g) already imposes asymmetrical restrictions on class action plaintiffs' counsel that do not apply to defense counsel.  Simply put, that mass arbitration is a one-sided phenomenon does not and cannot mean that companies are powerless to address it.

Separately, Edens's concerns about "delay" from staged bellwether proceedings (Opp. 16) ignore that her own claims are not delayed at all, because her arbitration is already ongoing.  But her concerns are also unmoored from their appropriate context.  There is no way to evaluate the prospect of delay without comparing the bellwether arbitration process to other alternatives.

While neither the trial of bellwether cases in court nor bellwether arbitrations can *force* a settlement of the remaining claims, that process *encourages* efficient global resolution.  The Fourth Circuit has recognized the potential "utility of bellwether trials to promote settlement."  *Campbell v. Boston Sci. Corp.*, 882 F.3d 70, 76 (4th Cir. 2018).  The same is true of mass arbitrations.[7]

---

[7]      Suddenlink's RSA calls for tranches of "30 cases" in each bellwether stage.  Heberer Aff. Ex. A § 24(g).  That is three times as many cases in each tranche as the clause in *MacClelland*,

Moreover, not even the largest arbitration providers can simultaneously arbitrate large numbers of cases. For example, Edens points to the AAA's supplemental rules for mass arbitrations (Opp. 16), but under those rules the AAA assigns all cases to a small roster of arbitrators, who then adjudicate each claim individually. *See* AAA, Mass Arbitration Supplementary Rules, at 7-8 (Aug. 1, 2023), https://www.adr.org/sites/default/files/ Supplementary_Rules_Mass_Arbitration.pdf. That means they are resolved seriatim regardless.[8]

Finally, the mass arbitration procedures are easily severable as collateral "to the essence of the" clause—to resolve disputes by individual arbitration. *Barach v. Sinclair Media III, Inc.*, 392 F. Supp. 3d 645, 655 (S.D. W. Va. 2019) (severing fee-shifting provisions and enforcing remainder of clause) (quotation marks omitted). The severability clause leaves no doubt, providing that if a "portion of this arbitration provision is determined to be unenforceable, then the remainder of this arbitration provision shall be given full force and effect." Heberer Aff. Ex. A § 24(k).

*Pre-arbitration process.* Although Edens's counsel raised the same argument in *Gooch*, it is telling that Edens still offers no authority to support her attack on the pre-arbitration notice of dispute process. *See* Opp. 18. That failure is not surprising: the whole point of such a process is to give both parties a cost-free opportunity to resolve disputes informally. Indeed, the Supreme Court treated a similar requirement that was part of the clause in *Concepcion* as a benefit to consumers, not a burden. *See* 563 U.S. at 336-37, 352. Edens is therefore simply incorrect in asserting that the "provision solely benefits Suddenlink." Opp. 18. As a California court has put it in rejecting a similar challenge, a pre-arbitration notice of dispute process, with its accompanying potential for "informal" resolution, "is both reasonable *and laudable* in an agreement containing a

---

(609 F. Supp. 3d at 1040)—further reducing the prospect of undue delay compared to alternatives.

[8]      Edens notes that the RSA prohibits consolidation of claims unless agreed to by both parties in writing. Opp. 17-18. That appears to be a thinly-veiled attack on the class-action waiver; there is no obligation to make consolidation an option at all, in the mass arbitration setting or otherwise.

mutual obligation to arbitrate." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013) (emphasis added).[9]

*FAA instead of state arbitration statutes*. Edens's attack on the arbitration agreement for selecting the FAA instead of state arbitration law (Opp. 18) is flat-out frivolous. Under the Supremacy Clause, federal law supersedes state law. And the arbitration agreement does not "negate West Virginia law" (Opp. 18); like the similar arbitration clauses upheld in *Sheridan*, *Wilson*, *Shorts*, and *Concepcion*, it calls only for application of controlling federal law *on arbitration* to the arbitration agreement, instead of state *arbitration* laws. Edens is free to assert her underlying West Virginia-law claims in arbitration, and she does not seriously assert otherwise.

*Injunctive relief*. Finally, Edens's attack on the arbitration agreement's prohibition on non-individualized relief (Opp. 18-20) also remains frivolous in light of controlling precedent. *See* Mem. 19-20. The language she challenges is materially indistinguishable from the provision upheld in *Sheridan*, which provided that the arbitrator may award the customer any form of *individual* relief that a court could including punitive damages, statutory damages, attorney's fees, and *individualized injunctions*." 799 S.E.2d at 148 n.2 (emphasis added).[10]

## CONCLUSION

The Court should compel Edens to arbitrate and stay the lawsuit pending the outcome of her ongoing arbitration.

---

[9]    Edens's hyperbolic assertion that complying with pre-arbitration procedures is a matter of "life or death" (Opp. 18) borders on the absurd. But it also has no relevance to her own claims; she has not alleged any sort of emergency while her arbitration has remained pending for nearly two years. *Cf. Mey v. DIRECTV, LLC*, 971 F.3d 284, 294 (4th Cir. 2020) (explaining that an interpretation of the arbitration agreement must be "tethered to the facts of th[e] dispute" rather than based on "hypothetical scenarios").

[10]   The final section of Edens's opposition (Opp. 19-20) notes that it is for this Court to decide whether specific aspects of Suddenlink's arbitration provision, including its class-action waiver, are enforceable. That is true, but Suddenlink has never argued otherwise. And Suddenlink's arbitration provision is enforceable, for all of the reasons discussed above and in our opening brief.

This 2nd day of January, 2024.

**CEBRIDGE ACQUISITION, LLC, CEQUEL III COMMUNICATIONS I, LLC, CEQUEL III COMMUNICATIONS II, LLC, & ALTICE USA, INC.**

/s/ Randall L. Saunders
Marc E. Williams, Esquire (W. Va. Bar No. 4062)
Randall L. Saunders, Esquire (W.Va. Bar No. 10162)
Jonah D. Samples, Esquire (W.Va. Bar No. 13683)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, West Virginia 25701
Telephone: (304) 526-3500
Facsimile: (304) 526-3599

Archis A. Parasharami (*pro hac vice* pending)
Daniel E. Jones (*pro hac vice* pending)
**MAYER BROWN LLP**
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**CHERI MICHELLE EDENS,**
**and other persons similarly situated,**

                                        **Case No: 2:22-cv-00101**

         **Plaintiff,**

**v.**

**CEBRIDGE ACQUISITION, LLC,**
**CEQUEL III COMMUNICATIONS I, LLC,**
**CEQUEL III COMMUNICATIONS II, LLC,**
**& ALTICE USA**

         **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 2nd day of January, 2024, the foregoing *"Defendants' Reply Memorandum in Support of Motion to Compel Arbitration and to Stay Litigation"* was filed with the court through the Court's CM/ECF system which will automatically send notification to the following:

Charles R. "Rusty" Webb
Bar No. 4782
The Webb Law Centre, PLLC
716 Lee St. E.
Charleston, West Virginia 25301
Phone: (304) 344-9322
Fax: (304) 344-1157

Dennis C. Taylor, Bar No. 6965
Taylor Conway Price PLLC
831 Fourth Avenue, Suite 201
Huntington, West Virginia 25701
Phone: (304) 541-0332

Talcott J. Franklin *
TFPC, a Maine Professional Corporation
181 Western Promenade
Portland, Maine 04102

Phone: (214) 642-9191
Fax: (207) 512-1248

*Counsel for Plaintiff*

/s/ Randall L. Saunders