**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**CHERI MICHELLE EDENS, and others
similarly situated,**

          **Plaintiff,**

**v.**

**CEBRIDGE ACQUISITION, LLC,
CEQUEL III COMMUNICATIONS I, LLC,
CEQUEL III COMMUNICATIONS II, LLC,
& ALTICE USA,**

          **Defendants.**

Civil Action No: 2:22-cv-00101

Hon. Thomas E. Johnston

---

**AFFIDAVIT OF DANIEL E. JONES IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND TO STAY LITIGATION**

                    )
District of Columbia )  ss.
                    )

       PERSONALLY APPEARED BEFORE THE UNDERSIGNED AUTHORITY, DANIEL

E. JONES, who after first having been duly sworn, does hereby depose and state under oath the

following based on her own personal knowledge:

       1.      I submit this affidavit in support of Defendants' Motion to Compel Arbitration and

to Stay Litigation.  The statements made in this affidavit are based on my personal knowledge,

review of records kept in the ordinary course of business, and/or information brought to my

attention by individuals upon whom I regularly rely.  If called as a witness, I could and would

testify to their truth.

       2.      I am a partner at Mayer Brown LLP.  I am one of the counsel representing Altice

USA, Inc. and the other defendants (collectively, "Altice") *pro hac vice* in *Seale v. Altice USA,*

*Inc.*, No. MER-L-618-23 (N.J. Super. Ct. Mercer County). I have also moved for *pro hac vice* admission status in this case.

3. .    Attached as **Exhibit A** is a true and correct copy of a joint stipulation filed in the *Seale* action on September 28, 2023.  Attached as **Exhibit B** is a true and correct copy of a letter filed in the *Seale* action on September 29, 2023, by objectors Nathan Calhoun, Lisa Lingani, and Randall Clifford and proposed intervenor Madison, WV withdrawing their objection to the settlement and request for intervention.  Attached as **Exhibit C** is a true and correct copy of the final settlement agreement and Addendum A in *Seale*.

4.    On January 2, 2024, I went to the website https://broadbandmap.fcc.gov.  In the box with the text "Enter address," I entered the street address in St. Albans, West Virginia found on plaintiff Cheri Edens's billing statements.  Attached as **Exhibit D** is a true and correct printout of the resulting webpage that was displayed.

5.    On January 2, 2024, I went to the website https://www.optimum.com/terms-of-service/residential on a laptop running Windows 10 and using the Google Chrome browser.  Attached as **Exhibit E** are true and correct screenshots taken from that webpage.  On January 2, 2024, I went to the website https://www.optimum.com/terms-of-service/residential on an iPhone 12 running iOS 17.1.1 and using the Safari browser.  Attached as **Exhibit F** are true and correct screenshots taken from that webpage.

FURTHER THE AFFIANT SAYETH NAUGHT.

Daniel E. Jones

Heather Harrison Neghban
Notary Public of District of Columbia
My Commission Expires November 14, 2027

SUBSCRIBED AND SWORN to
before me this **02** day of January,
2024.

_Heather Harrison Neghban_
Notary Public

District of Columbia:
Subscribed and sworn to (or affirmed) before me
on **01/02/2024** by **Daniel E. Jones**
   Date       Name(s) of Individual(s) making Statement
_Heather Harrison Neghban_
Signature of Notarial Officer
**Notary Public**
Title of Office
My commission expires: **11/14/2027**

3

# EXHIBIT A

John P. Campbell, Esq. 020442001
SCHENCK, PRICE, SMITH & KING, LLP
220 Park Avenue
P.O. Box 991
Florham Park, New Jersey 07932-0991
*Attorneys for Defendants*

Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
DeNITTIS OSEFCHEN PRINCE, P.C.
525 Route 73 North, Suite 410
Marlton, NJ 08053
(856) 797-9951 – phone
(856) 797-9978 – fax
*Attorneys for Plaintiffs*

| | |
|---|---|
| DAQUIS SEALE, NICK VASQUEZ, ANNETTE BAKER, JEFF LAMOREE, KATHRYNE MAJOR, NATIVIDAD CONCEPCION, XUE SHI LIN, and JESSE FRIEDMAN, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> ALTICE USA, INC.; CEBRIDGE TELECOM CA, LLC (D/B/A SUDDENLINK COMMUNICATIONS); and CSC HOLDINGS, LLC (D/B/A OPTIMUM), <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION MERCER COUNTY DOCKET NO. MER-L-618-23 <br><br> Civil Action <br><br><br> ***JOINT STIPULATION*** |

Defendants Altice USA, Inc.; Cebridge Telecom CA, LLC (d/b/a Suddenlink Communications), and CSC Holdings, LLC (d/b/a Optimum) (collectively, "Defendants" or "Altice"), through their counsel Schenck, Price, Smith & King, LLP and Mayer Brown LLP, and

Plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryne Major, Natividad

Concepcion, Xue Shi Lin, and Jesse Friedman ("Plaintiffs"), through their counsel DeNittis Osefchen Prince, P.C., hereby stipulate as follows:

**WHEREAS**, on September 22, 2023, objectors Randall Clifford, Lisa Lingani, and Nathan Calhoun filed a motion to object to the proposed settlement in this case, and they filed a corrected motion on September 25, 2023 (Trans ID: LCV20232940018);

**WHEREAS**, the motion attaches a notice of dispute from Lisa Lingani and references lawsuits and notices of dispute "concerning Defendants' services" filed or submitted by over 100 West Virginia claimants represented by some of the counsel who represent objectors (collectively, the "West Virginia Claimants");

**WHEREAS**, the undersigned counsel from Mayer Brown LLP are among the lawyers representing Altice in connection with the lawsuits and notices of dispute by the West Virginia Claimants and are familiar with those lawsuits and notices;

**WHEREAS**, the West Virginia Claimants who are class members have not brought claims addressing the charging of or disclosures relating to the Network Fees and TV Fees at issue in this case,[1] and instead assert claims focused on the quality and reliability of the West Virginia Claimants' service and other issues unrelated to the Network and TV Fees;[2]

**WHEREAS**, the parties' joint intent, reflected in the language of the settlement agreement, is for the settlement to release only class members' claims related to the issues in this case—that is, claims "arising out of, concerning or related to Defendants' charging, manner and sufficiency of disclosure or description of the Network Fee and the TV Fee, and the related sign-up practices" (Settlement Agreement ¶ 9.1);

---

[1]     The terms "Network Fee" or "Network Fees" refer to the "Network Enhancement Fee" or "Network Access Surcharge."  The terms "TV Fee" or "TV Fees" refer to the "Broadcast Station Programming Surcharge," "TV Broadcast Fee," "Sports Programming Surcharge," or "Regional Sports Network Fee."  *See* Settlement Agreement Recitals & ¶ 1.35 & Addendum A.

[2]     Only one of the West Virginia Claimants makes allegations in her notice of dispute about the Network Fee, and that individual has successfully opted out of this class action (and the settlement) and thus can continue to pursue her dispute.

**WHEREAS**, the statement on the settlement website that "Class Members who submit valid Claim Forms also release all claims against Defendants arising out of or relating to their service in any way" was an inadvertent error;

**WHEREAS**, for the avoidance of any doubt, the parties wish to make clear that they do not intend for the settlement to affect, and the settlement does not affect, the unrelated claims asserted by the West Virginia Claimants in their lawsuits and notices of dispute; and

**WHEREAS**, for the further avoidance of any doubt, the parties make clear that they jointly intended that the language in Paragraph 9.1 of the Settlement Agreement stating that "Class members further acknowledge that Altice can continue to charge the Network Fees and TV Fees and no provision of this agreement shall preclude Altice from continuing to charge the Network Fees and TV fees or adjusting the amounts thereof" would reflect, and not displace, the language in Section 1 of Optimum's current terms of service stating that "All rates for Services, Equipment charges and other fees and surcharges are subject to change **in accordance with applicable law**" (emphasis added), and would not displace any applicable statutory or regulatory requirements.

**NOW, THEREFORE**, the parties stipulate that:

1.     So long as the West Virginia Claimants who are class members do not amend their notices of dispute or complaints to include claims challenging the Network or TV Fees at issue in this action, then the settlement or the West Virginia Claimants' participation in the settlement will not in any way bar or waive the claims asserted by those West Virginia Claimants in their respective actions.  Defendants further stipulate that they will not raise this settlement as a defense in those actions or any additional claims or actions that are filed or may be filed by persons not concerning Network or TV Fees.

2.     The Settlement Agreement does not displace the contractual language in Defendants' terms of service stating that fees or surcharges are subject to change in accordance

with applicable law.

Dated:  September 28, 2023

                                                 **SCHENCK, PRICE, SMITH & KING, LLP**
                                                 *Attorneys for Defendants*

                                               By    */s/John P. Campbell*
                                                 John P. Campbell (No. 020442001)
                                                 Archis A. Parasharami*
                                                 Daniel E. Jones*
                                                 MAYER BROWN LLP
                                                 1999 K Street NW
                                                 Washington, D.C. 20006
                                                 (202) 263-3000
                                                 aparasharami@mayerbrown.com
                                                 djones@mayerbrown.com

                                                 * application for *pro hac vice* pending

                                               **DENITTIS OSEFCHEN PRINCE, P.C.**
                                               *Attorneys for Plaintiffs*

                                             By    */s/ Stephen P. DeNittis*
                                                 Stephen P. DeNittis, Esq.
                                                 Joseph A. Osefchen, Esq.
                                                 Shane T. Prince, Esq.
                                                 525 Route 73 North, Suite 410
                                                 Marlton, NJ 08053
                                                 (856) 797-9951 – phone
                                                 (856) 797-9978 – fax

                                                 Daniel M. Hattis*
                                                 HATTIS & LUKACS
                                                 11711 SE 8th St, Suite 120
                                                 Bellevue, WA 98005
                                                 (425) 233-8650 - phone
                                                 dan@hattislaw.com

                                                 * application for *pro hac vice* to be filed

# EXHIBIT B

**SPIRO**
**HARRISON**
**& NELSON**

**Adlai J.J. Small, Esq.**
asmall@shnlegal.com
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Direct Dial: (973) 232-2892

September 29, 2023

<u>**VIA ECOURTS & REGULAR MAIL**</u>
Honorable Brian J. McLaughlin, J.S.C.
New Jersey Superior Court
Mercer County Courthouse
175 S Broad St.
Trenton, NJ 08608

Re:    <u>**Daquis Seale, et al. v. Altice USA, Inc., et al.; MER-L- 000618-23**</u>

Dear Judge McLaughlin:

This firm represents settlement objectors Nathan Calhoun, Lisa Lingani, and Randall Clifford ("Objectors"), as well as Intervenor Defendant Madison, West Virginia ("Madison"). The Stipulation filed by Plaintiffs and Defendants on September 28, 2023 (the "Stipulation") resolves the concerns about the Settlement raised by objectors in their Settlement Objection filed September 22, 2023, and therefore the Objectors withdraw their Settlement Objection and no longer intend to appear at the Final Approval Hearing to object to the Settlement. The Stipulation also resolves the concerns about the Settlement raised by Madison in its Motion to Intervene filed September 22, 2023, and therefore Madison withdraws its Motion to Intervene. Madison and the Objectors thank Plaintiffs' counsel for their efforts in this regard. Nothing in this letter is intended to waive or prejudice any of Madison's rights under its franchise agreement or West Virginia law respecting the franchisee and its affiliates. Further, nothing in this letter is intended to waive or prejudice any claim asserted by Objectors in West Virginia against Defendants and their affiliates.

We greatly appreciate the Court's courteous attention to this matter. Please do not hesitate to contact me if the Court has any questions.

Sincerely,

SPIRO HARRISON & NELSON
*/s/ Adlai J.J. Small*
Adlai J.J. Small
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
(973) 232-2892
asmall@shnlegal.com

Honorable Brian L. McLaughlin, J.S.C..
September 29, 2023
Page 2 of 2

John P. Campbell, Esquire (via email and eCourts)
Archis A. Parasharami, Esquire (via email)
Daniel M. Hattis, Esquire (via email)
Stephen P DeNittis Esquire (via email)
Talcott J. Franklin, Esquire (via email)
Charles Webb, Esquire (via email)
Jonathan Sahrbeck, Esquire (via email)

# EXHIBIT C

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C9

**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (SD-0016)**
**Shane T. Prince, Esq. (SP-0947)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.\***
**Paul Karl Lukacs, Esq.\***
**400 108th Avenue NE, Suite 500**
**Bellevue, WA 98004**
**(425) 233-8650**

**Attorneys for Plaintiffs and the Proposed Classes**
*\*Pro Hac Vice Application to Be Submitted*

| | |
|---|---|
| DAQUIS SEALE, NICK VASQUEZ, ANNETTE BAKER, JEFF LAMOREE, KATHRYN MAJOR, NATIVIDAD CONCEPCION, XUE SHI LIN, and JESSE FRIEDMAN, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY LAW DIVISION |
| Plaintiffs, | DOCKET NO. MER-L-618-23 |
| v. | |
| ALTICE USA, INC.; CEBRIDGE TELECOM CA, LLC (D/B/A SUDDENLINK COMMUNICATIONS); and CSC HOLDINGS, LLC (D/B/A OPTIMUM), | |
| Defendants. | |

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement")** is entered into

by and between plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn

Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman, individually and in their

representative capacities on behalf of all others similarly situated (collectively "Plaintiffs"), by

and through their counsel, and Defendants Altice USA, Inc., Cebridge Telecom CA, LLC d/b/a

1

Suddenlink Communications and Optimum, and CSC Holdings, LLC d/b/a Optimum (collectively "Defendants" or "Altice"), by and through their counsel, (collectively referred to as the "Parties" or singularly "Party") to effect the settlement of the above-captioned class action as set forth herein, subject to Court approval.

**RECITALS:**

WHEREAS, on May 3, 2021, Plaintiff Nick Vasquez filed a class action lawsuit entitled *Vasquez v. Cebridge Telecom CA, LLC (D/B/A/ Suddenlink Communications) and Altice, USA, Inc. et al.*, in Superior Court of California, Humboldt County. The Action was removed on August 18, 2021 to the United States District Court for the Northern District of California and proceeded as *Vasquez v. Cebridge Telecom CA, LLC (D/B/A/ Suddenlink Communications) and Altice, USA, Inc. et al.,* Case No. 3:21-cv-6400-EMC, on behalf of all current or former Altice customers who paid a Network Enhancement Fee ("Network Fee") for Suddenlink or Optimum internet service received in California within the applicable statute of limitations (the "*Vasquez* Action"). On September 17, 2021, Defendants filed a motion to compel arbitration. On November 3, 2021, the Court denied Defendants' motion to compel arbitration. On December 2, 2021, Defendants filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit;

WHEREAS on July 22, 2022, Plaintiffs Natividad Concepcion, Xue Shi Lin, and Jesse Friedman filed a class action lawsuit entitled *Concepcion et al. v. Altice USA, Inc. and CSC Holdings, LLC (D/B/A Optimum) et al.*, Case No. 1:22-cv-4308 in the United States District Court for the Eastern District of New York, on behalf of all current or former Altice customers who paid a Network Enhancement Fee ("Network Fee") for Optimum internet service received

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C9

in New York or Connecticut within the applicable statute of limitations (the "*Concepcion*

Action"). On November 14, 2022, Plaintiffs filed a waiver of summons;

    WHEREAS on July 27, 2022, Plaintiffs Annette Baker, Jeff Lamoree, and Kathryn Major

filed a class action lawsuit entitled *Baker et al v. Cebridge Telecomm CA, LLC (D/B/A/*

*Suddenlink and Optimum) and Altice, USA, Inc. et al.*, Case No. 3:22-cv-4346-EMC in the

United States District Court for the Northern District of California, on behalf of all current or

former Altice customers in California who paid a Broadcast Station Programming Surcharge and

a Sports Programming Surcharge ("TV Fee" or "TV Fees") within the applicable statute of

limitations (the "*Baker* Action"). On November 4, 2022, Defendants filed a motion to compel

arbitration. The motion to compel was not decided;

    WHEREAS, on May 31, 2022, Plaintiff Vasquez (through counsel) and Defendants

participated in an all-day mediation with retired Federal Magistrate Judge Jay Gandhi of the

United States District Court for the Central District of California in an attempt to negotiate a

settlement of the *Vasquez* Action. At that mediation, Defendants provided confidential customer

and financial data to Plaintiff for purposes of negotiating a settlement. The parties were unable to

reach a settlement at that time;

    WHEREAS, on August 15, 2022, the Parties in all three cases (with Plaintiffs appearing

via counsel) participated in an all-day mediation with retired Federal Magistrate Judge Jay

Gandhi in an attempt to negotiate a nationwide settlement of the *Vasquez, Baker*, and

*Concepcion* Actions (collectively referred to herein as the "Actions") against Defendants

involving the Network Fee and the TV Fees at issue. At that mediation, Defendants provided

confidential customer and financial data to Plaintiffs for purposes of negotiating a settlement.

While progress was made to settle the Actions, a settlement was not reached;

DocuSign Envelope ID: E21E5195-2562-4978-8797-AC09A13522CC

WHEREAS, from August 15, 2022, to November 10, 2022, the parties continued to negotiate in an attempt to settle the Actions;

WHEREAS, on November 10, 2022, the Parties participated in another all-day mediation with Judge Gandhi in an attempt to settle the Actions. The Parties made further progress, but did not reach a settlement;

WHEREAS, following the November 10 mediation, the Parties continued to negotiate to try to settle the Actions;

WHEREAS on November 23, 2022, the Parties were able to reach a settlement in principle and executed a Settlement Term Sheet for the Actions which set forth the key terms of a proposed class-wide settlement;

WHEREAS, on November 30, 2022, Plaintiffs file a Notice of Voluntary dismissal without prejudice of the *Concepcion* Action;

WHEREAS, on December 5, 2022, Plaintiffs filed Notices of Voluntary Dismissal without prejudice of the *Vasquez* and *Baker* Actions;

WHEREAS, on December 5, 2022 Plaintiff Vasquez and Defendants filed a joint Stipulated Motion to Dismiss Appeal the Ninth Circuit Court Appeal. On December 9, 2022, the Court of Appeal granted the motion and dismissed the appeal;

WHEREAS on March 31, 2023 Plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman filed a lawsuit captioned *Seale et al. v. Altice USA, Inc. et al*, Docket No. MER-L- 618-23, in the Superior Court of New Jersey, Mercer County ("NJ State Court Action" or "State Action"), on behalf of a proposed class defined as all persons in the United States who, between July 27, 2018, and the date of preliminary approval of this proposed class action settlement, who were

4

customers of Altice receiving Optimum or Suddenlink services and paid either a Network Fee or a TV Fee. The State Action was filed for purposes of seeking court approval of this proposed class action settlement;

WHEREAS, Plaintiffs have alleged in the State Action that Defendants' advertising and sign-up practices constituted a deceptive scheme perpetrated by Defendants against Altice's internet and television customers, including Plaintiffs herein. Specifically, Plaintiffs alleged that Altice advertised and promised, through its Optimum and Suddenlink brands, a particular flat monthly rate for its internet and television services but then charged a higher rate by padding customers' bills with the Network Fee and the TV Fee, which Plaintiffs alleged were deceptive and bogus. Plaintiffs alleged that the Network Fee and the TV Fee were not disclosed to Defendants' customers until after they signed up for internet service and/or television service, and in any event were never adequately disclosed or explained including on Defendants' monthly billing statements. Plaintiffs alleged that the Fees were disguised double-charges for service which Defendants utilized as a way to covertly increase customers' rates, even during promised fixed-rate promotional periods or contracts;

WHEREAS, in the State Action, Plaintiffs alleged that Defendants' actions violate various consumer protection and other laws, including the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq.*; the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12-14, *et seq.*; the New Jersey Uniform Declaratory Judgment Act, N.J.S.A. § 2A:16-51, *et seq.*; the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 *et seq.*; the Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101 *et seq.*; the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*; the California False Advertising Law, Cal. Bus. & Prof. Code§ 17500, *et seq.*; the California Unfair

5

Competition Law, *id.* § 17200, *et seq.*; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.*; the Idaho Consumer Protection Act, Idaho Code §§ 48-601 *et seq.*; the Kansas Consumer Protection Act, Kan. Stat. §§ 50-623 *et seq.*; the Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110 *et seq.*; the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. §§ 51:1401 *et seq.*; the Massachusetts Regulation of Business Practices and Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1 *et seq.*; the Mississippi Consumer Protection Act, Miss. Code §§ 75-24-1 *et seq.*; the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*; the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 41.600 *et seq.*; the Nevada Deceptive Trade Practices Act, *id.* §§ 598.0901 *et seq.*; the New Mexico Unfair Practices Act, N.M. Stat. §§ 57-12-1 *et seq.*; New York General Business Law §§ 349 and 350; North Carolina General Statute §§ 75-1.1 *et seq.*; the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 *et seq.*; the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 *et seq.*; the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code §§ 17-41 *et seq.*; the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 *et seq.*; the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101 *et seq.*; and additionally constitute a breach of the implied covenant of good faith and fair dealing in certain Defendants' respective customer service agreements;

WHEREAS, Plaintiffs seek a refund, on behalf of themselves and the proposed class, of all Network and TV Fees collected by Defendants, as well as statutory and punitive damages, attorneys' fees and costs, and injunctive and declaratory relief prohibiting Defendants' complained-of conduct in the future;

WHEREAS, Defendants continue to deny the claims of Plaintiffs, continue to deny any wrongdoing or liability of any kind whatsoever to Plaintiffs or the Settlement Class, and continue to assert that they fully complied with the law in all conduct with respect to the Class;

WHEREAS, Defendants have concluded, without admitting liability, that settlement is desirable in order to avoid the time, further expense, and burdens of protracted litigation and to resolve finally and completely all pending claims of Plaintiffs and all members of the Settlement Class which were or could have been asserted based on the facts alleged in the State Action relating to Defendants' charging of Network Fees and TV Fees;

WHEREAS, Plaintiffs recognize the costs and risks of prosecuting the State Action through class certification and trial, and believe that their interest, and the interests of all Class Members, to resolve the State Action and the claims against Defendants set forth herein are best served by and through the terms contained within this Settlement Agreement;

WHEREAS, the Parties desire to compromise and settle all issues and claims, whether known or unknown, relating to the facts alleged by Plaintiffs in the Litigation (as defined below) or that could have been asserted under the facts alleged in the Litigation concerning the charging, manner and sufficiency of disclosure or description of the Network Fee and/or TV Fee, and the related sign-up practices, by Defendants, by or on behalf of all persons included in the Settlement Class (as defined below);

WHEREAS, solely for purposes of the Settlement, the Parties agree to the certification of a Settlement Class defined as follows:

> **All persons in the United States who, between July 27, 2018, and the date of preliminary approval, were customers of Altice's Optimum or Suddenlink services and were charged and paid at least one of the following: Network Enhancement Fee, Broadcast Station Programming Surcharge, TV Broadcast Fee, Sports Programming Surcharge, or Regional Sports Network Fee.**

WHEREAS, Plaintiffs and Class Counsel believe that this Settlement Agreement offers significant benefits to Class Members and is fair, reasonable, adequate, and in the best interest of all Class Members; and

WHEREAS, the Parties desire and intend to seek Court approval of the settlement as set forth in this Agreement;

NOW, THEREFORE, it is stipulated and agreed that, in consideration of the promises and mutual covenants set forth in this Agreement and the entry by the Court of a Final Approval Order and Judgment (as defined below), the Litigation shall be settled and compromised on the terms and conditions set forth below. It is further agreed that each of the Recitals stated above is true and accurate, and is made a part of this Agreement.

## I.   **DEFINITIONS**

As used in this Settlement Agreement, the following terms shall have the meanings set forth below. Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

1.1   Claim. The term "Claim" means submission of a Claim Form for a cash payment in the form of a check or electronic payment as described below in Paragraphs 3.4 and 3.5.

1.2   Claim Form. The term "Claim Form" means the form Class Members must complete and submit in order to make a Claim for a cash payment under this Agreement. The Claim Form shall be substantially similar to the form attached as **Exhibit A.**

1.3   Claimant. The term "Claimant" means any Class Member who submits a valid Claim Form (as determined by the Claims Administrator pursuant to Paragraph 3.6 of this Settlement Agreement) for a cash payment as described in Paragraphs 3.4 of this Settlement Agreement.

1.4     Claims Period. The term "Claims Period" means the time period during which Claim Forms may be submitted by Class Members and shall conclude 120 days after the entry of the Preliminary Approval Order (defined below) with respect to this Settlement.

1.5     Class Counsel. The term "Class Counsel" means DeNittis Osefchen Prince, P.C. and Hattis Law PLLC d/b/a Hattis & Lukacs.

1.6     Class Counsel Fees and Expense Award. The term "Class Counsel Fees and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses.

1.7     Class Email Notice. The term "Class Email Notice" or "Email Notice" shall mean the Court-approved form of email notice sent by the Settlement Administrator to Class Members informing them of (i) the preliminary approval of the Settlement; (ii) the scheduling of the Final Approval Hearing; and (iii) the opportunity to submit a Claim Form or to exclude themselves from or object to the Settlement. The Class Email Notice shall be substantially similar to the form attached hereto as **Exhibit B** and shall be approved by the Court prior to dissemination.

1.8     Class Long Form Notice. The term "Class Long Form Notice" or "Long Form Notice" means the notice document that will be disseminated or made available to the Class and will contain full and complete information about the Litigation and the claims made therein, the Class Settlement memorialized in this Agreement, and the procedures for Class Members to participate in the Settlement by submitting a Claim Form, to exclude themselves from the Settlement, or to object to the Settlement or to some aspect thereof, such as Class Counsel's application for attorneys' fees, costs, and expenses or the Plaintiffs' application for Incentive Awards. The Class Long Form Notice shall be substantially similar to the form attached as **Exhibit C** and shall be approved by the Court prior to dissemination.

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C9

1.9     <u>Class Members</u>. The term "Class Members" means the members of the Settlement Class.

1.10    <u>Class Period</u>. The term "Class Period" means the time period starting on July 27, 2018 and continuing through and including the date of Preliminary Approval.

1.11    <u>Class Postcard Notice</u>. The term "Class Postcard Notice" or "Postcard Notice" shall mean the Court-approved form of postcard notice to Class Members informing them of (i) the preliminary approval of the Settlement; (ii) the scheduling of the Final Approval Hearing; and (iii) the opportunity to submit a Claim Form or to exclude themselves from or object to the Settlement. The Class Postcard Notice shall be substantially similar to the form attached as **Exhibit D** and shall be approved by the Court prior to dissemination.

1.12    <u>Class Bill Notice</u>. The term "Class Bill Notice" or "Bill Notice" shall mean the Court-approved form of notice that will be included on one of Defendants' bills or invoices for service sent to Class Members who are existing customers of Defendants. The content of the notice shall be identical or substantially similar to the information set forth in the Court-approved Class Postcard Notice.

1.13    <u>Class Representatives</u>. The term "Class Representatives" or "Named Plaintiffs" means Plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman. "Class Representatives," "Named Plaintiffs," and "Plaintiffs" are used interchangeably throughout this Settlement Agreement and have the same meaning.

1.14    <u>Court</u>. The term "Court" means the Superior Court of New Jersey, Mercer County, where the Litigation will be pending.

1.15   Day or Days. The terms "Day" or "Days" means calendar days, except that if the last day to perform any action under this Agreement falls on a weekend, a legal holiday within the meaning of Federal Rule of Civil Procedure 6(a)(6), or a day on which the Court states that its clerk's office is inaccessible, then the last day to perform that action is moved to the next calendar day that is not a weekend, legal holiday, or day on which the clerk's office is inaccessible.

1.16   Defendants. The term "Defendants" means the named Defendants in the Litigation:  Altice USA, Inc., Cebridge Telecom CA, LLC d/b/a Suddenlink Communications, and CSC Holdings, LLC d/b/a Optimum.

1.17   Defendants' Counsel. The term "Defendants' Counsel" means the law firm of Mayer Brown LLP and any other local counsel in New Jersey that Defendants may retain.

1.18   Effective Date. The term "Effective Date" or "Settlement Effective Date" is the date on which this Settlement becomes Final within the meaning of Paragraph 1.18.

1.19   Final. With respect to the Judgment, this Settlement, the Final Approval Order, any Claims, the Incentive Awards, or the Class Counsel Fees and Expense Award, "Final" means that the time for appeal or petition for review or writ of certiorari has expired or, if an appeal or petition for review is taken and dismissed or the Settlement and Final Approval Order is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Judgment is set aside, materially modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become Final, unless expressly agreed to in writing by the Parties or the ruling pertains to the Class Counsel Fees and Expense Award or the Incentive Awards. Any proceeding or order or any appeal or petition for review or writ of certiorari pertaining solely to the Class Counsel Fees and

Expense Award or the Incentive Awards will not in any way delay or preclude the Judgment or

this Settlement from becoming Final, provided, however, that Defendants shall have no

obligation to pay any Class Counsel Fees and Expenses or Incentive Awards until a Final

determination on the appropriate amounts of such Class Counsel Fees and Expenses and

Incentive Awards has been made.

      1.20   <u>Final Approval Hearing and Order</u>. The term "Final Approval Hearing" means the

hearing at which the Court will consider and finally decide whether to enter the Final Approval

Order, and the term "Final Approval Order" means the Court order that finally certifies the

Settlement Class, approves the Settlement as set forth in this Agreement without material

modification (unless expressly agreed to in writing by the Parties or that pertains to the Class

Counsel Fees and Expense Award or Incentive Awards), approves payment of the Incentive

Awards and Class Counsel Fees and Expense Award, and makes such other final rulings as are

contemplated by this Agreement.

      1.21   <u>Incentive Awards</u>. The term "Incentive Awards" means the $10,000 payments

that Defendants have agreed to pay from the Settlement Fund to each Class Representative,

Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad

Concepcion, Xue Shi Lin, and Jesse Friedman, for their contributions to the Litigation, subject to

Court approval.

      1.22   <u>Judgment</u>. The term "Judgment" means the order of the Court to be issued

following the Final Approval Order.

      1.23   <u>Litigation</u>. The term "Litigation" means the NJ State Court Action.

      1.24   <u>Notice and Other Administrative Costs</u>. The term "Notice and Other

Administrative Costs" means all costs actually incurred by the Settlement Administrator in

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522CC

administering the Settlement, including but not limited to the Settlement Administrator's administrative fee, setting up and operating the Settlement Website and IVR phone line, disseminating the Class Email and Class Postcard Notice, disseminating the payments to Claimants, and tracking Claims, Objections, and Requests for Exclusion.

1.25     Objection and Objection Date. The term "Objection Date" means the date agreed upon by the Parties or otherwise ordered by the Court as the deadline for Class Members to file an "Objection" to the Settlement or to any terms or provisions set forth in this Agreement, and to submit any required supporting statements, proof, or other materials and/or argument, pursuant to Section VII of this Agreement.

1.26     Parties. The term "Parties" collectively means Plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman on behalf of themselves and all others similarly situated (the Settlement Class), by and through their counsel, and Defendants Altice USA, Inc., Cebridge Telecom CA, LLC d/b/a Suddenlink Communications, and CSC Holdings, LLC d/b/a Optimum, by and through their counsel.

1.27     Plaintiffs. The term "Plaintiffs" means Plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman on behalf of themselves and all others similarly situated (the Settlement Class).

1.28     Preliminary Approval. The term "Preliminary Approval" means that the Court has entered an order preliminarily certifying the Settlement Class and preliminarily approving the Settlement and the terms and conditions of this Settlement Agreement, including the content and manner of providing notice to Class Members.

13

1.29    Preliminary Approval Order. The term "Preliminary Approval Order" means the order of the Court preliminarily certifying the Settlement Class and preliminarily approving the class Settlement memorialized in this Agreement.  The Preliminary Approval Order shall be substantially similar to the form attached as **Exhibit E**, subject to Court approval.

1.30    Released Claims. The term "Released Claims" means any and all claims described in Paragraph 9.1 of this Agreement.

1.31    Request for Exclusion. The term "Request for Exclusion" means any request by any Class Member to be excluded from, or to "opt out" of, the Settlement pursuant to the provisions of Section VI of this Agreement.

1.32    Settlement. The term "Settlement" means the agreement by the Parties to resolve, on a class-wide basis, the Litigation and all Released Claims as set forth in Paragraph 9.1, the terms of which have been memorialized and provided for in this Agreement.

1.33    Settlement Administrator. The term "Settlement Administrator" means Angeion Group, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

1.34    Settlement Agreement. The term "Settlement Agreement" or simply "Agreement" means this Settlement Agreement and all of its attached exhibits.

1.35    Settlement Class.  The term "Settlement Class" means:

**All persons in the United States who, between July 27, 2018, and the date of preliminary approval, were customers of Altice's Optimum or Suddenlink services and were charged and paid at least one of the following: Network Enhancement Fee, Broadcast Station Programming Surcharge, TV Broadcast Fee, Sports Programming Surcharge, or Regional Sports Network Fee.**

1.36    Settlement Fund. The term "Settlement Fund" means the total cash commitment by Defendants for purposes of effecting the class Settlement of the Litigation, as described in Sections III and IV of this Agreement, with a value capped at $15,000,000.00, including any

14

interest or other amount earned on that money after being remitted by Defendants but before it is distributed. The payment and disposition of the Settlement Fund is subject to the provisions of this Agreement.

1.37    <u>Settlement Website</u>. The term "Settlement Website" means a website created, operated, and maintained by the Settlement Administrator solely for the purpose of making available to the Class Members the documents and information related to the Litigation and this Settlement, and to effect the Claims submission process referenced in Paragraphs 3.4, 3.5, and 5.2 below. The content of the Settlement Website must be approved by Class Counsel and Defendants' Counsel prior to posting or otherwise making it available to Class Members, which approval shall not be unreasonably withheld.

1.38    <u>NJ State Court Action</u>.  The term "NJ State Court Action" or "State Action" refers to the action pending in the Superior Court of New Jersey, Mercer County, entitled *Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman on behalf of themselves and all others  similarly situated v. Altice USA, Inc., Cebridge Telecom CA, LLC d/b/a Suddenlink Communications, and CSC Holdings, LLC d/b/a Optimum*, Docket No. MER-L-618-23.

## II.    <u>REQUIRED EVENTS</u>

2.1    Class Counsel shall take all reasonable and necessary steps, subject to the Court's availability, to obtain entry of the Preliminary Approval Order and to move for the Final Approval Order as soon as practicable. Defendants' Counsel shall cooperate as set forth in this Agreement.

2.2    The Parties shall jointly move for, or Class Counsel shall move for and Defendants' Counsel shall not oppose, entry of a Preliminary Approval Order in the same or

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522CC

substantially identical form as that attached as **Exhibit E**. In moving for preliminary approval of this Settlement, Plaintiffs shall seek only certification of a settlement class that is expressly conditional on the Settlement obtaining final approval from the Court.

2.3     Class Counsel will use their best reasonable efforts, consistent with the terms of this Agreement, to promptly obtain a Final Approval Order. Defendants' Counsel shall cooperate as set forth in this Agreement.

2.4     The Parties acknowledge that prompt approval, consummation, and implementation of the Settlement set forth in this Agreement is essential. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Agreement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Agreement and the transactions contemplated hereby, including Class Counsel's obligation to provide tax information promptly upon reasonable request by Defendants to facilitate payments required under this Settlement.

## III.     <u>SETTLEMENT TERMS</u>

3.1     <u>Benefit to Settlement Class Members from the Settlement Fund</u>. Defendants will pay up to, and no more than, $15,000,000.00 in cash, in the form of checks or electronic payments, to fund the following: (i) valid Claims (as determined by the Settlement Administrator pursuant to Paragraph 3.8 below) that Settlement Class Members timely submitted via completed Claim Forms (as described in Paragraphs 3.3 through 3.7 below); (ii) Notice and Other Administrative Costs actually incurred by the Settlement Administrator (including check distribution costs and costs relating to the Settlement Website, as described in Section V below),

16

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C9

subject to the limits contained in Section 3.3(a); (iii) the Class Counsel Fees and Expense Award, as described in Paragraph 4.1 below, and (iv) the Incentive Awards to the Class Representatives, as described in Paragraph 4.2 below (collectively, "Settlement Costs"). Other than funding the Settlement Fund with a monetary obligation no greater than and capped at $15,000,000.00 as set forth in Paragraph 3.3 below, Defendants shall have no further payment obligations to Plaintiffs or Class Members, the Settlement Administrator, or Class Counsel under the Settlement or this Agreement. Therefore, to the extent the Settlement Costs are less than $15,000,000.00, such Settlement Costs will represent Defendants' maximum financial obligation under this Agreement.

3.2    Total Financial Commitment. Defendants' total financial commitment and obligation under this Agreement, including but not limited to paragraph 3.1, shall not exceed $15,000,000.00.

3.3    Schedule of Payments into the Settlement Fund. Defendants shall not be required to make payments into a separate, physical Settlement Fund or account; however, Defendants do acknowledge they shall be required to make payment of monies, not to exceed a total of $15,000,000.00, at various times as set forth in more detail herein for payment of the following items from the Settlement Fund:

a.    *Notice and Other Administrative Costs.* Amounts associated with the administration of the Settlement, including the Settlement Administrator's Administrative Fee, costs of disseminating the Class Notice and Class Awards, costs of creating the Settlement Website, and other administrative costs not to exceed $1,300,000. Any Notice and Other Administrative Costs which exceed $1,300,000 shall be the responsibility of Class Counsel.

17

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522CC

      b.    *Class Counsel Fees and Expense Award.* An amount equal to the Class Counsel Fee and Expense Award as ordered by the Court, to be paid as described at Paragraph 4.1, below.

      c.    *Incentive Awards.* An amount equal to the Incentive Awards as ordered by the Court, to be paid as described at Paragraph 4.2, below.

      d.    *Payment of Valid Claims.* An amount up to, but no greater than, $15,000,000.00, less the sum of (i) the total Notice and Other Administrative Costs, (ii) the Class Counsel Fees and Expense Award, and (iii) the Incentive Awards, which represents the maximum value of the net settlement fund from which valid Claims (as determined by the Settlement Administrator pursuant to paragraph 3.8 below) are to be paid within the later of: (1) 45 days of when this Settlement becomes Final; (2) 30 days after the Settlement Administrator provides Defendants with a list of all valid Claims and any objections by Defendants to any such Claims have been resolved (as provided in paragraph 3.6 below);  or (3) 30 days after Class Counsel and the Settlement Administrator provided complete and correct tax or other forms reasonably requested by Defendants to facilitate the payments.

    3.4   <u>Class Member Settlement Payments</u>. Class Members who file a valid Claim (as determined by the Settlement Administrator pursuant to Paragraph 3.6 below) shall receive a payment in the form of either a check or electronic payment, the amount of which shall depend upon whether the Class Member is a current or former customer of Defendants. A Class Member shall be deemed to be a former customer for purposes of this paragraph if, on the day that the Settlement Administrator distributes the payment to that Class Member, the Class Member's account(s) for all services have been suspended or terminated for any reason. The amounts of the

payments to Class Members who the Settlement Administrator determines have submitted valid Claims are as follows:

> a.      If the Class Member paid a Network Fee **and** a TV Fee during the Class Period and is a **current** customer of Defendants that Class Member shall receive $27.50;

> b.      If the Class Member paid a Network Fee **and** a TV Fee during the Class Period and is a **former** customer of Defendants that Class Member shall receive $20.00.

> c.      If the Class Member paid a TV Fee only during the Class Period and is a **current** customer of Defendants that Class Member shall receive $15.00.

> d.      If the Class Member paid a Network Fee only during the Class Period and is a **current** customer of Defendants that Class Member shall receive $12.50.

> e.      If the Class Member paid **either** a Network Fee **or** TV Fee during the Class Period and is a **former** customer of Defendants that Class Member shall receive $10.00.

3.5     <u>Proof of Claim</u>.  In order to submit a Claim for a cash payment under the Settlement, a Claimant must complete and submit a Claim Form that includes certain information specified in the Claim Form, sufficient to permit the Settlement Administrator to identify the Class Member, so that the Settlement Administrator can confirm whether the Claimant is a current or former customer and whether the Claimant paid a Network Fee or a TV Fee.

> a.   Each Claimant shall complete the Claim Form either in online or in hard copy form, and shall either submit the Claim Form to the Settlement Administrator electronically via the Settlement Website or mail the original signed Claim Form to the Settlement Administrator.

> b.   Claimants who are current internet and/or television customers of Defendants shall provide on the Claim Form their name, service address (and mailing address if different), e-mail, and at least one of the following: (1) unique Claim ID generated by the Settlement

Administrator which is on the top of the Email Notice or Postcard Notice; or (2) Optimum

account number. Class members who are former customers of Optimum or Suddenlink shall

provide on the Claim Form their name, last service address (and current mailing address, if

different), e-mail, and either (1) unique Claim ID or (2) former account number. The Claimant

must also physically or electronically sign the Claim Form under penalty of perjury that the

information submitted on the Claim Form is true and correct to the best of the Claimant's

knowledge.

   c. The Claim Form also shall specify if the Class Member requests that payment be

made electronically or by a check sent via U.S. Mail, and shall indicate that if a Class Member

fails to choose a payment type, the payment will be sent electronically if possible.

   d. The Claims Period shall run for a period of 120 days, commencing on the date the

Preliminary Approval Order is entered.

   e. All valid Claim Forms must be postmarked or received by the Settlement

Administrator no later than 150 days from the date of the Preliminary Order. The Claim Form

must be submitted to the Settlement Administrator either electronically via the Settlement

Website or via U.S. Mail.

   3.6 <u>Review of Claims</u>. The Settlement Administrator shall be responsible for

reviewing all Claims to determine their validity, including, but not limited to, rejecting any

Claim that does not comply in any respect with the instructions on the Claim Form, that is

submitted after the close of the Claims Period, or that is submitted by an individual who has not

been identified or otherwise verified by Defendants as a Class Member. The Settlement

Administrator is authorized to require such additional information as it deems necessary to verify

the validity of any Claims, in accordance with customary and reasonable fraud prevention

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C6

practices. After completion of its review of Claims, the Settlement Administrator shall provide Defendants with a list of all valid Claims. Defendants are also entitled to challenge the validity of any Claim for any appropriate reason, including but not limited to if Defendants' records do not show that the claimant is a customer or that the claimant paid any of the challenged fees. After the close of the Claims Period, Altice will provide the Settlement Administrator with updated information regarding whether Class Members are current or former customers.

3.7     <u>Pro-Rata Reduction of the Settlement Fund</u>. If the dollar value of valid Claims, determined in accordance with Paragraphs 3.3 through 3.6 above, exceeds the amount in the Settlement Fund available to satisfy those Claims after payment of the Notice and Other Administrative Costs, the Class Counsel Fees and Expense Award, and the Incentive Awards, then payments to Class Members from the Settlement Fund shall be reduced on a pro-rata basis, such that the total available cash will satisfy all valid Claims.

3.8     <u>Timing of Payments of Valid Claims</u>. Within 45 days of the Settlement Fund being paid pursuant to Paragraph 3.3(d), the Settlement Administrator shall, consistent with Paragraphs 3.4 through 3.7 and the information provided by Defendants, distribute payments from the Settlement Fund to eligible Class Members who have, in a timely manner, completed valid Claim Forms and submitted such forms to the Settlement Administrator, as follows:

a.     The Settlement Administrator shall send payment to eligible Claimants, in the form of either checks sent via U.S. Mail or in the form of the electronic payment method previously chosen by the Claimant. If the Claimant fails to select a payment method, the Settlement Administrator shall send the payment electronically if possible. If the Claimant selects multiple payment methods, the Settlement Administrator shall select the least expensive selected method to send the payment.

b.   Should a check be returned as undeliverable, the Settlement Administrator will use its reasonable best efforts to conduct a postal look-up to locate the proper address of the Class Member in order to re-mail the check one time to the proper address.

c.   The costs for processing and mailing out checks to Class Members will be paid from the Notice and Other Administrative Costs paid to the Settlement Administrator as specified in Section 3.3(a) .

3.9   <u>Unclaimed Settlement Class Benefits of Valid Claims or Uncleared Checks</u>. Those Settlement Class Members whose checks are not cashed within 180 days after issuance shall be ineligible to receive a cash settlement benefit, and Defendants shall have no further obligation to make any payment pursuant to this Agreement, or otherwise, to such Settlement Class Members, and such monies will revert back to Defendants. In addition, after payment of all valid Claims of Class Members, the Notice and Other Administrative Costs, the Class Counsel Fees and Expense Award, and the Incentive Awards, as approved by the Court, Defendants shall have no further obligation to make any payment under the Settlement Fund or pursuant to this Agreement, and any remaining monies in the Settlement Fund will promptly revert back to Defendants.

3.10   <u>Disclosure of Changes to the Fees</u>. In addition to the monetary benefits to Settlement Class Members provided by Defendants under this Section 3, Defendants agree to provide all customers who pay the Network Fee or a TV Fee going forward with advance, boldface notice in the event that there are changes to these fees.

DocuSign Envelope ID: E21E5195-2562-4078-8797-AC09A13522C9

## IV.     <u>ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS</u>

4.1.    Within 20 days of the Final Approval Hearing, Class Counsel shall petition the Court for (and Defendants have agreed not to oppose) an award of attorneys' fees and costs in an amount not to exceed 33.33% of the maximum total value of the Settlement Fund (*i.e.*, $4,999,500.00). Class Counsel's attorneys' fees and costs, if approved by the Court, shall be paid from the Settlement Fund no later than the later of: (1) 5 days after the Settlement becomes Final, or (2) 30 days after Class Counsel provided complete and correct tax or other forms reasonably requested by Defendants to facilitate the payment. Plaintiffs and Class Counsel agree that they will not seek recovery of any greater amounts of attorneys' fees and expenses than that set forth in this Paragraph. The Parties understand and acknowledge that the award of attorneys' fees and expenses is within the Court's discretion.

4.2.    Given the efforts of Plaintiffs on behalf of the Class Members, the Parties have agreed that Plaintiffs Daquis Seale, Nick Vasquez, Annette Baker, Jeff Lamoree, Kathryn Major, Natividad Concepcion, Xue Shi Lin, and Jesse Friedman shall each receive a one-time Incentive Award in the amount of $10,000 to be paid from the Settlement Fund, if approved by the Court, upon petition to be submitted within 5 days of the Final Approval Hearing. Such Incentive Awards, if approved by the Court, shall be paid by checks made payable to each Plaintiff and shall be delivered to Class Counsel no later than the later of: (1) 20 days after the Settlement becomes Final; or (2) 30 days after Class Counsel provided complete and correct tax information or other forms reasonably requested by Defendants to facilitate the payments.

4.3.    Any application for an award of attorneys' fees and expenses or incentive awards is to be considered separate from the approval of this Settlement, and any challenges to any such

DocuSign Envelope ID: E21FE195-2562-4978-8797-AC09A13522C2

awards shall not terminate or delay the Settlement, provided, however, that Defendants shall have no obligation to pay any Class Counsel Fees and Expenses or Incentive Awards until a Final determination on the appropriate amounts of such Class Counsel Fees and Expenses and Incentive Awards has been made by the Court.

## V.     CLAIMS ADMINISTRATION AND NOTICE TO CLASS MEMBERS

5.1.     The Settlement Administrator, subject to Court approval, shall help implement the terms of the proposed Settlement as set forth in this Agreement. The Settlement Administrator shall be responsible for administrating the Settlement and related tasks, including, without limitation, (a) establishing the Settlement Website at which Claims can be filed online, and which posts the Class Email and Postcard Notices, Class Long Form Notice, Claim Form, and other related documents as directed by Class Counsel, (b) establishing an IVR number to receive telephone calls; (c) distributing and publishing the Class Email and Postcard Notices to Class Members, (d) answering inquiries from Class Members and/or forwarding such inquiries to Class Counsel, (e) receiving and maintaining on behalf of the Court and the Parties any Class Member correspondence regarding Requests for Exclusion to the Settlement, (f) receiving, reviewing and processing Claims, (g) distributing payments to Class Members who have submitted valid Claims, and (h) otherwise assisting with the implementation and administration of the Settlement terms.

5.2.     Performance Standards of Settlement Administrator. The contract with the Settlement Administrator shall obligate the Settlement Administrator to abide by the following performance standards:

a.     The Settlement Administrator shall provide prompt, accurate, and objective responses to inquiries from Class Counsel and Defendants' Counsel, and shall periodically report on Claims, Requests for Exclusion, and objections; and

b.     The Settlement Administrator shall keep no confidences from counsel for either of the Parties in connection with its administration of this Settlement Agreement, except as with respect to unredacted contact and account information about Class Members that either Defendants or Class Members provide to the Settlement Administrator, which must be kept confidential in order to protect the privacy of Class Members as explained further in Section 5.3(b) below.

5.3.    <u>Class Member Information Provided by Defendants to the Settlement Administrator</u>.

a.     On or before 15 calendar days after entry of the Preliminary Approval Order, Defendants shall provide the following Class Member information to the Settlement Administrator:

(1)    A list of any and all persons whom Defendants' records indicate are Class Members and their last known email and postal addresses;

(2)    Whether the Class Member is a current or former Optimum or Suddenlink customer and the Account Number(s) for each Class Member (if possible); and

(3)    Whether the Class Member paid a Network Fee, a TV Fee or both.

b.     Because the information about Class Members that will be provided to the Settlement Administrator by Defendants will consist of confidential information, non-public personal information,  and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to

25

ensure that the Class Member information provided to it by Defendants will be used solely for the purpose of effectuating this Settlement. Any such confidential or personal information provided to the Settlement Administrator will not be provided to Plaintiffs or Class Counsel. The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement. After the close of the Claims Period, Altice will provide the Settlement Administrator with updated information regarding whether Class Members are current or former customers.

5.4.    Notice Requirements to Class Members.

a.    The Settlement Administrator will send via electronic mail two Class Email Notices to Class Members who are identified by Defendants and for whom Defendants provided or the Settlement Administrator can find an email address.  The Settlement Administrator will send the first Email Notice on or before 60 calendar days after entry of the Preliminary Approval Order, and will send the Second Email Notice 75 calendar days after the entry of Preliminary Approval.  The form of the Class Email Notice shall be substantially similar to the form attached hereto as **Exhibit B**, and shall be approved by the Court prior to dissemination.

b.    The Settlement Administrator will also send via U.S. Mail a Class Postcard Notice to Class Members for whom Defendants do not have valid email addresses or to whom attempts to send both Class Email Notices failed, at the Class Members' last known mailing addresses as set forth in Defendants' records.  The Settlement Administrator will mail the Class Postcard Notice on or before 60 calendar days after entry of the Preliminary Approval Order.  Should the Settlement Administrator receive any undelivered Class Postcard Notices, it will conduct one skip trace or postal look-up to search for a new address for such Class Member

and resend the Class Postcard Notice to any newly found Class Member address. The form of the Class Postcard Notice shall be substantially similar to the form attached as **Exhibit D** to this Agreement, and shall be approved by the Court prior to dissemination.

        c.     Defendants shall provide a Class Bill Notice to Class Members who are current customers, to be printed on the customer bill in the next 30 to 60 days after the Preliminary Order is granted. The Class Bill Notice shall incorporate language from the text of the Class Postcard Notice sufficient to alert recipients to their potential class membership along with a link to the Settlement Website. The Class Bill Notice shall be clear and conspicuous and be placed in an appropriate location on the customer bill.

        d.     The Class Email Notice and  Class Postcard Notice will each contain information informing Class Members of (i) the preliminary approval of the Settlement; (ii) the scheduling of the Final Approval Hearing; (iii) information for Class Members to obtain a Claim Form in order to submit a Claim; and (iv) their opportunity to exclude themselves from or object to the Settlement.  The costs for processing and disseminating the Class Email Notice and Class Postcard Notice will be paid from the Notice and Other Administrative Costs as specified in Section 3.3(a).

        e.     The Settlement Administrator shall create a Settlement Website www.OptimumSuddenlinkFeeSettlement.com or substantially similar thereto, which will contain information describing the settlement and will contain the Class Long Form Notice (**Exhibit C** hereto), the Class Email Notice (**Exhibit B),** the Class Postcard Notice (**Exhibit D),** the Claim Form (**Exhibit A**), Class Counsel's contact information, a copy of this Settlement Agreement, and a copy of Plaintiffs' operative Complaint in the Litigation, as filed in the Superior Court of New Jersey, Mercer County. The Settlement Administrator will create and launch the Settlement

Website on or before 25 days after entry of the Preliminary Approval Order. The cost of the Settlement Website will be paid for from the Notice and Other Administrative Costs as specified in Section 3.3(a). The Class Long Form Notice, Class Email Notice, Class Postcard Notice, and Claim Form will also be posted by Class Counsel in a prominent location on Class Counsel's website www.denittislaw.com.

        f.     The Settlement Administrator shall set up a toll-free IVR telephone number that Class Members may use to call to obtain information about the Settlement, including the location of the Settlement Website, how to file claims, and the deadlines to submit claims, objections, or requests for exclusion from the Settlement. The cost of the IVR telephone number will be paid for from the Notice and Other Administrative Costs as specified in Section 3.3(a).

        g.     <u>Proof of Notice</u>. No later than ten days prior to the Final Approval Hearing, the Settlement Administrator shall provide an affidavit to the Court, with a copy to Class Counsel, attesting that notice was published online and distributed, and Claims were received and processed, in a manner consistent with the terms of this Settlement Agreement.

     5.5.     The Parties agree that the methods of notice set forth in this Section constitute the best form of notice to the Class Members that is practicable under the circumstances.

## VI.    **REQUESTS FOR EXCLUSION BY CLASS MEMBERS**

     6.1     Any Class Member may make a Request for Exclusion by mailing such request in writing to the Settlement Administrator, at the address set forth on the Settlement Website and in the Class Long Form Notice. Any Request for Exclusion must be mailed and postmarked no later than 20 days prior to the date of the Final Approval Hearing. Any Request for Exclusion must include all of the following to be valid: (1) the name, account number, mailing address,

telephone number and email address of the person requesting exclusion, as well as the person's

last service address (if different from the person's current mailing address); (2) a statement that

they are a Class Member; (3) the statement that "I request to be excluded from the Settlement

Class, the settlement, and from any judgment entered in *Seale et al. v. Altice USA, Inc. et al*,

Docket No. MER-L- 618-23.,"; and (4) the personal handwritten signature or the personal

electronic signature of the Class Member, or, if the Class Member is a minor, by the Class

Member's parent or legal guardian.

6.2     Any Class Member who submits a timely Request for Exclusion may not file an

objection to the Settlement and shall be deemed to have waived any rights or benefits under the

Settlement and/or this Agreement.

6.3     The Settlement Administrator shall report the names of all individuals who have

submitted a Request for Exclusion to the Court no less than 10 days prior to the Final Approval

Hearing.

6.4     Any Class Member who wishes to be excluded from the Settlement Class can

only opt out for himself or herself and, except for minors, cannot opt out for any other person.

Nor can any person within the Settlement Class authorize any other person to opt out on his or

her behalf.  The Preliminary Approval Order shall provide that no person or entity shall purport

to exercise any exclusion rights of any other person or purport to exclude other Class Members

as a group, aggregate, or class, or as an agent or representative for a Class Member. Any such

purported exclusion shall be void, and any Class Member who is the subject of the purported

opt-out shall be treated as a Class Member for all purposes.

6.5     The Parties shall have the right to challenge the timeliness and validity of any

Request for Exclusion. The Court shall determine whether any contested Request for Exclusion

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C2

is valid.

6.6     Should the number of persons who choose to opt-out or be excluded from the Settlement Agreement exceed the number of persons which the Parties have confidentially agreed to, Defendants shall have the exclusive right, at its option, to terminate the Settlement Agreement.

## VII.     OBJECTIONS BY CLASS MEMBERS

7.1     The Parties will request that the Court enter an order requiring any Class Member who wishes to be heard orally at the Final Approval Hearing, or who wishes for any objection to be considered, to file a written notice of objection with the Court no later than 20 days prior to the Final Approval Hearing, and to mail a copy of such objection to the Settlement Administrator, Class Counsel and Defendants' Counsel. Such objections shall: (i) state the name, account number, mailing address, telephone number, and email address of the person, as well as the person's last service address (if different from the current mailing address), (ii) state whether the person is represented by counsel, and if so the identity of such counsel, (iii) provide proof of membership in the Settlement Class, (iv) contain a detailed statement of each objection asserted, including the grounds for objection and reasons for appearing and being heard, together with any evidence and documents in support of the objection, and (v) contain the person's signature.

7.2     The agreed-upon procedures and requirements for filing objections in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Class Member's objections to the Settlement, in accordance with such Class Member's due process rights. The Preliminary Approval Order and Class Long Form Notice will require all Class Members who have any objections to file with the Court such notice of objection or request to be heard, and to serve by mail or hand delivery such notice of objection

or request to be heard upon the Settlement Administrator, Class Counsel and Defendants' Counsel at the addresses set forth in the Class Long Form Notice and posted on the Settlement Website, by no later than the Objection Date. The Preliminary Approval Order will further provide that objectors who fail to properly or timely file their objections with the Court, along with the required information and documentation set forth above, or who fail to serve them as provided above, shall not be heard during the Final Approval Hearing, nor shall their objections be considered by the Court.

7.3     Class Members may object either on their own or through an attorney hired at their own expense. If an objecting Class Member hires an attorney to represent him or her, that attorney must file with the Court and serve upon the Parties' respective counsel, a notice of appearance no later than 20 days before the Final Approval Hearing.

7.4     Any objection that fails to satisfy the requirements of this Section, or that is not properly and timely submitted, shall be deemed ineffective, and deemed by the Parties to have been waived, and the Parties will argue that the Class Member asserting such objection may not have his or her objection heard or otherwise considered by the Court.

## VIII.   COURT ADMINISTRATION OF THE SETTLEMENT

8.1     The Plaintiffs shall be responsible for filing any and all motions necessary to obtain preliminary and final approval of this proposed Settlement Agreement by the Court. Plaintiffs shall provide courtesy drafts of their motions for preliminary and final approval to Defendants within a reasonable time before filing.

8.2     The Parties agree that Plaintiffs will stipulate to as many extensions of time of the deadline for Defendants to answer or otherwise respond to the complaint in NJ State Court as are necessary, and that Plaintiffs may move for preliminary and final approval of this settlement

before Defendants have filed an answer or motion to dismiss any complaint submitted by

Plaintiffs to the NJ State Court. Plaintiffs agree that, in moving for preliminary approval of this

Settlement, they shall seek certification of only a Settlement Class that is expressly conditional

on the Settlement obtaining final approval from the NJ State Court.

  8.3  This Agreement was entered into only for the purpose of settlement of the

Litigation. In the event that (a) the Court conditions either the Preliminary Approval Order or the

Final Approval Order and Judgment on any modifications of this Agreement that are not

acceptable to all Parties; (b) the Court does not finally approve this Agreement or enter a Final

Approval Order and Judgment; or (c) a final settlement does not occur for any reason, then this

Agreement shall be deemed null and void *ab initio* and the Parties shall be deemed restored to

their respective positions as of the date before any party executed the Settlement Term Sheet. In

that event: (a) any Settlement Class shall be immediately de-certified, and any order granting

preliminary approval of the Settlement shall immediately be deemed null, void and vacated, and

shall have no further force and effect, all without the need for any further action by the Court or

the Parties; (b) no term or draft of this Agreement, or any part of the Parties' settlement

discussions, negotiations or documentation will have any effect or be admissible into evidence

for any purpose in the Litigation or any other proceeding. If the Court does not approve this

Agreement or enter a Final Approval Order and Judgment for any reason, Defendants shall retain

all of their rights to object to the maintenance of the State Action or any other lawsuit as a class

action, and nothing in this Agreement or other papers or proceedings related to this Agreement

shall be used as evidence or argument by any Party concerning whether any such action may

properly be maintained as a class action.  In addition, Plaintiffs expressly represent that

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C9

Defendants have preserved their right to move to compel arbitration of the plaintiffs' claims if the Court fails to approve the Agreement or enter a Final Approval Order and Judgment.

8.4     The Court retains exclusive and continuing jurisdiction over the Litigation and all Parties and Class Members to interpret and enforce the terms and conditions of this Agreement, and over the distribution of benefits to the Class Members.

8.5     This Agreement shall not be subject to collateral attack by any Class Member or their representatives. Prohibited collateral attacks shall include, but are not limited to, assertions that a Class Member's claim should have been heard or decided by another forum, that a Class Member's claim was improperly denied or improperly calculated, that a Class Member's Request for Exclusion was improperly denied, or that a Class Member failed to receive sufficient notice of this Agreement or the Final Fairness Hearing.

## IX.     RELEASE, DISMISSAL OF LITIGATION, AND JURISDICTION OF COURT

9.1     <u>Release</u>.  Upon entry of the Final Approval Order and Judgment, the Class Representatives, for themselves and on behalf of all Class Members who did not submit a timely and valid Request for Exclusion, and each of the Class Representatives' and those Class Members' respective heirs, spouses, parents, family members, trustees, executors, administrators, successors, assigns, employees, agents, representatives, any and all other persons or entities acting under the supervision, direction, control or on behalf of any of the foregoing, and any and all other persons or entities that could claim by or through them (collectively, the "Class Representative and Settlement Class Releasors"), hereby fully, finally, and forever settle and compromise with, and release and discharge, Defendants and their respective present and former parent companies and any and all other companies in the parent companies' chain of ownership, subsidiaries, divisions, related or affiliated companies, wholly owned companies, owners,

33

shareholders, partners, members, officers, directors, managers, employees, consultants, agents, attorneys, insurers, representatives, accountants, beneficiaries, heirs, successors, predecessors, assigns, vendors, business partners, and any individual or entity which could be jointly liable with any of the foregoing, and all other persons acting under the supervision, direction, control or on behalf of any of the foregoing (collectively, the **"Defendant Releasees"**) of and from all claims or potential claims, whether known or unknown, arising prior to the date the Preliminary Approval Order is entered by the Court, that were made or could have been made based on the facts alleged in the Litigation arising out of, concerning or related to Defendants' charging, manner and sufficiency of disclosure or description of the Network Fee and the TV Fee, and the related sign-up practices, and including, but not limited to, any and all manner of legal, equitable, federal, state, administrative, statutory or common law action or causes of action, suits, claims, debts, liabilities, charges, losses, demands, obligations, guarantees, torts, contracts, agreements, promises, liens, damages of any kind (including liquidated damages and punitive damages), restitution, interest, penalties, attorneys' fees, costs and/or expenses of any kind or nature whatsoever, asserted or unasserted, willful or not willful, intentional or not intentional, fixed or contingent, liquidated or unliquidated (collectively, the "Released Claims").  Class members further acknowledge that Altice can continue to charge the Network Fees and TV Fees and no provision of this agreement shall preclude Altice from continuing to charge the Network Fees and TV fees or adjusting the amounts thereof.  This paragraph is referred to in this Settlement Agreement as the "Release."

9.2     This Release is a full and complete release, and it remains valid notwithstanding the later discovery of or the existence of any additional or different facts or legal theories. The Parties and Class Members shall, by operation of the Final Approval Order and Judgment,

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522CC

expressly waive the provisions of California Civil Code Section 1542 (and all other similar provisions of law) to the fullest extent that these provisions may be applicable to the Release. California Civil Code Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

9.3     This Settlement Agreement and the Release do not affect the rights of Class Members who timely and properly opt out of the Settlement.

9.4     The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Settlement as memorialized in this Agreement, including, but not limited to, the Release. The Court expressly retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement, including, but not limited to, orders enjoining Class Members from prosecuting Released Claims.

9.5     Upon the Settlement Effective Date: (i) the Settlement Agreement shall be the final and exclusive remedy for any and all Class Members for the Released Claims, except those who have opted out in accordance with the terms and provisions hereof; (ii) Defendants shall not be subject to any liability or expense to any Class Members with respect to Released Claims

except as set forth herein; and (iii) Class Members shall be permanently barred from initiating, asserting, or prosecuting any and all Released Claims against Defendants in any manner, including in any local, state, or federal agency or court in the United States or any other tribunal.

9.6    No Other Lawsuit Pending.  With the exception of the State Action, and the previously dismissed *Vasquez, Baker*, and *Concepcion* Actions, Plaintiffs and their counsel represent that they have not filed any other lawsuit, arbitration, claim, charge, or complaint against Defendants with any arbitration tribunal or any local, state, or federal agency or court.  In the event that any agency or court or tribunal assumes jurisdiction of any lawsuit, claim, charge or complaint, or purports to bring any legal proceedings on Plaintiffs' behalf against Defendants concerning the subject matter of the Litigation, then Plaintiffs shall promptly request that the agency or court or tribunal withdraw from and dismiss the lawsuit, claim, charge, or complaint with prejudice.

## X.    REPRESENTATIONS, WARRANTIES, AND COVENANTS

10.1    Class Counsel and Plaintiffs, who are signatories hereof, represent and warrant that they have the authority, on behalf of Plaintiffs and the Settlement Class, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby.  This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiffs and constitutes their legal, valid and binding obligation.

10.2    Defendants' Counsel and Defendants, who are signatories hereof, represent and warrant that they have the authority to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby.  This Settlement Agreement has been duly and validly executed and delivered by Defendants' Counsel and Defendants and constitutes their legal, valid, and binding obligation.

36

10.3     The Parties each represent and warrant that they have not assigned, transferred or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement.

## XI.     MISCELLANEOUS PROVISIONS

11.1     This Settlement Agreement, and the Exhibits and related documents hereto, are not to be used in evidence and shall not at any time be construed or deemed to be any admission or concession by Defendants with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Approval Order as contemplated herein. Defendants specifically deny all of the allegations made in connection with the Litigation. This provision shall survive the expiration or voiding of the Settlement Agreement.

11.2     The names, addresses, email addresses, customer numbers, and other information that may be compiled by Defendants pursuant to this Agreement, and the data processing and other record keeping procedures and materials to be utilized by the Settlement Administrator in identifying the Class Members and effectuating the other obligations hereunder are represented by Defendants to constitute highly confidential and proprietary business information.

11.3     This Settlement Agreement is entered into only for purposes of Settlement. In the event that this Agreement is not finally approved in all material ways as written, except for changes agreed to or consented to by the Parties or that pertain to the Class Counsel Fees and Expense Award or Incentive Awards, then this Agreement, including any releases or dismissals hereunder, is canceled, and no term or condition of this Agreement, or any draft thereof, or of the discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any

DocuSign Envelope ID: E21FE195-2562-4978-8797-AC09A13522C2

purpose, or used for any purposes whatsoever in the Litigation, and all Parties shall be restored to their prior positions as if the Agreement had not been entered into.

11.4    The headings of the sections and Paragraphs of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

11.5    This Agreement, including all Exhibits attached hereto, may not be modified or amended except in writing signed by all counsel for the Parties.

11.6    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The Parties further agree that this Agreement shall be binding upon the transmission by each Party of a signed signature page thereof to the adverse Parties via electronic means (*e.g.*, via facsimile, scan of a .pdf document, or Docusign), and such signatures shall have the same force and effect as original signatures.

11.7    This Agreement shall be governed by and construed in accordance with the substantive laws of the State of New Jersey without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

11.8    Except as otherwise provided in this Agreement, each Party to this Agreement shall bear his, her, or its own costs of the Litigation.

11.9    The Parties to this Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

11.10    The determination of the terms of, and the drafting of, this Agreement, including its Exhibits, has been by mutual agreement after negotiation, with consideration by and

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522C2

participation of all Parties and their counsel. Since this Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the Parties was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

11.11   This Agreement may be amended or modified only by a written instrument signed by Plaintiffs and Altice and filed with the Court. Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court.

11.12   Integrated Agreement. All of the Exhibits of this Agreement are material and integral parts hereof, and are fully incorporated herein by reference. This Agreement and the Exhibits hereto constitute the entire, fully integrated agreement between the Parties and cancel and supersede all prior written and unwritten agreements and understandings pertaining to the Settlement of the Litigation.

11.13   Dispute Resolution. The Parties agree that any disputes regarding the terms and conditions of this Agreement, the Parties' rights and obligations under this Agreement, or as to any disagreement regarding the manner in which any issue or dispute arising under this Agreement should be resolved, shall be submitted to the NJ State Court which is administering this Settlement Agreement. Any disputes or controversies arising with respect to the interpretation, enforcement or implementation of the settlement or this Agreement must be submitted by formal and proper motion to that Court.

11.14   Notices.  All notices to the Parties' attorneys under this Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses:

DocuSign Envelope ID: E21F5195-2562-4978-8797-AC09A13522CC

If to Plaintiffs or Class Counsel:

        Stephen P. DeNittis, Esquire
        Joseph Osefchen, Esquire
        Shane Prince, Esquire
        DeNittis Osefchen Prince, P.C.
        5 Greentree Centre
        525 Route 73 North, Suite 410
        Marlton, New Jersey 08053
        (856) 797-9951 (phone)
        (856) 797-9978 (fax)
        sdenittis@denittislaw.com

and

        Daniel M. Hattis, Esquire
        Paul Karl Lukacs, Esquire
        Hattis & Lukacs
        11711 SE 8th Street, Suite 120
        Bellevue, WA 98005
        (425) 233-8650 (phone)
        (425) 412-7171 (fax)
        dan@hattislaw.com

If to Defendants or Defendants' Counsel:

        Archis A. Parasharami, Esq.
        Daniel E. Jones, Esq.
        Mayer Brown
        19999 K Street NW
        Washington, DC 200006-1101
        (202) 263-3000
        aparasharami@mayerbrown.com

**IN WITNESS WHEREOF**, Plaintiffs and Defendants and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below.

Dated: _____March 31_____, 2023

Stephen P. DeNittis
DeNittis Osefchen Prince, P.C.
Counsel for Plaintiffs and the Settlement Class

Dated: _____March 31_____, 2023

Daniel Hattis
Hattis & Lukacs
Counsel for Plaintiffs and the Settlement Class

Dated: _____March 31_____, 2023

Daquis Seale
Plaintiff

Dated: _____March 31_____, 2023

Nick Vasquez
Plaintiff

Dated: _____March 31_____, 2023

Natividad Concepcion
Plaintiff

Dated: _____March 31_____, 2023

Xue Shi Lin

Plaintiff

Dated: _____March 31_____, 2023

Jesse Friedman
Plaintiff

Dated: _____March 31_____, 2023

Annette Baker
Plaintiff

Dated: _____March 31_____, 2023

Jeff Lamoree
Plaintiff

Dated: _____March 31_____, 2023

Kathryn Major
Plaintiff

Dated: _____, 2023

Archis A. Parasharami
Mayer Brown
Counsel for Defendants

Dated: _____, 2023

By:
Altice USA, Inc., Cebridge Telecom CA, LLC, and
CSC Holdings, LLC
Defendants

42

| | |
|---|---|
| DAQUIS SEALE, NICK VASQUEZ, ANNETTE BAKER, JEFF LAMOREE, KATHRYN MAJOR, NATIVIDAD CONCEPCION, XUE SHI LIN, and JESSE FRIEDMAN, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>ALTICE USA, INC.; CEBRIDGE TELECOM CA, LLC (D/B/A SUDDENLINK COMMUNICATIONS); and CSC HOLDINGS, LLC (D/B/A OPTIMUM),<br><br>                Defendants. | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY LAW DIVISION<br><br>DOCKET NO. MER-L-618-23 |

## ADDENDUM A TO SETTLEMENT AGREEMENT AND RELEASE

This Addendum A to Settlement Agreement and Release has been executed by Plaintiffs and Defendants for the purpose of clarifying certain terms in the Settlement Agreement and Release.

In consideration of the obligations, conditions, covenants and agreements set forth in the Settlement Agreement, the following are hereby acknowledged and agreed to:

1.     The terms "Network Enhancement Fee," "Network Fee," or "Network Fees," whenever used in the Settlement Agreement, include the Network Access Surcharge, which is the name of the network fee paid by some Altice business customers for Optimum or Suddenlink internet service.

2.     The class definition found in the Recitals and Section 1.35 of the Settlement Agreement is hereby clarified to expressly refer to the Network Access Surcharge, as follows:

**All persons in the United States who, between July 27, 2018, and the date of preliminary approval, were customers of Altice's Optimum or Suddenlink services and were charged and paid at least one of the following: Network**

**Enhancement Fee, Network Access Surcharge, Broadcast Station Programming Surcharge, TV Broadcast Fee, Sports Programming Surcharge, or Regional Sports Network Fee.**

[signature page follows]

**IN WITNESS WHEREOF**, Plaintiffs and Defendants and their respective counsel have executed this Addendum A to the Settlement Agreement as of the date(s) indicated on the lines below.

Dated: _____ May 22 _____, 2023

*Stephen DeNittis*

Stephen P. DeNittis
DeNittis Osefchen Prince, P.C.
Counsel for Plaintiffs and the Settlement Class

Dated: _____ May 22 _____, 2023

*Daniel Hattis*

Daniel Hattis
Hattis & Lukacs
Counsel for Plaintiffs and the Settlement Class

Dated: _____ May 22 _____, 2023

*Daquis Seale*

Daquis Seale
Plaintiff

Dated: _____ May 22 _____, 2023

*Nick Vasquez*

Nick Vasquez
Plaintiff

Dated: _____ May 22 _____, 2023

*Natividad Concepcion*

Natividad Concepcion
Plaintiff

Dated: _____ May 22 _____, 2023

*Xue Shi Lin*

Xue Shi Lin
Plaintiff

Dated: _____May 22_____, 2023

DocuSigned by:

*Jesse Friedman*

——EE959ACC429549E...

Jesse Friedman
Plaintiff


Dated: _____May 22_____, 2023

DocuSigned by:

*Annette Baker*

——0E6C183D0C1B45E...

Annette Baker
Plaintiff


Dated: _____May 22_____, 2023

DocuSigned by:

*Jeff Lamoree*

——43B93F4318514A7...

Jeff Lamoree
Plaintiff


Dated: _____May 22_____, 2023

DocuSigned by:

*Kathryn Major*

——D51F3AEC5AF146D...

Kathryn Major
Plaintiff


Dated: _____, 2023

_____

Archis A. Parasharami
Mayer Brown
Counsel for Defendants


Dated: _____, 2023

_____

By:
Altice USA, Inc., Cebridge Telecom CA, LLC, and
CSC Holdings, LLC
Defendants

Dated: _____, 2023          _____
                                        Jesse Friedman
                                        Plaintiff


Dated: _____, 2023          _____
                                        Annette Baker
                                        Plaintiff


Dated: _____, 2023          _____
                                        Jeff Lamoree
                                        Plaintiff


Dated: _____, 2023          _____
                                        Kathryn Major
                                        Plaintiff


Dated: May 22_____, 2023            _____
                                        Archis A. Parasharami
                                        Mayer Brown
                                        Counsel for Defendants


Dated: May 22_____, 2023             _____
                                        By:   Michael Olsen
                                        Altice USA, Inc., Cebridge Telecom CA, LLC, and
                                        CSC Holdings, LLC
                                        Defendants

# EXHIBIT D



# Location Summary

**Service:** Residential

<u>Tech:</u>  Any Technology

**Speed:** ≥ 25/3

⚙ Service Filters

| Address ▾ | 55 RIVERBEND BLVD SAINT ALBANS, WV 25177 |



Zoom Level: **15.00**   Hex Level: **9**

© Mapbox © OpenStreetMap

**Data As Of**  | Jun 30, 2023 (latest) ▾ |  (Last Updated: 12/12/23)   ⓘ

| Fixed Broadband | Mobile Broadband |

**Selected Location**                          Location Challenge

**55 RIVERBEND BLVD**
**SAINT ALBANS, WV 25177**

Status: **Served** | Residential | Unit Count: 2

## Broadband Availability

Availability Challenge

| Provider | Technology | Down (Mbps) | Up (Mbps) | Chall. |
|---|---|---|---|---|
| ▶ Altice USA | Cable | 940 | 35 | |
| ▶ Frontier Communications Corporation | Copper | 10 | 1 | |
| ▶ Hughes Network Systems, LLC | GSO Satellite | 25 | 3 | |
| ▶ Space Exploration Technologies Corp. | NGSO Satellite | 220 | 25 | |
| ▶ T-Mobile USA, Inc. | Licensed Fixed Wireless | 25 | 3 | |
| ▶ Viasat, Inc. | GSO Satellite | 30 | 3 | |
| **Business-only Service** | | | | |
| ▶ Viasat, Inc. | GSO Satellite | 35 | 4 | |

## Map Legend

🟢 Coverage available
⭕ Coverage not available
⚪ Not a mass market location

# EXHIBIT E



Home / Optimum Terms of Service and Policies / Residential General Terms and Conditions of Service

# Residential General Terms and Conditions of Service

Subscriber ("**You**" or "**Subscriber**") agree to be bound to these General Terms and Conditions of Service ("**Terms of Service**" or "**Agreement**") with respect to all Optimum services ("**Service(s)**") provided by CSC Holdings, LLC and its affiliates and subsidiaries authorized to provide the services set forth herein (collectively, **"Optimum"**), as well as the additional terms of service applicable to the specific Optimum services and/or features to which you subscribe or have access, as are set forth at www.optimum.net and may be updated from time to time, including the Additional Terms of Service for Optimum TV, Optimum Internet, Optimum WiFi, Optimum Phone, support services, mobile apps and Auto Pay (collectively, the "**Additional Terms of Service**"), which are incorporated into these Terms of Service by this reference. You further understand and agree that the Customer Privacy Notice, which governs the collection, use and disclosure of Subscriber personal information, is likewise incorporated into these Terms of Service by reference.

**THESE TERMS OF SERVICE CONTAIN A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF CLASS ACTIONS AND JURY TRIALS. THE AGREEMENT ALSO CONTAINS PROVISIONS FOR OPTING OUT OF ARBITRATION. PLEASE REVIEW IT CAREFULLY.**

1. **Payment of Charges.** The charges for one month of Services, including any deposits, activation, installation and Equipment charges, plus pro rata charges, if any, for periods not previously billed, are due upon installation of the Services or such other date as agreed by Optimum and You. Thereafter, Subscriber agrees to pay monthly recurring Service charges and Equipment charges (if any) in advance, including all applicable fees (such as restoration or experience fees), taxes, regulatory fees, franchise fees, surcharges (including sports and broadcast TV surcharges) and other government assessments no later than the date indicated on Subscriber's bill. Charges for non-recurring Services or Equipment charges will be reflected on Subscriber's subsequent bill at the then current applicable rates. For instance, Subscriber will be billed monthly for Pay Per View, On Demand or other Services ordered where charges are based on actual usage or on orders placed during the previous month. All rates for Services, Equipment charges and other fees and surcharges are subject to change in accordance with applicable law.

   If Subscriber elects to pay by automatic recurring credit card, debit card or automatic clearing house payments, Subscriber authorizes Optimum to charge such accounts. If Subscriber elects to send a check as payment, Subscriber authorizes Optimum either to use information from Subscriber's check to make a one-time electronic funds transfer from Subscriber's bank





You may cancel Service(s) for a period up to the last day of the billing period prior to the service period that you wish to cancel, and the cancellation will be effective at the end of the then-current billing period. Subject to restrictions under applicable law, any request for cancellation after the commencement of a service period will be effective at the end of the then-current service period. Access to the Services will, if possible, continue to be provided at the location ordered or, if you move, to your new location if in an Optimum-served area (subject to any installation charges).

2. **Additional Fees.** In addition to Subscriber's monthly recurring charges and any Late Fee, additional fees may be imposed, including fees for returned checks, Payment Assistance Fees for paying by phone, receiving a paper bill, charge card chargeback, early termination, reconnection and service calls. Additional charges may also be imposed if collection activities are required to recover past due balances, including attorney fees. A list of applicable fees is available at optimum.net/pricing-packages **("Schedule of Fees")**. Optimum reserves the right to amend or change the Schedule of Fees from time to time.

3. **Third Party Provider Charges.** In connection with Subscriber's use of the Services and Equipment, Subscriber may be able to access, subscribe to, use and/or purchase products, services, software or applications that are provided to Subscriber by third parties ("**Third Party Providers**"). Subscriber acknowledges that Subscriber may incur charges in connection with the subscription to, purchase or use of these Third Party Provider products, services, software or applications. All such charges, including any additional fees and applicable taxes, shall be paid by Subscriber to the Third Party Provider and are not the responsibility of Optimum. Credits or billing adjustments for products, services, software or applications billed by a Third Party Provider shall be subject to the stated billing practices of that Third Party Provider. Termination of a service or subscription offered for a separate charge billed directly by a Third Party Provider shall be effected in accordance with the Terms of Service or similar agreement between the Subscriber and the Third Party Provider.

4. **Taxes:** Subscriber agrees to pay any local, state or federal taxes imposed or levied on or with respect to the Services, the Equipment or installation or service charges incurred with respect to the same.

5. **Early Termination Fees.** If you cancel, terminate or downgrade the Service(s) before the completion of any required promotional term to which You agreed ("Initial Term"), you agree to pay Optimum any applicable early cancellation fee plus all outstanding charges for all Services used and Equipment purchased for which you have not paid us prior to termination. You agree that early cancellation fees or any other fees may automatically be charged to your account and your credit or debit card provided to Optimum and you agree to pay such fees.

6. **Right to Make Credit Inquiries.** Subscriber acknowledges and agrees that Optimum may (a) verify Subscriber's credit standing, make inquiries and receive information about your credit experiences, including your credit report, from credit reporting agencies; (b) enter this information in your file, and disclose this information concerning you to appropriate third parties for reasonable business purposes; and (c) furnish information about you (including your social security number), your account(s) and your payment history to those credit reporting agencies.

7. **Security Deposit.** Optimum may require a deposit or activation fee based on Subscriber's credit standing or past payment history with Optimum. A deposit and/or activation fee does not relieve the Subscriber of the responsibility for prompt payment of bills on presentation. Any security deposit given by Subscriber for the Equipment or Optimum's Service will be due and



# EXHIBIT F



agree that the <u>Customer Privacy Notice</u>, which governs the collection, use and disclosure of Subscriber personal information, is likewise incorporated into these Terms of Service by reference.

**THESE TERMS OF SERVICE CONTAIN A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF CLASS ACTIONS AND JURY TRIALS. THE AGREEMENT ALSO CONTAINS PROVISIONS FOR OPTING OUT OF ARBITRATION. PLEASE REVIEW IT CAREFULLY.**

1. **Payment of Charges.** The charges for one month of Services, including any deposits, activation, installation and Equipment charges, plus pro rata charges, if any, for periods not previously billed, are due upon installation of the Services or such other date as agreed by Optimum and You. Thereafter, Subscriber agrees to pay monthly recurring Service charges and Equipment charges (if any) in advance, including all applicable fees (such as restoration or experience fees), taxes, regulatory fees, franchise fees, surcharges (including sports and broadcast TV surcharges) and other government assessments no later than the date indicated on

  

🔒 optimum.com

2. **Additional Fees**. In addition to Subscriber's monthly recurring charges and any Late Fee, additional fees may be imposed, including fees for returned checks, Payment Assistance Fees for paying by phone, receiving a paper bill, charge card chargeback, early termination, reconnection and service calls. Additional charges may also be imposed if collection activities are required to recover past due balances, including attorney fees. A list of applicable fees is available at [optimum.net/pricing-packages](optimum.net/pricing-packages) **("Schedule of Fees")**. Optimum reserves the right to amend or change the Schedule of Fees from time to time.

3. **Third Party Provider Charges.** In connection with Subscriber's use of the Services and Equipment, Subscriber may be able to access, subscribe to, use and/or purchase products, services, software or applications that are provided to Subscriber by third parties ("**Third Party Providers**"). Subscriber acknowledges that Subscriber may incur charges in connection with the subscription to, purchase or use of these Third Party Provider products, services, software or applications. All such charges, including any